

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MCCAIN-PALIN 2008, INC., | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 3:08CV709 |
| JEAN CUNNINGHAM, Chairman, Virginia State Board of Elections; HAROLD PYON, Vice-Chairman, Virginia State Board of Elections; and, NANCY RODRIGUES, Secretary, Virginia State Board of Elections, | ) |
| *Defendants*. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

This memorandum is filed by the Plaintiff, McCain-Palin 2008, Inc., by counsel in support of its motion for a temporary restraining order and preliminary injunction.

### INTRODUCTION

Unless action is taken by this Court, many of Virginia's men and women in uniform, especially those serving in combat zones, will not have sufficient time to return their absentee ballots by the November 4, 2008 deadline. These service members will be effectively denied the right to vote—one of the core rights that they defend with their lives—because counties and cities in Virginia failed to mail their absentee ballots in sufficient time before the election. Their voices will be silenced unless this Court grants

a ten-day extension of time to allow absentee ballots to be returned by uniformed citizens.

The failure of certain Virginia counties and cities to mail absentee ballots in a timely manner violates the Uniform and Overseas Citizen's Absentee Voting Act ("UOCAVA"), 42 U.S.C. § 1973ff et seq. UOCAVA requires each State to mail ballots in sufficient time so that the absentee military voter can receive, cast and return the absentee ballot in time to be counted. Given the delays associated with sending mail to war zones and the exigencies associated with military operations, federal government agencies and the Virginia State Board of Elections recognize that absentee ballots need to be mailed to military voters at least forty-five days before Election Day.

Unfortunately, a number of Virginia counties and cities failed to meet this deadline and sent absentee ballots approximately thirty-five days before the election. The delay associated with these untimely mailings will cause thousands of military service members in Virginia to be disenfranchised and must be remedied accordingly. To resolve this violation, Plaintiff requests a modest ten-day extension of time for the military ballots, most of which are in transit, to be returned and counted for the upcoming election.

The Defendants will not be harmed by this requested relief. They will be able to easily identify absentee ballots from service members because voters must provide that information on their absentee ballot request forms. This requested remedy will help to offset the irreparable harm caused by the untimely mailing of absentee ballots and will prevent the disenfranchisement of thousands of Virginia service members. Moreover, a ten-day extension will not unduly impact the state certification process, which does not

2

occur until November 24, nearly three weeks after Election Day. On balance, any inconvenience to Defendants is greatly outweighed by the irreparable harm caused to service members if their ballots are not counted. This accommodation is the least that Virginia can do for the men and women in uniform who make daily sacrifices for our freedom.

STATEMENT OF FACTS

A.   Mail Delivery to Overseas Service Members

In enacting UOCAVA, Congress intended that the States would accept military votes and not require military voters to submit themselves to burdensome litigation: "A much better solution than continual rounds of litigation is to ensure that affected votes—those whose absentee ballots are not mailed in a timely manner—nonetheless have an opportunity to vote." H.R. Rep. 99-765, at 13, 1986 U.S.C.C.A.N. at 2017. To that end, UOCAVA provides that "each State shall . . . permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). (The term "UOCAVA voters" is used herein to refer to uniformed services voters and overseas voters protected by UOCAVA.)

States must send ballots to UOCAVA voters with sufficient "time to vote and return them[.]" H.R. Rep. 99-765, at 12, 1986 U.S.C.C.A.N. at 2016. When a State sends an absentee ballot overseas too late for the recipient to vote and return it, the voter is "clearly and effectively disenfranchised." *Id.* Because UOCAVA does not specify a specific time by which absentee ballots must be mailed to UOCAVA voters, a reasonable time is implied. The minimum reasonable time is **45 days.** This is because, when a State

mails an absentee ballot to a UOCAVA voter with fewer than 45 days remaining until Election Day, it is reasonably foreseeable that the voter will not be able to receive, vote and return the ballot in time for it to be received by local election officials on or before Election Day.

Every federal government agency examining the issue of ballot delivery to war zones has concluded that absentee ballots should be sent at least 45 days before an election. The reasonableness of this 45-day standard is shown by the 2004 report and recommendations of the United States Election Assistance Commission ("USEAC"). The USEAC is an independent, bi-partisan commission created by Congress in 2002 in order to "serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections." 42 U.S.C. § 15322.

