# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| MCCAIN-PALIN 2008, INC., ) <br> and THELMA DRAKE FOR CONGRESS, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> JEAN CUNNINGHAM, ) <br> Chairman, Virginia State Board of Elections; ) <br> HAROLD PYON, ) <br> Vice-Chairman, Virginia State Board of Elections; ) <br> and NANCY RODRIGUES, ) <br> Secretary, Virginia State Board of Elections, ) <br> ) <br> *Defendants*. ) <br> ) <br> _____) | Case No. 3:08cv709 |

## **AMENDED COMPLAINT**

For their Amended Complaint, Plaintiffs McCain-Palin 2008, Inc. ("McCain"), and Thelma Drake for Congress ("Drake"), by counsel, state as follows:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983 and the Uniform and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. § 1973ff et seq.

2. The purpose of this action is to vindicate the right of American military service members and overseas voters to vote in the November 4, 2008 federal election, a right that is dependant on their having a reasonable opportunity to receive, cast, and return absentee ballots.

This action is necessary in order to redress the deprivation, under color of state law, of their federal voting right as guaranteed by UOCAVA.

## JURISDICTION AND VENUE

3. This is a civil action arising under the laws of the United States. Thus, this Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331. In addition, Plaintiffs seek equitable and other relief under an act of Congress providing for the protection of civil rights, including the right to vote. Thus, this Court also has subject matter jurisdiction under 28 U.S.C. § 1343.

4. Venue is proper for this action in this district and division, pursuant to 28 U.S.C. § 1391(b) and Local Rule 3(C), in that a substantial part of the events or omissions giving rise to the claim occurred and/or will occur in this district and division.

## PARTIES

5. The first Plaintiff, McCain, is the official campaign committee for Senator John McCain, the 2008 Republican nominee for President of the United States. There are many military service members and overseas voters who supported Senator John McCain for President in the November 4, 2008 election and whose right to vote will be denied without relief from this Court. Although the results of the presidential election are now known, those voters still have a right to have their votes counted and reflected in the official vote totals. In other words, McCain in no way seeks to use this lawsuit to challenge President-elect Obama's victory; McCain simply seeks to vindicate the rights of military and other overseas voters to have their votes counted. McCain has standing to assert vicariously the rights of such military service members and overseas voters as supported and/or are affiliated with the McCain campaign and/or the Republican Party.

6. The second Plaintiff, Drake, is the official campaign committee for Thelma Drake, an incumbent member of Congress and the Republican nominee for Congress from Virginia's Second Congressional District. The result of the Second District congressional race is still unknown. There are many military service members and overseas voters who supported Drake in the November 4, 2008 election and whose right to vote will be denied without relief from this Court. Drake will be harmed if such voters are denied their right to vote as alleged herein and, thus, Drake has standing to bring this action in her own right. Drake also has standing to assert vicariously the rights of such military service members and overseas voters as supported and/or are affiliated with the Drake campaign and/or the Republican Party.

7. The State Board of Elections is the chief election authority in Virginia, responsible for the administration of state laws affecting voting and for assuring that elections in the State are conducted in accordance with law. Va. Code. Ann. § 24.2-102–103.

8. Among its duties, the State Board of Elections is charged as follows:

> The State Board shall ***supervise and coordinate*** the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections. It shall make rules and regulations and ***issue instructions*** and provide information ***consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws***.

Va. Code Ann. § 24.2-103(A) (emphasis added).

9. Among the election laws that the State Board of Elections is charged with administering are laws relating to absentee ballots, including the Uniform and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§ 1973ff *et seq*. This mean, *inter alia*, ensuring that UOCAVA voters have sufficient time to receive, cast and return their absentee ballots.

10. The State Board of Elections is charged by law with "ascertain[ing] the results of the November election" by "mak[ing] statements as to the whole number of votes given… for… members of the United States Congress and electors for President and Vice President of the Untied States." Va. Code Ann. § 24.2-679. The State Board of Elections is likewise charged with issuing a "certificate of election" to each person it has "declared to be elected." Va. Code Ann. § 24.2-680.

11. The State Board of Elections has its chief office in Richmond, Virginia, and is composed of three members: Chairman, Vice-Chairman and Secretary.

