### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| MCCAIN-PALIN 2008, INC., | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 3:08cv709 |
| JEAN CUNNINGHAM, | ) |
| Chairman, Virginia State Board of Elections; | ) |
| HAROLD PYON, | ) |
| Vice-Chairman, Virginia State Board of Elections; | ) |
| and NANCY RODRIGUES, | ) |
| Secretary, Virginia State Board of Elections, | ) |
| *Defendants*. | ) |

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Plaintiff McCain-Palin 2008, Inc., states as follows for its Memorandum in Opposition to Defendants' Motion to Dismiss:

### INTRODUCTION

Defendants begin their argument by noting that they "took an oath to support the Constitution and laws of the Commonwealth of Virginia." Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 1. They forget, however, that the same oath first requires them to support the Constitution of the United States, Va. Code § 49-1, and that the United States Constitution and laws made thereunder are the "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI.

The Plaintiff's case is brought under a law of the United States, the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. § 1973ff *et seq*. Defendants do not claim that UOCAVA is unconstitutional, nor could any such claim credibly be made. It is, after all, a *federal* law designed to protect the right of *United States* military personnel to vote in *federal* elections. Any conflict between the federally-guaranteed right to vote and state law deadlines must be resolved in favor of the right to vote. By their willingness to deny that right, Defendants misunderstand the federal union and stray from their obligation to support the Constitution of the United States.

### UOCAVA Need Not Create an <u>Express</u> 45-Day Standard, Because It Implicitly Creates a Rule of Reason. Defendants Do Not <u>Deny that 45 Days Is Necessary in Order to Be Reasonable</u>.

Defendants claim that because no federal statute or regulation **expressly** fixes 45-days as the standard for mailing ballots to UOCAVA voters, they did nothing wrong by missing that deadline. They miss the point entirely. As Plaintiff has explained, "[b]ecause UOCAVA does not specify a specific time by which absentee ballots must be mailed to UOCAVA voters, a **reasonable time** is implied." Complaint, ¶ 18 (emphasis added). In their memorandum, Defendants do not dispute this claim. Neither does their memorandum dispute Plainitff's claim that "the minimum reasonable time is **45 days**." *Id.* (emphasis in original). Thus, the absence of an express 45-day statutory requirement cannot win the case for them on a motion to dismiss.[1]

---

[1] In order to prevail, Defendants must show, as factual matters: (i) that they complied with some lesser standard, and (ii) that compliance with the lesser standard was reasonable. The second point will be especially difficult for them – indeed, legally impossible – because Virginia law (which they are sworn to support) provides that election officials "shall make printed ballots available for absentee voting at least . . . 45 days prior to any November general election." Va. Code § 24.2-612.

Indeed, if the absence of an **express** 45-day standard allowed Defendants to escape liability here, then the same thing could be said about a 30-day standard, a 15-day standard or even a 2-day standard. Under Defendants' approach, military voters would simply not have a meaningful right to vote absentee, and UOCAVA would be a dead letter. Reduced to its absurdity, Defendants' argument must be rejected.

## There Is a Private Right of Action

Defendants contend that, even if they are violating UOCAVA, there is nothing that individual voters can do about it, and thus nothing that Plaintiff can do about it. There is, they say, no private right of action to enforce UOCAVA. Def. Mem. at 7. They are mistaken.

The weakness of Defendants' argument is again shown by the extreme consequences to which it would lead. If there is no private right of action under UOCAVA, then election officials could simply refuse to send absentee ballots overseas – or, they could send them but refuse to count them – and the disenfranchised UOCAVA voter would have no federal remedy. Surely, this cannot be the law.

As Defendants point out, UOCAVA gives the Attorney General authority to bring a civil action to enforce the statute. Def. Mem. at 6. But nowhere does UOCAVA say that **only** the Attorney General has such authority, nor do Defendants cite any court decision that says so, nor do Defendants quote the Attorney General as having made such a bold claim of exclusive authority.

