# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| MCCAIN-PALIN 2008, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:08CV709 |
| JEAN CUNNINGHAM, Chairman, Virginia State Board of Elections; HAROLD PYON, Vice-Chairman, Virginia State Board of Elections; and NANCY RODRIGUES, Secretary, Virginia State Board of Elections, | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF UNITED STATES' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I.  <u>Introduction</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff United States of America seeks immediate injunctive relief against Defendants in order to enforce the right of absent uniformed services and overseas voters[1] under the Uniformed and Overseas Citizens

---

[1] The term "absent uniformed services voter" is defined as (A) a member of a uniformed service on active duty who, by reason of such active duty, is absent from the place of residence where the member is otherwise qualified to vote; (B) a member of the merchant marine who, by reason of service in the merchant marine, is absent from the place of residence where the member is otherwise qualified to vote; and (C) a spouse or dependent of a member referred to in subparagraph (A) or (B) who, by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote. 42 U.S.C. § 1973ff-6(1). The term "overseas voters" is defined as (A) an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved; (B) a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or (C) a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States. 42

Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff to 1973ff-6 ("UOCAVA" or "the Act"), to vote by absentee ballot in the November 4, 2008, general federal election. The United States alleges violations of UOCAVA arising from the failure to provide certain eligible absent uniformed services voters and overseas voters ("UOCAVA voters") with sufficient opportunity to participate in the November 4, 2008 general election. In particular, the United States claims that UOCAVA voters in a substantial number of Virginia's counties, cities, and townships did not have absentee ballots mailed to them in time to receive, execute, and return such ballots by the November 4, 2008 ballot return deadline, despite the fact that such voters requested absentee ballots in a timely manner.

The United States can clearly demonstrate all of the requirements for a preliminary injunction in this case. First, given that Defendants' own records demonstrate that many UOCAVA voters who requested a timely absentee ballot were not mailed an absentee ballot in a timely manner – in some cases less than <u>two</u> weeks before the November 4, 2008 election – there is a substantial likelihood that the United States will succeed on the merits of its claim. Second, if the requested relief is denied, UOCAVA voters' right to cast a vote in the November 4, 2008 election will be denied, causing irreparable harm. Third, if granted, the requested relief would not cause any harm to Defendants. Finally, the public interest weighs strongly in favor of allowing the votes of absent uniformed services and overseas voters to count in the November 4, 2008 election. Accordingly, the United States requests that this Court enter an order requiring Defendants to count any absentee ballots from UOCAVA voters that were executed by November 4, 2008 and are received by 7:00 p.m. on November 14, 2008, provided that they

---

U.S.C. § 1973ff-6(5).

otherwise satisfy the requirements of Virginia law.

II. <u>Statutory Basis</u>

Section 102 of UOCAVA provides in relevant part as follows:

Each State shall –

(1) permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary and runoff elections for Federal office;

(2) accept and process, with respect to any general, special, primary, or runoff election for Federal office, any otherwise valid voter registration application and absentee ballot application from an absent uniformed services voter or overseas voter, if the application is received by the appropriate State election official not less than 30 days before the election. . . .

42 U.S.C. § 1973ff-1.

The core protection of UOCAVA at issue in this case is that voters eligible under its protections – both military and civilian – have the right to register and vote by absentee ballot in federal elections conducted by the state in which they were last domiciled. 42 U.S.C. §§ 1973ff-1 and 1973ff-6. In order to allow qualified citizens to exercise this right, states must ensure that absentee ballots are mailed sufficiently in advance of a scheduled election so as to allow the receipt, execution, and return of the ballot to the appropriate election official by the state statutory deadline. UOCAVA protects qualified voters whose requests for absentee ballots were in the hands of appropriate election officials at least 30 days before the federal election in which they wished to vote absentee.

III. <u>Facts</u>

    A. Background

The Department of Defense, through the Federal Voting Assistance Program ("FVAP"), is charged with the responsibility of administering UOCAVA.[2] On August 19, 2008, the Department of Defense and the Department of Justice sent a letter to Defendant Nancy Rodrigues, Secretary of the Virginia State Board of Elections, reiterating the Commonwealth's obligations under UOCAVA and requesting that the State Board of Elections self-monitor for UOCAVA compliance – i.e., survey its localities and report to FVAP the dates upon which they mailed their absentee ballots to UOCAVA voters for the November 4, 2008 election. See Exhibit A, Declaration of Pauline Brunelli; <u>see also</u> Exhibit B, Letter to Rodriguez. On September 10, 2008, Vickie Williams, the Absentee Voting & Voter Education Coordinator for the Virginia State Board of Elections, emailed FVAP and agreed that Virginia would self-monitor its localities and report their UOCAVA ballot mailing progress to FVAP. <u>See</u> Exhibit C, Email from Vickie Williams.

