UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MCCAIN-PALIN, 2008, INC.

    Plaintiffs,

v.                                         Case No. 3:08cv709

JEAN CUNNINGHAM, *et al.*,

    Defendants.

**MEMORANDUM IN OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The defendants, Jean Cunningham, Nancy Rodrigues, and Harold Pyon (the "Defendants"), the members of the Virginia Board of Elections, sued in their official capacity, oppose the Motion for Temporary Restraining Order and Preliminary Injunction filed by Intervenor United States of America (the "Intervenor").

**Introduction**

The Intervenor relies not on federal law – because there is no federal law requiring States to mail absentee ballots a minimum number of days before an election – but on an *estimate* made by an unelected federal employee. Based only on this estimate, the Intervenor asks the Court to impose the extraordinary remedy of re-writing the election laws of the Commonwealth of Virginia. The Court should reject this invitation. Moreover, the Intervenor's motion inexplicably ignores the remedial section of the UOCAVA statute that provides an express remedy for the very situation at hand: UOCAVA voters may vote *by Federal write-in ballot* if they do not receive a State-issued absentee ballot at least 30 days before an election. *See* 42 U.S.C. § 1973ff-2. Accordingly, Congress having precisely foreseen this potential problem and remedied it

in UOCAVA, preliminary injunctive relief is unnecessary. Indeed, it would be improper (to say the least) for this Court to impose by judicial fiat a different remedy from that approved by Congress.

**I. Facts**

1. For the purpose of this Memorandum, it is assumed that there were some UOCAVA voters (*see* Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff et seq.) who did not receive absentee ballots from local electoral officials in the Commonwealth of Virginia 30 days or more before the 2008 general election.

2. The Defendants agree with the Intervenor that the determination that a minimum of 30 days is needed for round-trip delivery of absentee ballots to international and military locales was made not by Congress, not by an adopted federal regulation, not by a Cabinet member, not by an elected official, but by Pauline Brunelli, a Defense Department employee. *See* Intervenor's Memorandum ("Int. Mem."), p. 6, and Exhibit A thereto (Ms. Brunelli's Affidavit, ¶ 15).

3. The Intervenor has not alleged any facts showing that any UOCAVA voters were prevented by the Defendants (or by anyone else for that matter) from exercising their franchise using a Federal write-in ballot as provided in 42 U.S.C. § 1973ff-2.

**II. Argument**

**A. Legal Standard for Preliminary Injunctions**

In the Fourth Circuit, the standard for preliminary injunctions was established in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Four factors must be considered: (a) the likelihood of irreparable harm to the plaintiff if the

preliminary injunction is denied; (b) the likelihood of harm to the defendant if the requested relief is granted; (c) the likelihood that the plaintiff will succeed on the merits; and (d) the public interest. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). The plaintiffs cannot establish any of these factors.

1. **No Irreparable Harm**

The Intervenor cannot establish that anyone has suffered harm at all, let alone irreparable harm. Every UOCAVA voter who did not receive a State absentee ballot 30 days before the election had the right to vote using a write-in ballot as provided in 42 U.S.C. § 1973ff-2 (authorizing Federal write-in ballots for "overseas voters who make timely application for, and do not receive, States' absentee ballots."). Thus, UOCAVA voters who voted using a Federal write-in ballot were not harmed. Those who did not so vote were not harmed either: they simply made the decision—whether advertently or inadvertently—not to exercise a right conferred by law.

It is inexplicable that the Intervenor did not even mention § 1973ff-2 in his injunction papers—or in his complaint—since that subsection of UOCAVA remedies the very concerns expressed by the Intervenor, and it eliminates any hardship on UOCAVA voters who do not receive timely absentee ballots from States. Indeed, § 1973ff-2 was the very *raison d'etre* for adopting UOCAVA, which revised an earlier absentee-ballot statute. *See Bush v. Hillsborough County Canvassing Board*, 123 F. Supp. 2d 1305, 1310 (N.D. Fla. 2000) (UOCAVA's "*primary purpose* was to facilitate absentee voting and to provide 'for a write-in absentee ballot that may be used in Federal general elections by overseas voters who, through no fault of their own, fail to receive a regular [State] absentee ballot in sufficient time to vote and return the ballot prior to the voting deadline

3

in their State.'" (quoting H.R. REP. NO. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009 (emphasis added)).

