UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MCCAIN-PALIN, 2008, INC.

    Plaintiffs,

v.                      Case No. 3:08cv709

JEAN CUNNINGHAM, *et al.*,

    Defendants.

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT IN INTERVENTION

The defendants, Jean Cunningham, Nancy Rodrigues, and Harold Pyon (the "Defendants"), the members of the Virginia Board of Elections, sued in their official capacity, moved to dismiss the Complaint in Intervention filed by Intervenor United States of America (the "Intervenor").

### Introduction

The Complaint in Intervention fails to state a claim because UOCAVA does not require States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. Accordingly, the Defendants – or more accurately, Virginia's local electoral officials, who have the statutory duty to mail out absentee ballots – have done nothing wrong. In addition, UOCAVA already provides a remedy for the concerns expressed by the Intervenor: UOCAVA voters may vote *by Federal write-in ballot* if they do not receive a State-issued absentee ballot at least 30 days before an election. *See* 42 U.S.C. § 1973ff-2. Accordingly, in the absence of a violation of federal law, and in the

presence of a legislative solution aimed directly at the Intervenor's concerns, the complaint should be dismissed.

I. **Facts**

1. For the purpose of this Memorandum, it is assumed that there were some UOCAVA voters (*see* Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff et seq.) who did not receive absentee ballots from local electoral officials in the Commonwealth of Virginia 30 days or more before the 2008 general election. Complaint in Intervention, ¶ 11.

2. There is no federal statute that requires States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. The Complaint in Intervention is based entirely on a "determination" by the Federal Voting Assistance Program of the Department of Defense that such ballots be mailed at least 30 days before an election, and a "recommendation" that States allow 45 days for round-trip mailing of absentee ballots. Complaint in Intervention, ¶ 10.

3. The Complaint in Intervention does not allege any facts showing that any UOCAVA voters were prevented from exercising their franchise using a Federal write-in ballot as provided in 42 U.S.C. § 1973ff-2.

II. **Argument**

A. **Legal Standard for Motion to Dismiss**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Supreme Court recently

noted, a complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

Furthermore, even assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965. In addition, the court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Accordingly, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974 (2007).

**B. UOCAVA**

Because UOCAVA does not require States to mail absentee ballots to UOCAVA voters a minimum number of days before an election, the Complaint in Intervention fails to state a cause of action under federal law and should be dismissed out of hand. The Intervenor's claim to relief rests entirely on a "determination" by a federal agency that is not even embodied in a federal regulation. That determination, moreover, goes beyond UOCAVA's scope, and purports to impose on States far greater burdens that Congress imposed in UOCAVA, which is clearly impermissible. Underscoring the lack of legal substance to the Complaint in Intervention is the UOCAVA provision that permits the use of Federal write-in ballots if States are late mailing out absentee ballots. *See* 42 U.S.C. § 1973ff-2. Indeed, § 1973ff-2 was the very *raison d'etre* for adopting UOCAVA, which revised an earlier absentee-ballot statute. *See Bush v. Hillsborough*

*County Canvassing Board*, 123 F. Supp. 2d 1305, 1310 (N.D. Fla. 2000) (UOCAVA's "*primary purpose* was to facilitate absentee voting and to provide 'for a write-in absentee ballot that may be used in Federal general elections by overseas voters who, through no fault of their own, fail to receive a regular [State] absentee ballot in sufficient time to vote and return the ballot prior to the voting deadline in their State.'" (quoting H.R. REP. NO. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009 (emphasis added)).

The Intervenor's Complaint essentially asks the Court to re-write UOCAVA so that UOCAVA voters who do not receive timely absentee ballots *not only* have the remedy conferred in § 1973ff-2, but also the *additional* remedy of re-writing Virginia Code § 24.2-709 (absentee ballots counted if received before polls close) to permit UOCAVA voters ten extra days to mail in ballots. However, only Congress can enact federal statutes, and there is nothing ambiguous about § 1973ff-2 which would permit this Court to disregard UOCAVA's clear provisions and graft an *ad hoc* and statutorily unauthorized remedy on top of it. Congress has already foreseen the potential hardship to UOCAVA voters and addressed it in § 1973ff-2.

Careful examination of UOCAVA reveals that the relief sought by the Intervenor is unauthorized as well as unnecessary. To begin with, 42 U.S.C. § 1973ff establishes Federal responsibilities, and, significantly, requires a Presidential designee to "carry out section 1973ff-2 of this title with respect to the Federal write-in ballot for overseas voters. . . ." *See* § 1973ff(b)(3). That subsection, notably, does not empower the Presidential designee to impose any additional remedies beyond that set forth in § 1973ff-2 if States are late sending out absentee ballots. In addition, that subsection, even more notably—given the Intervenor's reliance on federal agency "determinations"—does not

assign to any federal agency the responsibility to issue binding estimates of mail-delivery times which can be used as a basis to re-write State election laws.