In 2004, the USEAC issued a report on how absentee ballots should be handled in order to ensure UOCVAVA voters of the right to vote. In its report, USEAC recommended that state election officials "[m]ail absentee ballots *at least 45 days* prior to the deadline for receipt of voted absentee ballots." *See* Report of the U. S. Election Assistance Commission on Best Practices for Facilitating Voting by U.S. Citizens Covered by the Uniformed and Overseas Citizens Absentee Voting Act at 2 (Sept. 2004), *available at* http://www.eac.gov/election/practices/uaoc (emphasis added) (hereinafter, the "USEAC Report") (copy attached as **Exhibit A**).

USEAC based its 45-day recommendation on empirical evidence, noting that:

> The Federal Voting Assistance Program's (FVAP's) post-election surveys and the U.S. Postal Service statistics indicate that a 45-day transit time is needed for absentee ballots sent through international mail or the military APO/FPO (overseas) post offices.

4

USEAC Report at 1. The USEAC report also shows that, even before the report was issued, 45 days was the prevailing national standard:

> Thirty-two states and territories allow for a total of 45 days of transmission time for the absentee ballot . . . to help to ensure the voter can cast a ballot in time to meet the state's ballot deadline.

USEAC Report at 1.

As recently as last summer, officials of the U.S. Department of Justice and the U.S. Department of Defense wrote a letter to the States outlining their responsibilities as related to UOCAVA. In that letter, the States were advised that "[i]t is particularly important to allow at least 45 days ballot transit time for the overseas ballots since many of our Uniformed Services personnel are employed to combat areas in Iraq and Afghanistan or are serving in remote regions." *See* Letter of G. Becker, Acting Assistant Attorney General for Civil Rights, *et al.,* dated August 19, 2008 (sample attached as **Exhibit B**).

The 45-day standard reflects a conservative judgment and may, in fact, be too short. For example, the Military Postal Service Agency has recommended that service members in Iraq and Afghanistan place their completed absentee ballots in the mail by October 7, 2008 (28 days before the election). *See* Federal Voting Assistance Program, Voting Information News (Sept. 2008), *available at* http://www.fvap.gov/resources/media/sept08vin.pdf (last accessed Nov. 2, 2008). *See also* Jeb Phillips, *Voting can be chore for military*, The Columbus Dispatch, Aug. 3, 2008, 1-A (reporting that, according to the Military Postal Service Agency, troops in forward operating bases in Iraq and Afghanistan should expect sixty days for the receipt and return of a military ballot).

Under Virginia law, absentee ballots must be "returned to the electoral board or general registrar before the closing of the polls." Va. Code Ann. § 24.2-709. This means that, under Virginia law, absentee ballots from military members, military dependents and overseas voters must be received by 7:00 p.m. on November 4, 2008. This also means that, in order to meet the 45-day standard necessary for compliance with UOCAVA, absentee ballots had to be mailed to UOCAVA voters by not later than September 20, 2008.

The State Board of Elections embraced the USEAC 45-day standard, telling service members that "Virginia requires ballot be mailed no later than 45 days before the November 4, 2008 Presidential Election." State Board of Elections, Guidelines (copy attached as **Exhibit C**).

### B. Late Mailing of Absentee Ballots in Virginia

In the federal election of November 4, 2008, voters in the Commonwealth of Virginia – including UOCAVA voters – will participate or seek to participate in the selection of the President and Vice President of the United States, a United States Senator for Virginia, and several United States Representatives for Virginia.

County and city election officials in the Commonwealth of Virginia have received timely requests for absentee ballots from UOCAVA voters – including military service members stationed abroad – who are entitled to vote under Virginia law and pursuant to the provisions of UOCAVA. Notwithstanding the 45-day standard developed by the USEAC – and notwithstanding its own apparent recognition of that standard – the State

6

Board of Elections failed to make suitable arrangements to ensure that absentee ballots would be printed and delivered to local election officials by September 20, 2008.

The State Board of Elections told at least one of the printers that prepares paper ballots for numerous Virginia localities that the "real deadline" for sending out absentee ballots was not until September 30, 2008 – ten days *after* the date that absentee ballots would be needed for mailing overseas in order to ensure their return by Election Day. Decl. of Jay Overby, at ¶ 5 (**Exhibit D**).