12. Jean Cunningham is the Chairman of the State Board of Elections and is sued in her official capacity.

13. Harold Pyon is the Vice-Chairman of the State Board of Elections and is sued in his official capacity

14. Nancy Rodrigues is the Secretary of the State Board of Elections and is sued in her official capacity.

15. Local electoral boards in the counties and cities of Virginia work in concert with – and under the supervision of – the State Board of Elections in order to ascertain the result of the November election and determine the number of votes cast for each candidate for federal office. *See, e.g.,* Va. Code Ann. §§ 24.2-600 – 680.

## BACKGROUND

16. In enacting UOCAVA, Congress intended that the States would accept military votes and not require such voters to submit themselves to burdensome litigation: "A much better solution than continual rounds of litigation is to ensure that affected votes—those whose absentee ballots are not mailed in a timely manner—nonetheless have an opportunity to vote." H.R. Rep. 99-765, at 13, 1986 U.S.C.C.A.N. at 2017.

17. To that end, UOCAVA provides that "each State shall . . . permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). (The term "UOCAVA voters" is used herein to refer to uniformed services voters and overseas voters protected by UOCAVA.)

18. States must send ballots to UOCAVA voters with sufficient "time to vote and return them[.]" H.R. Rep. 99-765, at 12, 1986 U.S.C.C.A.N. at 2016. When a State sends an absentee ballot overseas too late for the recipient to vote and return it, the voter is "clearly and effectively disenfranchised." *Id.*

19. Because UOCAVA does not specify a specific time by which absentee ballots must be mailed to UOCAVA voters, a reasonable time is implied. The minimum reasonable time is **45 days.** This is because, when a State mails an absentee ballot to a UOCAVA voter with fewer than 45 days remaining until Election Day, it is reasonably foreseeable that the voter will not be able to receive, vote and return the ballot in time for it to be received by local election officials on or before Election Day.

20. The reasonableness of this 45-day standard is shown by the 2004 report and recommendations of the United States Election Assistance Commission ("USEAC"). The

USEAC is an independent, bi-partisan commission created by Congress in 2002 in order to "serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections." 42 U.S.C. § 15322.

21. In 2004, the USEAC issued a report on how absentee ballots should be handled in order to ensure UOCVAVA voters of the right to vote. In its report, USEAC recommended that state election officials "[m]ail absentee ballots *at least 45 days* prior to the deadline for receipt of voted absentee ballots." *See* Report of the U. S. Election Assistance Commission on Best Practices for Facilitating Voting by U.S. Citizens Covered by the Uniformed and Overseas Citizens Absentee Voting Act at 2 (Sept. 2004), *available at* http://www.eac.gov/election/ practices/uaoc (emphasis added) (hereinafter, the "USEAC Report") (copy attached to original Complaint as **Exhibit A**).

22. USEAC based its 45-day recommendation on empirical evidence, noting that:

> The Federal Voting Assistance Program's (FVAP's) post-election surveys and the U.S. Postal Service statistics indicate that a 45-day transit time is needed for absentee ballots sent through international mail or the military APO/FPO (overseas) post offices.

USEAC Report at 1.

23. The USEAC report also shows that, even before the report was issued, 45 days was the prevailing national standard:

> Thirty-two states and territories allow for a total of 45 days of transmission time for the absentee ballot . . . to help to ensure the voter can cast a ballot in time to meet the state's ballot deadline.

USEAC Report at 1.

24. As recently at last summer, officials of the U.S. Department of Justice and the U.S. Department of Defense wrote a letter the States outlining their responsibilities as related to UOCAVA. In that letter, the States were advised that "[i]t is particularly important to allow at

6

least 45 days ballot transit time for the overseas ballots since many of our Uniformed Services personnel are employed to combat areas in Iraq and Afghanistan or are serving in remote regions." *See* Letter of G. Becker, Acting Assistant Attorney General for Civil Rights, *et al.,* dated August 19, 2008 (sample attached to original Complaint as **Exhibit B**).