In *Reitz v. Rendell*, Case No. 1:04-CV-2360, 2004 U.S. Dist. LEXIS 21813 (M.D. Pa. Oct. 29, 2004), two members of the United States military serving in Iraq and Kuwait brought a lawsuit raising a claim very much like the one at bar. Those servicemen

3

"complain[ed] that their home counties did not mail absentee ballots in time for their votes to be counted in the November 2, 2004 election, and that absent emergency injunctive relief, they and other similarly situated military voters will be disenfranchised." *Id.* at * 3. Their right to bring a private right of action was implicitly recognized when the court entered a consent order granting an extension of time for the receipt of absentee ballots from UOCAVA voters. *Id.* at *4. This is the same relief sought by Plaintiff here.[2]

Earlier, in *Bush v. Hillsborough County Canvassing Bd*., 123 F. Supp. 2d 1305 (N.D. Fla. 2000), a federal court granted declaratory and injunctive relief to enforce the requirements of UOCAVA that absentee ballots be counted despite the objections of local election officials. The Attorney General was not a party to the case, which was brought solely by private plaintiffs, presidential and vice-presidential candidates and a state political party.

Defendants do not address *Reitz* or *Bush,* even though both cases involved private parties bringing successful lawsuits under UOCAVA. Nor do Defendants cite any case in which a court has rejected a private right of action under UOCAVA. (As far as Plaintiff

---

[2] The Order read in part:

> To assure the rights of "absent uniformed services and overseas voters" who are protected by [UOCAVA] the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the county boards of elections – notwithstanding the deadline prescribed by [state statute] – to accept as timely received, solely for purposes of the Federal offices that are included on such ballots for the November 2, 2004, General Election, absentee ballots, including any federal write in ballots, cast by "absent uniformed services and overseas voters" as defined by the [UOCAVA] so long as those ballots are received by the appropriate county board of elections not later than 5 P.M. on Wednesday, November 10, 2004.

*Reitz*, 2004 U.S. Dist. LEXIS 21813 at * 4.

4

can determine, there are no such cases.) Instead, Defendants quote two cases having nothing to do with UOCAVA or with any other aspect of voting rights.

Quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979), Defendants first say that "[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where a "statute by its terms grants no private rights to any identifiable class." Def. Mem. at 7. Yet, UOCAVA does grant such private rights. The right to vote is clearly an individual or private right, and UOCAVA grants the right to vote absentee in federal elections to an identifiable class, defined as "uniformed services voters and overseas voters." 42 U.S.C. § 1973ff-1(a)(1). Thus, *Touche Ross* does not stand as a bar to this case.

Defendants then quote *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), for the proposition that "a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy." Def. Mem. at 7. In *Sandoval*, the Court found there was no private right of action; however, *Sandoval* was a case involving requirements for the issuance of private vehicle driver's licenses, not voting.

In voting cases, the Court has more readily found Congress to have manifested an intent to create a private right of action. For example, in *Morse v. Republican Party of Virginia,* 517 U.S. 186 (1996), five members of the Court agreed that there was a private right of action to enforce Section 10 of the Voting Rights Act, which banned poll taxes, even though Section 10 did not mention a private right of action. *See* 517 U.S. at 230 (opinion of Stevens, J., joined by Ginsburg, J.) (rejecting argument that there is no private right of action to enforce Section 10, even though Section 10 "only authorizes

enforcement proceedings brought by the Attorney General and does not expressly mention private actions"); *id.* at 240 (Breyer, J., joined by O'Connor and Souter, JJ., concurring in the judgment) (agreeing that "Congress must be taken to have intended to authorize a private right of action to enforce § 10 of the Voting Rights Act."). The same result should be reached here.

Finally, Defendants overlook the fact that Plaintiff sues not only under UOCAVA, but also under 42 U.S.C. § 1983. The law governing the existence of a private right of action under § 1983 was recently explained by the Fourth Circuit in *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204 (4th Cir. 2007):

> Section 1983 imposes liability on anyone who, acting under color of state law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. ***A plaintiff alleging a violation of a federal statute may sue under § 1983*** unless [1] "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or [2] "Congress has foreclosed such enforcement of the statute in the enactment itself[.]" *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423 (1987).

*Id.* at 210 (emphasis added). Thus, the basic rule is that a plaintiff is entitled to bring suit under § 1983 to enforce a federal statute and, while there are two exceptions, neither exception applies here.

With respect to the first exception, the Fourth Circuit has also explained:

> A statute creates an enforceable right if: (1) Congress intended that the provision in question benefit the plaintiff; (2) the right ostensibly protected by the statute "is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) the statute unambiguously imposes a binding obligation on the states.