On September 30, 2008, Justice Department attorney Lema Bashir spoke with Vickie Williams to determine whether Virginia localities had mailed their absentee ballots to military and overseas voters in a timely manner. <u>See</u> Exhibit D, Declaration of Lema Bashir. Ms. Williams assured Ms. Bashir that all of Virginia's localities had sent absentee ballots to all the

---

[2] The Department of Defense has delegated its responsibilities for administering UOCAVA to the Federal Voting Assistance Program. <u>See</u> Department of Defense Directive 1000.4.

UOCAVA voters who had requested an absentee ballot up until that date.  Id.[3]

On November 12, 2008, the Virginia State Board of Elections sent the Justice Department a list of absentee ballot data for UOCAVA voters from the November 4, 2008 election, which included the names of UOCAVA voters, in what locality they were registered to vote, when their requests for absentee ballots were processed by the localities, the dates the absentee ballot envelope labels were printed, and the date, if any, the voted absentee ballot was processed by the local electoral board or registrar.  See Exhibit D, Declaration of Lema Bashir; see Exhibit E, Virginia State Board of Elections UOCAVA Absentee Voter Information.  The data provided to the Justice Department was created by Defendants pursuant to this Court's Order of November 4, 2008.

Notwithstanding Ms. Williams' assurances to the contrary, Defendants' own UOCAVA data reveals that there were, at a minimum, 656 UOCAVA voters who requested an absentee ballot in a timely manner but whose absentee ballot envelope labels were not printed until October 7, 2008 or later – 28 days or less before the November 4, 2008 election.  See Exhibit E, Virginia State Board of Elections UOCAVA Absentee Voter Information; see also Exhibit F, Excel Spreadsheet of Virginia State Board of Elections Absentee Voter Information.[4]  Defendants report that they have not received ballots back from at least 253 of these voters.  Id.

---

[3] Ms. Williams promised Ms. Bashir that she would send a follow-up e-mail to FVAP with the specific dates when each locality had mailed such ballots.  See Exhibit D, Declaration of Lema Bashir.  Later, Ms. Williams indicated that the Board of Election's computer system could not provide such data.  See Exhibit A, Declaration of Pauline Brunelli; see also Exhibit I, Email from Vickie Williams.

[4] Exhibit F is an Excel spreadsheet that contains the same information provided by Virginia in its database but is easier to read and search.

Moreover, Defendants' records demonstrate that at least 125 military servicemembers and overseas citizens who requested a timely absentee ballot did not have their absentee ballot envelope labels printed until <u>two</u> weeks (or less) before the November 4, 2008 election. Id.

B. Absentee Mailing Deadline, Absentee Ballot Transit Time, and Relief Sought

Under Virginia law, absentee ballots must be received by the day of the election to be counted. Va. Code Ann. § 24.2-709. For the federal election held on Tuesday, November 4, 2008, the deadline for receipt of absentee ballots was the close of the polls on election day, namely, 7:00 p.m. Eastern Standard Time.

Based on United States Postal Service and United States Military Postal Service Agency estimates, it is well established that a <u>minimum</u> of 30 days is needed for round trip delivery of international and military mail to overseas locales. <u>See</u> Exhibit A, Declaration of Pauline Brunelli. According to FVAP Director Pauline Brunelli, an interval of fewer than 30 days will almost certainly be insufficient for ballots sent from Virginia to military overseas voters to be received and timely returned. Id.

In order to ensure compliance with UOCAVA, the United States requests that this Court enter an order requiring Defendants to preserve and count any absentee ballots from UOCAVA voters that were executed by November 4, 2008 and are received by 7:00 p.m. on November 14, 2008, provided that they otherwise satisfy the requirements of Virginia law.

III. <u>Argument</u>

Federal courts, including the Fourth Circuit, have traditionally considered four factors in determining the propriety of granting preliminary relief, in the form of a temporary restraining order or of a preliminary injunction:

>    (1)   the plaintiff's likelihood of success on the merits;
>
>    (2)   the likelihood of irreparable harm to the plaintiff if the injunction is denied;
>
>    (3)   the likelihood of harm to the defendant if the requested relief is granted; and
>
>    (4)   whether granting the injunction is in the public interest.

See, e.g., Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977); Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002). The present circumstances demonstrate that a temporary restraining order and preliminary injunction should be issued.

> A.   It is highly probable that the United States will succeed on the merits

It is clear that under any reasonable standard Defendants failed to provide UOCAVA voters who requested an absentee ballot in a timely manner with sufficient time to receive their absentee ballots, execute them, and return them by the November 4th ballot return deadline. As noted, based on United States Postal Service and United States Military Postal Service Agency estimates, it is well established that a <u>minimum</u> of 30 days is needed for round trip delivery of international and military mail to overseas locales. See Exhibit A, Declaration of Pauline Brunelli. According to FVAP Director Pauline Brunelli, an interval of 30 days or fewer will almost certainly be insufficient for ballots sent from Virginia to military overseas voters to be received and timely returned. Id. Even if military overseas voters marked their ballots and placed them in return mail the day after they arrived, an interval of fewer than 30 days between the mailing date and the deadline for receipt of such ballots would be insufficient for the round trip these ballots must make through international mail. Id. Morever, federal courts have accepted the 30-day benchmark for determining violations of UOCAVA. See United States v.