The Intervenor now wants to re-write UOCAVA so that UOCAVA voters who do not receive timely absentee ballots *not only* have the remedy conferred in § 1973ff-2, but also the *additional* remedy of re-writing Virginia Code § 24.2-709 (absentee ballots counted if received before polls close) to permit UOCAVA voters ten extra days to mail in ballots. It hardly bears argument, however, that it is Congress, not the Attorney General, and assuredly not Ms. Brunelli, who writes statutes, and there is nothing ambiguous about § 1973ff-2 which would permit this Court to disregard UOCAVA's clear provisions and graft an *ad hoc* and statutorily unauthorized remedy on top of it. In sum, Congress has already foreseen the potential hardship to UOCAVA voters and addressed it in § 1973ff-2.

**2. Hardship to Commonwealth of Virginia**

The Intervenor's motion asks this Court to re-write Virginia's election laws to permit absentee ballots to be counted if received up to 10 days after the polls close. It cannot be gainsaid that enforcement of the election laws of the Commonwealth of Virginia is of primary importance to Virginia citizens, and it would be a hardship to the Commonwealth and its citizens if Virginia law were to be re-written in the manner requested by the Intervenor, especially at the behest of (merely) a federal employee's estimate of reasonable mailing time. The hardship would also entail the uncertainty in future elections if a different federal employee came up with a different estimate of mailing time, making Virginia's electoral laws mutable by federal whim.

The Intervenor asserts (Int. Mem., p. 9) that there would be no hardship on the Commonwealth because the late-arriving absentee ballots have already been marked and segregated, which is an argument of perfect circularity, and may be ignored.

### 3. **The Intervenor Cannot Succeed on the Merits**

UOCAVA does not confer a right to military and overseas voters to have absentee ballots mailed to them a minimum number of days prior to the election. Tellingly, the Intervenor's argument on the merits (Int. Mem., pp. 7-8) cites not a single provision of UOCAVA in support of his argument. The Intervenor's failure to cite UOCAVA is, to be sure, understandable, because to cite UOCAVA would be fatal to his motion. Consequently, instead of citing federal law, the Intervenor cites Ms. Brunelli's affidavit, in evident expectation that her *ipse dixit* provides a sufficient reason to invalidate Virginia's election laws.

The Defendants, in ironical contrast, *do* rely on UOCAVA for their merits-based argument, and do not shy away from detailed perusal of its provisions, which lead inexorably to the conclusion that the Intervenor cannot succeed on the merits.

To begin with, 42 U.S.C. § 1973ff establishes Federal responsibilities, and, significantly, requires a Presidential designee to "carry out section 1973ff-2 of this title with respect to the Federal write-in ballot for overseas voters. . . ." *See* § 1973ff(b)(3). That subsection, notably, does not empower the Presidential designee to impose any additional remedies beyond that set forth in § 1973ff-2 if States are late sending out absentee ballots. In addition, that subsection, even more notably—given the Intervenor's reliance on Ms. Brunelli's affidavit—does not assign to any federal employee the

5

responsibility to issue binding estimates of mail-delivery times which can be used as a basis to re-write State election laws.

The next subsection of UOCAVA, § 1973ff-1, assigns responsibilities to the States. Those responsibilities include highly specific duties such as using a particular form of post card (§ 1973ff-1(a)(4)), and using a particular form of oath (§ 1973ff-1(a)(5)). That section also prescribes a deadline measured in days: a 90 day deadline for transmitting State reports on absentee ballots to federal officials. Conspicuously absent from the State-assigned responsibilities is any specific deadline for mailing absentee ballots to UOCAVA voters.

The next subsection is § 1973ff-2, which addresses and remedies the very concerns of the Intervenor. That subsection authorizes Federal write-in ballots for "overseas voters who make timely application for, and do not receive, States' absentee ballots." However, the subsection does not provide the additional remedy of re-writing State election laws to accommodate those same voters, as the Intervenor proposes. Importantly, § 1973ff-2(f)(1) does refer to a time deadline for States mailing out absentee ballots: it says that States which do require that State ballots be mailed out at least 90 days before the general election need not permit a federal write-in ballot. Thus, Congress of course knows how to refer to a specific time deadline for States mailing out absentee ballots, which underscores that Congress's decision not to impose such a deadline in UOCAVA was (i) purposeful; and (ii) may not be changed by affidavit.