The next subsection of UOCAVA, § 1973ff-1, assigns responsibilities to the States. Those responsibilities include highly specific duties such as using a particular form of post card (§ 1973ff-1(a)(4)), and using a particular form of oath (§ 1973ff-1(a)(5)). That section also prescribes a deadline measured in days: a 90 day deadline for transmitting State reports on absentee ballots to federal officials. Conspicuously absent from the State-assigned responsibilities is any specific deadline for mailing absentee ballots to UOCAVA voters.

The next subsection is § 1973ff-2, which addresses and remedies the very concerns of the Intervenor. That subsection authorizes Federal write-in ballots for "overseas voters who make timely application for, and do not receive, States' absentee ballots." However, the subsection does not provide the additional remedy of re-writing State election laws to accommodate those same voters, as the Complaint in Intervention seeks. Importantly, § 1973ff-2(f)(1) does refer to a time deadline for States mailing out absentee ballots: it says that States which do require that State ballots be mailed out at least 90 days before the general election need not permit a federal write-in ballot. Thus, Congress of course knows how to enact a time deadline for States if it wishes, which simply underscores that Congress's decision not to impose such a deadline in UOCAVA was intentional.

Moreover, § 1973ff-2(d) recognizes that there will be some UOCAVA voters who (not having received a State absentee ballot 30 days before an election), do vote using a Federal write-in ballot, and then *later* receive their State absentee ballot. Yet instead of

5

providing that such late-received State absentee ballots must be counted *notwithstanding* State law to the contrary (i.e., the Intervenor's position in this lawsuit), the law merely says that the UOCAVA voter may also send in the State ballot in addition to the Federal write-in ballot. Crucially, that subsection does not specify the degree of lateness, so that it would apply to State absentee ballots received within, say, two weeks of an election, again implicating the precise facts now before the Court. In other words, § 1973ff-2(d) recognized that States would sometimes mail absentee ballots to UOCAVA voters that would not be received until just before the election—yet did not provide a separate or additional remedy if that were to occur; instead, § 1973ff-2(d) makes clear that UOCAVA voters would be expected *to have voted using a Federal write-in ballot* in such instance.

The next subsection, § 1973ff-3, deals with ballot application forms and does not appear to apply to this dispute. Neither do §§ 1973ff-5 or -6.

Significant, however, is § 1973ff-4, the enforcement section of UOCAVA, which authorizes the Attorney General to bring a civil action to "carry out this subchapter." As just pointed out, the subchapter's (i.e., UOCAVA's) provisions are clear: (i) UOCAVA does not mandate a time deadline for States to send out absentee ballots; and (ii) UOCAVA already provides a remedy in § 1973ff-2 if States are late sending out absentee ballots. The Intervenor's requested relief thus will not "carry out this subchapter;" but will carry out an unofficial and unauthorized expansion of UOCAVA beyond Congress's clearly expressed intent.

The Intervenor is seeking nothing less than federal preemption of Virginia Code § 24.2-709. There is no basis for such an extraordinary remedy. The Fourth Circuit has

recognized that the "purpose of Congress is the ultimate touchstone" in a preemption case. *See Casino Ventures v. Stewart*, 183 F.3d 307, 310 (4th Cir. 1999) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)). Here, Congress's purpose is clear, and UOCAVA envisions neither mandatory deadlines for States, nor the re-writing of State election laws, because it has already prescribed a remedy for UOCAVA voters.

Accordingly, the Complaint in Intervention fails to state a claim upon which the relief sought can be granted.

## C. Local Electoral Officials are Necessary Parties

The Complaint in Intervention asks the Court to "ensure that appropriate election officials" count absentee ballots as requested. *See* Complaint in Intervention, p. 4. The Defendants, however, do not count ballots. In Virginia, local electoral boards perform that function. *See e.g.*, Virginia Code § 24.2-109. Local electoral boards would also be responsible for making the reports referred to in paragraph 3 of the Intervenor's request for relief. Accordingly, all Virginia local electoral officials (electoral boards and registrars) are necessary parties to this action, pursuant to Fed. R. Civ. P. 19(a), and the Intervenor should be required to join them as parties if this motion is denied.

## III. Conclusion

For the foregoing reasons, the Court should dismiss the Complaint in Intervention, with prejudice, and award the Defendants their attorney's fees and costs, and such other relief as the Court deems appropriate.

JEAN CUNNINGHAM, *et al.*

                                             By __/s/_____
                                                      Counsel

Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
Attorney for Defendants
ThompsonMcMullan, P.C.
100 Shockoe Slip
Third Floor
Richmond, Virginia 23219
Telephone: (804)649-7545
Fax: (804)780-1813
Email: rdybing@t-mlaw.com
jgibney@t-mlaw.com

**Certificate of Service**

      I certify that on November 16, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

                                    By:    /s/_____
                                    Robert A. Dybing, VSB No. 32712
                                    John A. Gibney, Jr., VSB No. 15754
                                    Counsel for Defendants
                                    ThompsonMcMullan, P.C.
                                    100 Shockoe Slip, Third Floor
                                    Richmond, Virginia 23219
                                    (804)649-7545
                                    Fax: (804)780-1813
                                    rdybing@t-mlaw.com
                                    jgibney@t-mlaw.com