In many Virginia counties and cities – including some of the largest jurisdictions – local election officials failed to mail absentee ballots to UOCAVA voters – including military service members stationed abroad – at least 45 days before the election. Among the other reasons for the failure to do so is the fact that many jurisdictions were not shipped and/or did not receive their *first* shipment of absentee ballots from the printer until on or *after* September 20, 2008. Such jurisdictions include but are not necessarily limited to the following:

- County of Arlington: Shipped – September 22; Delivered – September 23;
- City of Chesapeake: Shipped – September 24; Delivered – September 25;
- County of Chesterfield: Delivered – September 20;
- County of Fauquier: Shipped – September 24; Delivered – September 25;
- County of Loudoun: Shipped – September 18; Delivered – September 19;
- City of Richmond: Delivered – September 23;
- City of Suffolk: Shipped – September 24; Delivered – September 25; and
- City of Virginia Beach: Shipped – September 26; Delivered – September 29.

*Id.*, at ¶ 6. (Shipment date indicates the date absentee ballots were first shipped to that jurisdiction by the printer; delivery date indicates the date absentee ballots were first received by that jurisdiction from the printer.)

Given the need for local election officials to fold absentee ballots, insert them into envelopes and deliver them to the U.S. Postal Service – and given the fact that the printer

delivered absentee ballots to various localities in batches – it is likely that many absentee ballots were not mailed out by local election officials until October, 2008.

The mailing of absentee ballots to military members less than 45 days before Election Day does not provide UOCAVA voters – especially military service members stationed abroad – with sufficient time to receive, cast and return their absentee ballots. As a result, many of these military service members and other UOCAVA voters will be disenfranchised in the upcoming federal election in violation of federal law.

The problem facing many of our military service members is illustrated by the case of one marine stationed in Western Anbar Province, Iraq. *See* Decl. of Anne C. Hannaford (attached as **Exhibit E**). This marine is a registered voter in Arlington County and requested an absentee ballot in August, 2008; however, Arlington County election officials did not send Hannaford his absentee ballot until September 29, 2008. *Id.* This was *one week* after the first batch of absentee ballots was shipped to Arlington by the printer.

The absentee ballot did not reach him until October 29, 2008. *Id.*

Although the marine immediately cast his ballot and placed it in the mail, it is unlikely to arrive in Arlington County by the November 4, 2008 deadline. *Id.* Without action by this Court, the marine's vote – and the votes of many other Americans serving their country overseas – will not be counted.

## ARGUMENT

### I. Plaintiff is Entitled to Immediate Injunctive Relief

In considering a request for a preliminary injunction, Courts in the Fourth Circuit apply the test articulated in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg.*

*Co., Inc.,* 550 F.2d 189 (4th Cir. 1977), which requires an examination of four factors: (1) the likelihood of irreparable harm to the plaintiff if the requested relief is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (4) the plaintiff's likelihood of succeeding on the merits; and, (4) the public interest. *See Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 271 (4th Cir. 2002). In the Fourth Circuit, the first two factors are the most important. "If the hardship balance tilts sharply and clearly in the movant's favor, the required proof of likelihood of success is substantially reduced." *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 817 (4th Cir. 1992). Moreover, "if a *decided* balance of hardship should appear in plaintiff's favor, then . . . 'It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.'" *Id.* at 808 (quoting *Blackwelder*, 550 F.2d at 195) (emphasis added by court).

> 1. *Without the Relief Sought, the Plaintiffs and Military Service Members Will Be Denied the Right to Have Their Ballots Counted.*

Plaintiff and military voters will be irreparably harmed by the untimely mailing of absentee ballots. A citizen's right to vote is fundamental, and any abridgement of that right poses a serious and undeniable harm. *See Reynolds v. Sims,* 377 U.S. 533, 554 (1964). Where a court finds an abridgement of that constitutional right, "irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott,* 234 F.3d 1133, 1158-59 (11th Cir. 2000).

Here, Plaintiff has demonstrated that many military voters will be effectively disenfranchised by the late mailing of absentee ballots, especially to those service members in combat zones. These service members will not have sufficient time to

review, cast and return their absentee ballots by November 4, 2008, and will be disenfranchised. Such potential for disenfranchisement is sufficient to meet the irreparable harm prong for granting a temporary restraining order and preliminary injunction.