25. The 45-day standard reflects a conservative judgment and may, in fact, be too short. For example, the Military Postal Service Agency has recommended that service members in Iraq and Afghanistan place their completed absentee ballots in the mail by October 7, 2008 (28 days before the election). *See* Federal Voting Assistance Program, Voting Information News (Sept. 2008), *available at* http://www.fvap.gov/resources/media/sept08vin.pdf (last accessed Nov. 2, 2008). *See also* Jeb Phillips, *Voting can be chore for military*, The Columbus Dispatch, Aug. 3, 2008, 1-A (reporting that, according to the Military Postal Service Agency, troops in forward operating bases in Iraq and Afghanistan should expect sixty days for the receipt and return of a military ballot).

26. Under Virginia law, absentee ballots must be "returned to the electoral board or general registrar before the closing of the polls." Va. Code Ann. § 24.2-709. This means that, under Virginia law, absentee ballots from military members, military dependents and overseas voters must be received by 7:00 p.m. on November 4, 2008. This also means that, in order to meet the 45-day standard necessary for compliance with UOCAVA, absentee ballots had to be mailed to UOCAVA voters by not later than September 20, 2008.

27. The State Board of Elections embraced the USEAC 45-day standard, telling service members that "Virginia requires ballot be mailed no later than 45 days before the November 4, 2008 Presidential Election." State Board of Elections**,** Guidelines (copy attached to original Complaint as **Exhibit C**).

7

## FAILURE TO COMPLY WITH UOCAVA

28. In the federal election of November 4, 2008, voters in the Commonwealth of Virginia – including UOCAVA voters – participated – or sought to participate – in the selection of the President and Vice President of the United States, a United States Senator for Virginia, and several United States Representatives for Virginia, including a Representative from the Second Congressional District.

29. County and city election officials in the Commonwealth of Virginia have received timely requests for absentee ballots from UOCAVA voters – including military service members stationed abroad – who are entitled to vote under Virginia law and pursuant to the provisions of UOCAVA.

30. Notwithstanding the 45-day standard developed by the USEAC – and notwithstanding its own apparent recognition of that standard – the State Board of Elections failed to make suitable arrangements to ensure that absentee ballots would be printed and delivered to local election officials by September 20, 2008, and/or failed to require local electoral boards to make such suitable arrangements.

31. On information and belief, the State Board of Elections told at least one of the printers that prepares paper ballots for numerous Virginia localities that the "real deadline" for sending out absentee ballots was not until September 30, 2008 – ten days *after* the date that absentee ballots would be needed for mailing overseas in order to ensure their return by Election Day. Decl. of Jonathan Overby, at ¶ 5 (copy attached to original Complaint as **Exhibit D**).

32. On information and belief, the State Board of Elections informed each printer that prepared absentee ballots for each locality in Virginia that September 30, 2008 was the "real deadline" for sending out absentee ballots. Upon information and belief, each of these printers

8

acted accordingly, delivering absentee ballots to many jurisdictions after expiration of the 45-day deadline embraced by the State Board of Elections and the USEAC.

33. On information and belief, in many Virginia counties and cities – including some of the largest jurisdictions – local election officials failed to mail absentee ballots to UOCAVA voters – including military service members stationed abroad – at least 45 days before the election. Among the other reasons for the failure to do so is the fact that many jurisdictions were not shipped and/or did not receive their *first* shipment of absentee ballots from the printer until on or *after* September 20, 2008. Such jurisdictions include but are not necessarily limited to the following:

- County of Arlington: Shipped – September 22; Delivered – September 23;
- City of Chesapeake: Shipped – September 24; Delivered – September 25;
- County of Chesterfield: Delivered – September 20;
- County of Fauquier: Shipped – September 24; Delivered – September 25;
- County of Loudoun: Shipped – September 18; Delivered – September 19;
- City of Richmond: Delivered – September 23;
- City of Suffolk: Shipped – September 24; Delivered – September 25; and
- City of Virginia Beach: Shipped – September 26; Delivered – September 29.

*Id.*, at ¶ 6 (Shipment date indicates the date that absentee ballots were first shipped to that jurisdiction by the printer; delivery date indicates the date absentee ballots were first received by that jurisdiction from the printer.)

34. Given the need for local election officials to fold absentee ballots, insert them into envelopes and deliver them to the U.S. Postal Service – and given the fact that the printer delivered absentee ballots to various localities in batches – it is likely that many absentee ballots were not mailed out by local election officials until October, 2008.