509 F.3d at 210 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). All three of these criteria are present here, and Defendants have not contended otherwise. With respect to the second category of exception, Congress clearly has not foreclosed private

6

enforcement of UOCAVA within UOCAVA itself. Thus, neither exception applies, and the federal right created by UOCAVA are enforceable under Section 1983.

This conclusion is bolstered by the holding of the court in *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (*per curiam*), that the Help America Vote Act ("HAVA"), 42 U.S.C. § 15482, could be enforced through a Section 1983 action. The court focused on the language in HAVA stating that an "'*individual shall be permitted* to cast a provisional ballot,'" *id.* at 572 (citing 42 U.S.C. §15482(a)(2)) (emphasis added by court). Given this language, the court found that HAVA created rights on behalf of individual voters to cast provisional ballots, and that individual voters could use Section 1983 to enforce these rights. *Id.* at 572–573. In the same way, UOCAVA provides that "[e]ach State *shall . . . permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot* in general, special, primary, and runoff elections for Federal office. . ." 42 U.S.C. § 1973ff-1 (emphasis added). In light of the Sixth Circuit's conclusion in *Sandusky County*, this Court should find that UOCAVA is enforceable privately through Section 1983.

## The Case Is Not Moot

Defendants contend that that case is moot because "even if the number of late arriving ballots was sufficient to swing Virginia from Obama to McCain, it would not change the results of the Presidential Election." Def. Mem. at 8. Such a cavalier attitude is surprising for officials charged with maintaining "purity in all elections." Va. Code § 24.2-103(A). Maintaining that purity means that **every** vote must be counted, whether or not it will affect the outcome. Indeed, under Defendant's theory, once Obama

7

amassed 270 electoral votes from the continental United States, it would have been permissible for election officials in Alaska and Hawaii to have shut down the polls and gone home. Again reduced to its absurdity, Defendants' argument again must be rejected.

By continuing this action, it is decidedly not McCain's intent to challenge President-elect Obama's victory. Instead, it is McCain's intent to vindicate the right of military and other overseas voters to have their votes counted and included in the official vote totals. Whether those voters supported Senator McCain or President-elect Obama, their ballots ought not to be thrown in the dust bin on the theory that they are no longer needed.

Moreover, this is an issue capable of repetition yet evading review. Two years from now, there will be another federal election, and again military and other overseas voters will seek to participate. If these Defendants are allowed to escape accountability under UOCAVA by "running out the clock" in this election cycle, those voters could easily find their right to vote in jeopardy again, with time constraints again frustrating adjudication of a remedy. *See, e.g.*, *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (finding that after election ended, action to enforce voting rights should be allowed to proceed, even if it would not influence outcome of that election, because disenfranchisement of voters was "capable of repetition, yet evading review"); *Richardson v. Ramirez*, 418 U.S. 24, 35-36 (1974) (same). For this reason, too, the motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

MCCAIN-PALIN 2008, INC.

By: _____/s/_____

Stephen C. Piepgrass
Of Counsel

William H. Hurd (VSB No. 16769)
 william.hurd@troutmansanders.com
Ashley L. Taylor, Jr. (VSB No. 36521)
 ashley.taylor@troutmansanders.com
Paige S. Fitzgerald (VSB No. 35184)
 paige.fitzgerald@troutmansanders.com
Stephen C. Piepgrass (VSB No. 71361)
 stephen.piepgrass@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia  23219
(804) 697-1200 (phone)
(804) 698-5147 (fax)
 *Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that, on the 7th day of November, 2008, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Robert A. Dybing, Esquire
>  rdybing@t-mlaw.com
> John A. Gibney, Jr. Esquire
>  jgibney@t-mlaw.com
> Thompson McMullen
> 100 Shockoe Slip
> Richmond, Virginia 23219
> (804) 649-7545 (phone)
> (804) 649-0654 (fax)
>
> *Counsel for Defendants*


> _____/s/_____
> Stephen C. Piepgrass (VSB No. 71361)
>  stephen.piepgrass@troutmansanders.com
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> P.O. Box 1122
> Richmond, Virginia 23219
> (804) 697-1200 (phone)
> (804) 698-5147 (fax)
>
> *Counsel for Plaintiff*

1782221