Georgia, No. 1:04-cv-2040-CAP (N.D. Ga. July 15, 2004); United States v. Pennsylvania, No. 1:cv-04-830, (M.D. Penn. Apr. 16, 2004), attached as Exhibits G and H, respectively.

Defendants' own UOCAVA records reveal that there were, at a minimum, 656 UOCAVA voters who requested an absentee ballot in a timely manner but whose absentee ballot envelope labels were not printed until October 7, 2008 or later – 28 days or less before the November 4, 2008 election. See Exhibit E, Virginia State Board of Elections UOCAVA Absentee Voter Information; see also Exhibit F, Excel Spreadsheet of Virginia State Board of Elections Absentee Voter Information. Moreover, Defendants report that they have not received ballots back from at least 253 of these voters. Id.

Moreover, Defendants' records demonstrate that at least 125 military servicemembers and overseas citizens who requested a timely absentee ballot did not have their absentee ballot envelope labels printed until two weeks (or less) before the November 4, 2008 election. Id. It can hardly be disputed that providing 13 days or less is insufficient time for absentee ballots to be sent to military voters overseas, executed, and returned in time to be counted.

    B.    Irreparable harm will result if the Commonwealth is not required to remedy immediately the violations complained of

At issue in this suit is the right of UOCAVA voters, many of whom are members of the U.S. Armed Forces deployed on dangerous missions in their country's service, to vote a ballot in this year's general election. Those persons will be irreparably denied that right if a 10-day ballot return extension is not ordered.

Under Rule 65, however, the United States need not demonstrate irreparable injury in this case to obtain preliminary relief. Irreparable harm to the moving party may be presumed when there is a violation of a federal statute which specifically provides for an injunction to enforce

8

that mandate.  See, e.g., Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir.2001) (citing cases); see also Burlington N.R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1074 (9th Cir.1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief").

        C.      Defendants would not be harmed if the requested relief is granted

Extending the ballot return deadline by 10 days would not harm Defendants.  Under Virginia law, Defendants "must ascertain the results of the November election" on Monday, November 24, 2008.  Va. Code Ann. § 24.2-679.  Accordingly, requiring Defendants to count the absentee ballots from UOCAVA voters that were executed by November 4, 2008 and are received by 7:00 p.m. on November 14, 2008, would not cause any delay in the certification of the election results.  Moreover, because the absentee ballots that arrived after the November 4, 2008 deadline have already been marked and segregated by election officials pursuant to this Court's November 4, 2008 Order, Defendants cannot claim that counting them would cause an undue burden on them.

Moreover, the only reason why the Department of Justice and FVAP were not made aware earlier of Defendants' failure to send timely ballots to UOCAVA voters is because a Virginia State Board of Election official incorrectly assured the Justice Department that Virginia had sent its absentee ballots in a timely manner.  See Exhibit D, Declaration of Lema Bashir.  Not requiring Defendants to provide a 10-day ballot return extension would effectively enable them to benefit from having provided such misinformation.  Defendants should not be allowed to claim harm as a result of such conduct, especially at the expense of UOCAVA voters.

9

D. The public interest favors the granting of immediate relief

In enacting UOCAVA, Congress has determined that the public interest is served by guaranteeing UOCAVA voters the right to participate in federal elections. The relief sought herein, which entails reasonable measures to extend the ballot return deadline for 10 days, advances the public interest by enabling UOCAVA voters, many of whom are members of the U.S. Armed Forces deployed on missions abroad, to vote a ballot in this year's general election.

IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the United States' motion for Temporary Restraining Order and Preliminary Injunction and enter the attached proposed Order granting immediate relief for the violations of UOCAVA described herein.

Respectfully submitted,

GRACE CHUNG BECKER
Acting Assistant Attorney General

DANA J. BOENTE
Acting United States Attorney

By: _____/s/_____
Robin E. Perrin
Virginia State Bar No. 65825
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 819-7417
Email: Robin.Perrin2@usdoj.gov

CHRISTOPHER COATES
Chief, Voting Section

REBECCA J. WERTZ
Principal Deputy Chief
ALBERTO RUISANCHEZ
LEMA BASHIR
Trial Attorneys
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Ave., NW
Room NWB-7254
Washington, D.C.  20530
Phone: (202) 305-1291
Fax:     (202) 307-3961
rebecca.j.wertz@usdoj.gov
alberto.ruisanchez@usdoj.gov
lema.bashir@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of November, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

>Robert A. Dybing
>rdybing@t-mlaw.com
>*Attorney for the Defendant*
>
>Stephen Charles Piepgrass
>stephen.piepgrass@troutmansanders.com
>*Attorney for the Plaintiff*

>By: /s/
>_____
>Robin E. Perrin
>Virginia State Bar No. 65825
>Assistant United States Attorney
>United States Attorney's Office
>600 East Main Street, Suite 1800
>Richmond, Virginia 23219
>Telephone: (804) 819-5400
>Facsimile: (804) 819-7417
>Email: Robin.Perrin2@usdoj.gov