Moreover, § 1973ff-2(d) recognizes that there will be some UOCAVA voters who (not having received a State absentee ballot 30 days before an election), do vote using a Federal write-in ballot, and then *later* receive their State absentee ballot. Yet instead of

providing that such late-received State absentee ballots must be counted *notwithstanding* State law to the contrary (i.e., the Intervenor's position in this lawsuit), the law merely says that the UOCAVA voter may also send in the State ballot in addition to the Federal write-in ballot.  Crucially, that subsection does not specify the degree of lateness, so that it would apply to State absentee ballots received within, say, two weeks of an election, again implicating the precise facts now before the Court.  In other words, § 1973ff-2(d) recognized that States would sometimes mail absentee ballots to UOCAVA voters that would not be received until just before the election—yet did not provide a separate or additional remedy if that were to occur; instead, § 1973ff-2(d) makes clear that UOCAVA voters would be expected *to have voted using a Federal write-in ballot* in such instance.  This provision should entirely moot the Intervenor's concerns.

The next subsection, § 1973ff-3, deals with ballot application forms and does not appear to apply to this dispute.  Neither do §§ 1973ff-5 or -6.

Significant, however, is § 1973ff-4, the enforcement section of UOCAVA, which authorizes the Attorney General to bring a civil action to "carry out this subchapter."  As just pointed out, the subchapter's (i.e., UOCAVA's) provisions are clear: (i) UOCAVA does not mandate a time deadline for States to send out absentee ballots; and (ii) UOCAVA already provides a remedy in § 1973ff-2 if States are late sending out absentee ballots.  The Intervenor's requested relief thus will not "carry out this subchapter;" what it purports to carry out is Ms. Brunelli's affidavit.

The Intervenor is seeking nothing less than federal preemption of Virginia Code § 24.2-709.  There is no basis for such an extraordinary remedy.  The Fourth Circuit has recognized that the "purpose of Congress is the ultimate touchstone" in a preemption

7

case.  *See Casino Ventures v. Stewart*, 183 F.3d 307, 310 (4th Cir. 1999) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).  Here, Congress's purpose is clear, and UOCAVA envisions neither mandatory deadlines for States, nor the re-writing of State election laws, because it has already prescribed a remedy for UOCAVA voters.

Accordingly, the Intervenor cannot possibly win on the merits.

### 4. The Public Interest

The public interest is advanced by enforcement of UOCAVA (including § 1973ff-2) as well as Virginia's election laws.  That interest is not advanced by judicial intervention beyond the clear and unambiguous scope of UOCAVA, particularly when based on so fragile a foundation as a mere affidavit.  Indeed, to award relief as requested would open the door to all manner of federal intrusion into State sovereignty whenever a federal employee's opinions are put on paper and notarized.

The Intervenor's cursory discussion of the public interest (Int. Mem., p. 10) again, and predictably, ignores the remedial provisions of § 1973ff-2 and suggests that the Court must re-write Virginia election laws to solve the problem of late-mailed-out absentee ballots.  Wrong.  Congress already anticipated the problem, and provided a legislative solution.  There is no need for a judicial solution.

## III. Conclusion

The Intervenor cannot establish any of the *Blackwelder* elements; accordingly, the motion for temporary restraining order and preliminary injunction should be denied.

JEAN CUNNINGHAM, *et al.*

By __/s/_____
        Counsel

Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
Attorney for Defendants
ThompsonMcMullan, P.C.
100 Shockoe Slip
Third Floor
Richmond, Virginia 23219
Telephone: (804)649-7545
Fax: (804)780-1813
Email: rdybing@t-mlaw.com
jgibney@t-mlaw.com

**Certificate of Service**

     I certify that on November 16, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By:   /s/_____
Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
Counsel for Defendants
ThompsonMcMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
(804)649-7545
Fax: (804)780-1813
rdybing@t-mlaw.com
jgibney@t-mlaw.com