   2.   *The Defendants Would Not Be Harmed If a Temporary Restraining Order and a Preliminary Injunction is Issued.*

The Defendants in this case are charged with ensuring that elections in Virginia are conducted in a fair and orderly manner and to oversee the process whereby elections are certified. Plaintiff is merely requesting an extension until 7:00 p.m. on November 14, 2008, to receive absentee ballots from service members. Extending the deadline for receiving absentee ballots from military members does not harm Defendants. Under the approach urged by the Plaintiff, the localities would certify their results – through Election Day – to the State Board of Elections as they would in any election. *See* Va. Code Ann. § 24.2-671. The new deadline of 7:00 p.m. on November 14, 2008, for receipt of absentee ballots of military members would then require the locality to provide the State Board of Elections with a supplemental certification which would count the absentee ballots not received by Election Day, but received by that new deadline. This approach would be grafted into Virginia's statutory framework for certifying elections. Ultimately, any inconvenience associated with an extension of the deadline is greatly outweighed by the loss of a service member's right to vote. In short, there is "a decided balance of hardship" in Plaintiff's favor, *Direx Israel*, 952 F.2d at 808.

### 3. *Plaintiff Has Demonstrated a Substantial Likelihood of Success on the Merits.*

Plaintiff has demonstrated a substantial likelihood of success on its claim that the untimely mailing of absentee ballots to service members in war zones violates UOCAVA. Section 102 of that Act plainly provides that "each State shall . . . permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). As Congress made clear, UOCAVA was enacted to alleviate chronic difficulties experienced by members of the Nation's military overseas, "where mail service is slow and sporadic," and who — even in peacetime, let alone in theatres of active war — "may be away for days or weeks at a time on temporary duty or maneuvers." 132 Cong. Rec. H5973-03 (Aug. 12, 1986); *see also* H.R. Rep. 99-765, at 12 (1986), *republished in* 1986 U.S.C.C.A.N. 2009, 2016 (citing the difficulty of delivering ballots to peacetime military personnel stationed in Germany, Japan, and England).

Congress intended UOCAVA to serve a broad purpose — namely, "ensuring that all overseas voters have, at a minimum, the opportunity to vote for President and Vice President, and for those who represent them in the House and Senate," and "that voters are not disenfranchised because of poor mail service." 132 Cong. Rec. H5973-03 (Aug. 12, 1986) (emphasis added). Thus, at its core, UOCAVA prohibits the States from sending absentee ballots to absent military voters at a date so close to Election Day that the voters "fail to receive their absentee ballots in time to vote and return them[.]" H.R. Rep. 99-765, at 12, 1986 U.S.C.C.A.N. at 2016. When a State does not distribute

11

absentee ballots to overseas military voters sufficiently early, the affected voters are "clearly and effectively disenfranchised." *Id.*

Here, there is no doubt that many military members, especially those serving in combat zones, will be disenfranchised by the untimely mailing of absentee ballots by several counties and cities in Virginia. As noted above, both the Federal government and the Virginia State Board of Elections recognize that absentee ballots should be sent forty-five days before the election. This forty-five day timeframe helps to account for military postal delays and other possible contingencies that may arise. This means that Virginia counties and cities should have mailed their absentee ballots to service members on or about September 20, 2008. Indeed, Virginia promised that such mailing would occur by Friday, September 19, 2008. *See* Exhibit C.

In this case, however, many counties and cities in Virginia did not mail their absentee ballots until ***after September 29, 2008***, thus leaving less than thirty-five days for military members to receive, cast and return their ballots by the November 4, 2008 deadline. *See* Va. Code Ann. § 24.2-709 (absentee ballots must be "returned to the electoral board or general registrar before the closing of the polls"). This delay will effectively disenfranchise these service members, especially those located in remote locations or combat zones. Thirty-five days does not provide sufficient time for mail delivery to war zones, let alone account for exigencies or other delays that impact the delivery of mail to these areas. Such a failure violates the plain directive in UOCAVA to provide service members with an opportunity to vote by absentee ballot in Federal

elections and this right is enforceable under 42 U.S.C. § 1983.¹ Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits of its claim.