35. The mailing of absentee ballots to military members less than 45 days before Election Day does not provide UOCAVA voters – especially military service members stationed abroad – with sufficient time to receive, cast and return their absentee ballots. As a result, many

9

of these military service members and other UOCAVA voters will be disenfranchised in the 2008 federal election in violation of federal law.

36. The problem facing many of our military service members is illustrated by the case of a marine stationed in Western Anbar Province, Iraq. *See* Decl. of Anne C. Hannaford (copy attached to original Complaint as **Exhibit E**).

37. The marine is a registered voter in Arlington County and requested an absentee ballot in August, 2008; however, Arlington County election officials did not send him his absentee ballot until September 29, 2008. *Id.* This was *one week* after the first batch of absentee ballots was shipped to Arlington by the printer.

38. The absentee ballot did not reach the marine until October 29, 2008. *Id.*

39. Although the marine immediately cast his ballot and placed it in the mail, it is unlikely that it arrived in Arlington County by the November 4, 2008 deadline. *Id.* Without action by this Court, this marine's vote – and the votes of many other Americans serving their country overseas – will not be counted.

40. An order of this Court is necessary to require the Commonwealth to take corrective action in order to protect the rights granted by UOCAVA.

WHEREFORE, Plaintiffs pray that this Court hear this action pursuant to 42 U.S.C. §§ 1973ff and 1983; and that it issue a temporary restraining order, preliminary injunction and permanent injunction as follows:

1. The Defendants, their agents and successors in office, and all persons acting in concert with them, including but not limited to members of local electoral boards and registrars, shall:

a. continue to abide by the terms of the Order issued by this Court on November 3, 2008, and otherwise preserve, safeguard and document the receipt of all absentee ballots received by local election officials in connection with the election held on November 4, 2008, even where such ballots are not received until after the close of the polls on November 4, 2008;

b. count as validly cast ballots, in contests relating to the general election for federal offices, those absentee ballots (including state-issued absentee ballots and Federal Write-in Absentee Ballots) cast by Virginia voters qualified to vote in Virginia pursuant to UOCAVA, and who otherwise comply with State law for absentee voting, where the ballot is executed and sent (whether by federal postal services or commercial delivery services) by November 4, 2008, and received by local election officials on or before 7:00 p.m. on **November 14**, 2008; and

2. In their capacity as members of the State Board of Elections, the Defendants and their successors in office shall issue all such instructions – and provide all such coordination and supervision – to local electoral boards and registrars as may be necessary to ensure full compliance with the foregoing.

Plaintiffs also pray that the Court grant it such other and/or additional relief as equity may require, including but not limited to an award of its costs herein expended, including reasonable attorneys fees.

Respectfully Submitted,<br>
MCCAIN-PALIN 2008, INC. and<br>
THELMA DRAKE FOR CONGRESS<br>
<br>
By: _____/s/_____<br>
Stephen C. Piepgrass (VSB No. 71361)<br>
Counsel

William H. Hurd (VSB No. 16769)
  william.hurd@troutmansanders.com
Ashley L. Taylor, Jr. (VSB No. 36521)
  ashley.taylor@troutmansanders.com
Paige S. Fitzgerald (VSB No. 35184)
  paige.fitzgerald@troutmansanders.com
Stephen C. Piepgrass (VSB No. 71361)
  stephen.piepgrass@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia  23219
(804) 697-1200 (phone)
(804) 698-5147 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 6th day of November, 2008, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Robert A. Dybing, Esquire
>rdybing@t-mlaw.com
>John A. Gibney, Jr. Esquire
>jgibney@t-mlaw.com
>Thompson McMullen
>100 Shockoe Slip
>Richmond, Virginia 23219
>(804) 649-7545 (phone)
>(804) 649-0654 (fax)
>
>*Counsel for Defendants*

>_____/s/_____
>Stephen C. Piepgrass (VSB No. 71361)
>stephen.piepgrass@troutmansanders.com
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>P.O. Box 1122
>Richmond, Virginia 23219
>(804) 697-1200 (phone)
>(804) 698-5147 (fax)
>
>*Counsel for Plaintiffs*

1781791