Indeed, the requested remedy in this case — a ten-day extension for the receipt of absentee ballots — is a common and well-accepted remedy and has been ordered by federal courts throughout the country. *See, e.g., United States v. Tennessee*, No. 3:08-00085 (M.D. Tenn. Jan. 30, 2008) (consent decree and order granting ten-day extension to receive absentee ballots) (attached as **Exhibit F**); *United States v. Connecticut*, No. 3:06-cv-1192 (D. Conn. Aug. 2, 2006) (stipulated agreement and order granting seventeen-day extension to receive absentee ballots) (attached as **Exhibit G**); *United States v. North Carolina*, No. 5:06-cv-00118-H (E.D.N.C. Mar. 20, 2006) (consent decree and order granting six-day extension to receive absentee ballots) (attached as **Exhibit H**); and, *United States v. Pennsylvania*, No. 1: CV-04-830 (M.D. Pa. Apr. 16, 2004) (order on preliminary injunction granting twenty-day extension to receive absentee ballots) (attached as **Exhibit I**).

  4. *The Public Interest Would be Served by Issuance of a Temporary Restraining Order*

The public interest strongly favors letting our men and women in uniform participate fully in the November 4, 2008 general election, even though certain counties and cities in Virginia failed to mail their absentee ballots in a timely manner. These service members are defending the very freedom that gives the rest of our citizens the

---

¹ The absentee voting rights guaranteed by UOCAVA are enforceable under 42 U.S.C. § 1983. *See generally Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572–573 (6th Cir. 2004) (*per curiam*) (permitting a section 1983 action to enforce the provisional voting provisions of the Help America Vote Act ("HAVA"), 42 U.S.C. § 15482). Like *Sandusky*, the voting provision being enforced in this proceeding protects the individual military member's clear and unambiguous right to vote by absentee ballot under UOCAVA.

right to vote. They should not be forced to give up their right to vote as a condition of service. At the very least, Virginia owes them a fair and reasonable opportunity to receive, cast and return an absentee ballot for the November 4, 2008 election. The public interest requires it.

## CONCLUSION

WHEREFORE, Plaintiff prays that this Court hear this action pursuant to 42 U.S.C. §§ 1973ff and 1983; and that it issue a temporary restraining order, preliminary injunction and permanent injunction as follows:

1. The Defendants, their agents and successors in office, and all persons acting in concert with them, including but not limited to members of local electoral boards and registrars, shall:

a. preserve, safeguard and document the receipt of all absentee ballots received by local election officials in connection with the election held on November 4, 2008, even where such ballots are not received until after the close of the polls on November 4, 2008;

b. count as validly cast ballots, in contests relating to the general election for federal offices, those absentee ballots (including state-issued absentee ballots and Federal Write-in Absentee Ballots) cast by Virginia voters qualified to vote in Virginia pursuant to UOCAVA, and who otherwise comply with State law for absentee voting, where the ballot is executed and sent (whether by federal postal services or commercial delivery services) by November 4, 2008, and received by local election officials on or before 7:00 p.m. on **November 14, 2008**; and

2. In their capacity as members of the State Board of Elections, the Defendants and their successors in office shall issue all such instructions – and provide all such coordination and supervision – to local electoral boards and registrars as may be necessary to ensure full compliance with the foregoing.

Respectfully Submitted,
MCCAIN-PALIN 2008, INC.

By: _____
       Counsel

William H. Hurd (VSB No. 16769)
  william.hurd@troutmansanders.com
Ashley L. Taylor, Jr. (VSB No. 36521)
  ashley.taylor@troutmansanders.com
Paige S. Fitzgerald (VSB No. 35184)
  paige.fitzgerald@troutmansanders.com
Stephen C. Piepgrass (VSB No. 71361)
  stephen.piepgrass@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23219
(804) 697-1200 (phone)
(804) 698-5147 (fax)

# CERTIFICATE OF SERVICE

I hereby certify that, on the 3rd day of November, 2008, I have filed the foregoing with the Clerk of Court and have hand-delivered a copy of to:

>Maureen Matson, Esq.
>Deputy Attorney General
>Office of the Attorney General
>900 East Main Street
>Richmond, VA 23219
>(804) 786-2071
>
>*Counsel for Defendants*

/s/ Ashley L. Taylor
William H. Hurd (VSB No. 16769)
william.hurd@troutmansanders.com
Ashley L. Taylor, Jr. (VSB No. 36521)
ashley.taylor@troutmansanders.com
Paige S. Fitzgerald (VSB No. 35184)
paige.fitzgerald@troutmansanders.com
Stephen C. Piepgrass (VSB No. 71361)
stephen.piepgrass@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23219
(804) 697-1200 (phone)
(804) 698-5147 (fax)

*Counsel for Plaintiff*

1780646