**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MCCAIN-PALIN 2008, INC.; and UNITED )
STATES OF AMERICA, )
)
      Plaintiffs, )
)
)    Case No. 3:08CV709
    v. )
)
JEAN CUNNINGAM, et al., )
)
      Defendants. )
)
_____)

## United States' Memorandum in Opposition to Defendants' Motion to Dismiss United States' Complaint in Intervention

    The United States submits this Memorandum in Opposition to Defendants' Motion to Dismiss the United States' Complaint in Intervention and respectfully requests that this Court deny Defendants' Motion.

I.    Procedural History

    On November 14, 2008, the United States filed its Complaint in Intervention against Defendants[1] in order to enforce the right to vote of absent uniformed services and overseas voters under the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff to 1973ff-6 ("UOCAVA" or "the Act").[2]  The United States alleges violations of

_____

    [1] On November 26, 2008, the Court granted the United States' Consent Motion to Amend Complaint to clarify the named defendants in this action, specifically the inclusion of the Commonwealth of Virginia and the Virginia State Board of Elections.

    [2] The term "absent uniformed services voter" is defined as (A) a member of a uniformed service on active duty who, by reason of such active duty, is absent from the place of residence where the member is otherwise qualified to vote; (B) a member of the merchant marine who, by

UOCAVA arising from Defendants' failure to provide certain eligible absent uniformed services voters and overseas voters ("UOCAVA voters") with sufficient opportunity to participate in the November 4, 2008 general election. In particular, the United States claims that UOCAVA voters in a substantial number of Virginia's localities did not have absentee ballots mailed to them in time to receive, execute, and return such ballots by the November 4, 2008 ballot return deadline, despite the fact that such voters requested absentee ballots in a timely manner. The United States seeks declaratory and injunctive relief, including an order that otherwise valid absentee ballots from UOCAVA voters, executed by election day and received by November 14, 2008, be counted as validly cast ballots.[3]

On November 14, 2008, the United States filed a Motion for a Preliminary Injunction and Temporary Restraining Order seeking a 10-day extension of Defendants' ballot return deadline in order to count otherwise valid absentee ballots from UOCAVA voters, executed by election day and received by November 14, 2008. This Court denied the United States' Motion on November 17, 2008.

---

reason of service in the merchant marine, is absent from the place of residence where the member is otherwise qualified to vote; and (C) a spouse or dependent of a member referred to in subparagraph (A) or (B) who, by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote. 42 U.S.C. § 1973ff-6(1). The term "overseas voters" is defined as (A) an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved; (B) a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or (C) a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States. 42 U.S.C. § 1973ff-6(5).

[3] The Complaint in Intervention also seeks relief to ensure compliance with UOCAVA in future federal elections. (Pl.'s Compl., 4.)

On November 16, 2008, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

II.    Facts

On November 4, 2008, the Commonwealth of Virginia conducted a general federal election in which voters participated in the selection of candidates for, inter alia, President of the United States.  (Pl.'s Compl., ¶ 6)  Under Virginia law, absentee ballots must be received on the day of the election to be counted.  (Pl.'s Compl., ¶ 9)  For the federal election held on Tuesday, November 4, 2008, the deadline for receipt of absentee ballots was the close of the polls on election day, namely, 7:00 p.m. Eastern Standard Time.  Id.

Based on data from the United States Postal Service, the Department of State, and the Military Postal Service Agency, the Federal Voting Assistance Program of the Department of Defense has determined that states must provide no less than thirty days for the round trip mail transit of a ballot to overseas locations to ensure that voters have a reasonable opportunity to return the ballot in time to be counted.  (Pl.'s Compl., ¶ 10)

Pursuant to this Court's November 4, 2008, Order, Defendants created and compiled information related to UOCAVA voters from the November 4, 2008 election.  Defendants' own data reveal that there were, at a minimum, 656 UOCAVA voters who requested an absentee ballot in a timely manner but whose absentee ballot envelope labels were not printed until October 7, 2008 or later – 28 days or less before the November 4, 2008 election.  (Pl.'s Compl., ¶ 11.)  Moreover, Defendants' records demonstrate that at least 125 military servicemembers and

overseas citizens who requested a timely absentee ballot did not have their absentee ballot envelope labels printed until <u>two</u> weeks (or less) before the November 4, 2008 election.  <u>Id.</u>

III.     <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed under Rule 12(b)(6) only if it does not allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  When considering such a motion, well-pled allegations in the complaint are accepted as true, and facts and reasonable inferences are construed in the light most favorable to the plaintiff.  <u>Ibarra</u> v. <u>United States</u>, 120 F.3d 472, 474 (4th Cir. 1997).  As the Fourth Circuit has stated, "A rule 12(b)(6) motion should be granted only in very limited circumstances."  <u>Rogers</u> v. <u>Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

IV.     <u>Argument</u>

In their Motion to Dismiss, Defendants argue that the United States fails to state a claim upon which relief can be granted because "UOCAVA does not require States to mail absentee ballots to UOCAVA voters a minimum number of days before an election."  (Def.'s Mem. Supp. Mot. to Dismiss 1, 3.)  Accordingly, Defendants claim that their failure to send absentee ballots in a timely manner to military and overseas voters who timely requested such ballots does not constitute a violation of UOCAVA.  Defendants also argue that the relief sought by the United States is "unauthorized" by UOCAVA because when a state fails to mail absentee ballots in a timely manner, the only remedy that UOCAVA allows is for the voters to cast a Federal write-in absentee ballot.  <u>Id.</u> at 4-6.

Defendants' position misconstrues the statutory structure and basic protections afforded by UOCAVA, contradicts the legal precedents that have made those protections a reality, and contravenes the Federal Voting Assistance Program's reasonable interpretation of UOCAVA. Defendants' erroneous interpretation would mean that states could mail absentee ballots to military and overseas voters one day before an election for federal office, or not at all, without violating UOCAVA, thereby seriously undermining the core protections of UOCAVA's voting guarantee. Further, the Federal write-in absentee ballot is an emergency, back-up mechanism that UOCAVA provides for only in general elections, is not the equivalent to receiving an absentee ballot from the voter's state election official, and does not obviate a state's obligation under UOCAVA to send ballots to eligible voters in time for them to be received, cast, and returned by the state's deadline. The allegations contained in the United States' Complaint plainly state a cause of action under UOCAVA, and Defendants' Motion to Dismiss should be denied.

A.     The Right to Vote by Absentee Ballot under UOCAVA Includes the Right to Have a Ballot Sent in Sufficient Time to Be Received, Executed, and Returned so that It May be Counted.

       1.     The Plain Meaning of UOCAVA's Voting Guarantee Requires That States Mail Timely Absentee Ballots to Military and Overseas Voters.

Section 102(a)(1) of UOCAVA requires that states "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). It is beyond dispute that when one has a right to vote, that means a right to cast a vote that will be counted. See, e.g., Allen v. State Bd. of Elections, 393 U.S. 544, 565-566 (1969); Reynolds v. Sims, 377 U.S. 533, 555 (1964). It follows that when persons have a statutory right to vote by

absentee ballot, that right is denied if conditions are placed upon the voter which the voter cannot meet.  If states fail to, or refuse to, mail absentee ballots to military and overseas voters in time for such ballots to be received, executed, and returned by the counting deadline, they have not permitted such voters "to vote by absentee ballot" – a clear and unambiguous violation of Section 102(a)(1).  Interpreting Section 102(a)(1) in any other way would eviscerate the core protections of UOCAVA's voting guarantee.

> 2.      Adopting Defendants' Argument Would Leave UOCAVA Voters with No Right to Cast a Ballot in Special, Primary, and Runoff Elections for Federal Office.

Defendants argue that the failure of states to send timely absentee ballots does not violate UOCAVA because "UOCAVA voters may vote by Federal write-in ballot if they do not receive a State-issued absentee ballot at least 30 days before an election."[4]  (Def.'s Mem. Supp. Mot. to Dismiss 1.)  Defendants' argument fails for a number of reasons.

First, under UOCAVA, the Federal write-in absentee ballot is authorized only "in general elections for Federal office."  42 U.S.C. § 1973ff-2(a).  UOCAVA does not extend the requirement that states accept the Federal write-in absentee ballot to special, primary, or runoff elections for federal office.  Id.  Therefore, a ruling that there is no UOCAVA violation when states fail to mail absentee ballots in a timely manner would effectively mean that military and overseas voters who request a timely absentee ballot for a special, primary, or runoff federal election would have no opportunity to vote by absentee ballot –  i.e., they would have no right to receive a timely absentee ballot and no right to use the Federal write-in absentee ballot under

---

[4] The Federal write-in absentee ballot is an absentee ballot "for use in general elections for Federal office by absent uniformed services voters and overseas voters who make timely application for, and do not receive, States, absentee ballots."  42 U.S.C. § 1973ff-2(a).  Pursuant to 42 U.S.C. § 1973ff-2(b), the Federal write-in absentee ballot "shall be submitted and processed in the manner provided by law for absentee ballots in the State involved."  Id.

UOCAVA.  This position would render meaningless UOCAVA's express mandate that states permit military and overseas voters to vote in special, primary and runoff elections, and would violate "a fundamental rule of statutory construction that a statute should not be construed in a manner which renders certain provisions meaningless or insignificant."  Lee v. Alleghany Reg'l Hosp. Corp., 778 F. Supp. 900, 904 (W.D. Va. 1991) (citing cases).[5]

Moreover, Defendants cannot persuasively argue that for general elections for federal office, Section 102(a)(1) does not require absentee ballots to be mailed in a timely manner because of the availability of the Federal write-in absentee ballot, but that for primary, special, and runoff elections the same exact provision does require it.  Such a position would illogically interpret the same language of Section 102(a)(1) in two different ways, which runs "contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning," Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992).  Such an argument would also contradict Defendants' position that since UOCAVA's statutory language does not prescribe a ballot transit time for absentee ballots, UOCAVA can never be violated when states fail to send timely absentee ballots.  Accordingly, the only consistent, logical, and meaningful way to interpret the right to vote by absentee ballot enshrined in Section 102(a)(1) is that it requires that states mail absentee ballots, in all elections for federal office, sufficiently in

_____

[5] Virginia law provides that the Federal write-in absentee ballot may be used in general, special, and primary elections for federal office.  Va. Code Ann. § 24.2-702.1.  The Commonwealth's voluntary extension of the use of Federal write-in absentee ballots to special and primary elections, however, has no bearing on what Section 102(a)(1) of UOCAVA requires or means, and does not affect the ability of the United States to state a claim under federal law.  Moreover, other states have not extended the use of the Federal write-in absentee ballot to non-general elections.  See, e.g., Haw. Rev. Stat. § 15-3.5.

advance of the election so as to allow the receipt, execution, and return of the ballot by the counting deadline.

> 3. Numerous Court Rulings Contradict Defendants' Argument that UOCAVA Does Not Require States to Mail Absentee Ballots to Military and Overseas Voters a Minimum Number of Days Before an Election.

Courts have consistently and repeatedly ruled that the failure of states to send timely absentee ballots to military and overseas voters violates UOCAVA. In United States v. Georgia, the court granted the United States' motion for a preliminary injunction on the grounds that the State of Georgia failed to mail timely absentee ballots under UOCAVA. See Exhibit A, No. 1:04-CV-2040 (N.D. Ga. July 16, 2004) (order granting preliminary injunction, 5). The court ruled that the "United States is likely to prevail on its claim that the State of Georgia is in violation of UOCAVA, as several counties were not able to send absentee ballots in a timely manner so as to ensure that those protected by the statute would have time to receive them, execute them, and send them back to county election officials before the election deadlines." Id.

In United States v. Pennsylvania, the court granted the United States' motion for a preliminary injunction on similar grounds, stating that:

> There can be no doubt that Plaintiff is entitled to injunctive relief. Plaintiff is likely to prevail on the merits of its claim that the Commonwealth is in violation of UOCAVA. Plaintiff has established that county election officials have failed in their duty to timely forward absentee ballots to citizens abroad including the men and women serving our nation's military. Plaintiff established that overseas ballots require on average 30 days for transit to and from the absentee voter. Yet, a survey by the Pennsylvania Department of State's Bureau of Commissions, Elections and Legislation . . . discloses that many counties have not satisfied their important legal obligations to forward absentee ballots so that they are timely received. Time lines are especially critical in the case of military voters. Based on this, Plaintiff has shown reasonable grounds to believe that this failure constitutes a violation of the Act.

Exhibit B, No. 1:CV-04-830 (M.D. Pa. April 16, 2004) (order granting preliminary injunction, 3); see also Exhibit C, United States v. Delaware, No. 92-523 (D. Del. Sept. 11, 1992) (order granting temporary restraining order, 2) (granting United States' motion for temporary restraining order on the grounds that "Defendants' failure to provide eligible uniformed services and overseas voters a reasonable opportunity to execute and return such absentee ballots would constitute a violation of the Uniformed and Overseas Citizens Absentee Voting Act"); Exhibit D, United States v. Tennessee, No. 3-90-0958 (M.D. Tenn. Nov. 5, 1990) (order granting temporary restraining order and preliminary injunction, 1) (granting United States' motion for a temporary restraining order and preliminary injunction because "[t]here are reasonable grounds to believe that defendants' failure [to send absentee ballots in a timely manner to military and overseas voters] constitutes a violation of the Uniformed and Overseas Citizens Absentee Voting Act"); Exhibit E, United States v. Wyoming, No. C88-0238-8 (D. Wyo. Aug. 16, 1988) (order granting temporary restraining order and preliminary injunction, 1-2)(same).[6]

---

[6] In addition, numerous courts have entered consent orders or decrees affording relief under UOCAVA for states' failure to ensure the timely mailing of absentee ballots based on agreed facts that insufficient time was afforded for ballots to reach the voters and be returned by the state's deadline. See, e.g., Exhibit F, United States v. Michigan, C.A. No. L88-208 CA5 (W.D. Mich. July 29, 1988) (ordering 10-day extension due to late absentee ballot mailing); Exhibit G, United States v. Idaho, C.A. No. 88-1187 (D. Idaho May 23, 1988) (same); Exhibit H, United States v. Oklahoma, C.A. No. CIV-88-1444 P (W.D. Okla. Aug. 22, 1988) (same); Exhibit I, United States v. Mississippi, C.A. No. J89-0529(L) (S.D. Miss. Sept. 18, 1989) (same); Exhibit J, United States v. New Jersey, C.A. No. 90-2357 (JCL) (D.N.J. June 5, 1990) (same); Exhibit K, United States v. Colorado, C.A. No. 90-C-1419 (D. Colo. Aug. 10, 1990) (same); Exhibit L, United States v. New Jersey, C.A. No. 92-4203 (D.N.J. June 2, 1992) (ordering 14-day extension due to late absentee ballot mailing); Exhibit M, United States v. Michigan, C.A. No. 1:92-CV-529 (W.D. Mich. Aug. 3, 1992) (ordering 20-day extension due to late absentee ballot mailing).

Conversely, Defendants have failed to cite a single case, and the United States has not found one, that has ruled that a state's failure to ensure sufficient time for voters to return their ballots in time to be cast does not violate UOCAVA.

In addition, decisions under UOCAVA's predecessor statutes are instructive regarding a state's obligation to send ballots to UOCAVA voters sufficiently in advance of the receipt deadline to enable protected voters to cast a ballot. UOCAVA was adopted by Congress in 1986 to consolidate, expand, and supersede the two existing statutes that governed absentee voting by military and overseas citizens: the Overseas Citizens Voting Rights Act of 1975, Pub. L. No. 94-203, 42 U.S.C. §§ 1973dd et seq. (repealed 1986) ("OCVRA"), and the Federal Voting Assistance Act of 1955, 69 Stat. 584, 42 U.S.C. §§ 1973cc et seq. (repealed 1986) ("FVAA").[7] In particular, Congress intended for UOCAVA to incorporate the obligations contained in the OCVRA and the FVAA that provided "for absentee registration and voting by uniformed services and overseas voters." H.R. Rep. No. 99-765, at 6-7. Although, like UOCAVA, neither statute specified the minimum number of days a state should allow for the round trip transit of ballots to overseas voters, courts nevertheless repeatedly ruled that the OCVRA and the FVAA were violated by a state's failure to send timely absentee ballots, and ordered relief that included extending the time for receipt of UOCAVA ballots beyond the state's deadline. See, e.g.,

_____

[7] In pertinent part, the OCVRA provided that "each citizen residing outside of the United States shall have the right to register absentee for, and to vote by, an absentee ballot in any Federal election in the State, or any election district of such State, in which he was last domiciled immediately prior to his departure from the United States and in which he could have met all qualifications (except any qualifications related to minimum voting age) to vote in Federal elections under any present law." 42 U.S.C. § 1973dd-1. The FVAA stated: "Each State shall enable every citizen in the [Armed Forces, Merchant Marine, and their spouses and dependents] who is absent from the place of his voting residence to register absentee and to vote by absentee ballot in any Federal election . . . held in his election district or precinct if he is otherwise eligible to vote in that election." 42 U.S.C. § 1973cc(b).

Exhibit N, United States v. New York City Bd. of Elections, No. 86 Civ. 8583 (S.D.N.Y. Nov. 12, 1986) (granting United States' motion for preliminary injunction, 1, 3) (granting United States' motion for preliminary injunction on the grounds that Defendant violated the FVAA and the OCVRA by failing to mail ballots to overseas voters in a timely manner); Exhibit O, United States v. Florida, No. TCA 80-1055 (N.D. Fla. Nov. 6, 1980) (order granting temporary restraining order, 1) (granting United States' application for temporary restraining order on the grounds that "Defendants have failed to take such steps as are necessary to ensure that those individuals who have qualified and applied for absentee ballots, pursuant to the Overseas Citizens Voting Rights Act of 1975 and the Federal Voting Assistance Act of 1955, would be given a reasonable opportunity to cast and return such ballots before the close of the polls on November 4, 1980"); Exhibit P, United States v. Arkansas, No. LR-C-84-924 (E.D. Ark. Nov. 5, 1984) (order granting temporary restraining order and preliminary injunction, 2) (same); Exhibit Q, United States v. New York State Bd. of Elections, No. 76-CV-440 (N.D.N.Y. Nov. 4, 1976) (order granting preliminary injunction, 1-2) (same).[8]

Similarly, in United States v. Wisconsin, C.A. No. 84-C-863-C (W.D. Wis. Nov. 30, 1984), vacated on other grounds, 771 F.2d 244 (7th Cir. 1985), the court denied the State of Wisconsin's motion to dismiss, rejecting the very argument Defendants make here – i.e., that the United States could not state a claim for relief because federal law did not require election officials to mail absentee ballots to overseas voters by a specified date. In rejecting that argument, the court explained:

---

[8] In enacting UOCAVA, Congress cited approvingly to the Justice Department's enforcement of the OCVRA and the FVAA, see H.R. Rep. No. 99-765, at 12-13.

> Congress had mandated that State election officials provide these citizens with the opportunity to vote. Inherent in this obligation is the mailing of the ballot by election officials in sufficient time prior to the election if the vote is to be meaningful.
>
> For instance, if a voter in Norway has made an application for a ballot before October 1, 1984, but it is not sent until October 23, 1984, common sense and knowledge of our postal system would appear to dictate that the round trip cannot be completed in sufficient time for the vote to be returned by November 6, 1984; and so with a ballot sent to Greece on October 22, 1984, or to Madrid, Spain on October 19, 1984.

Exhibit R, (order denying motion to dismiss, 5-6). The court ordered that ballots received by 10 days after the election be counted for federal offices, and the defendant issued a supplemental certification of the election results to include the late ballots. Id. at 6-7.

Adopting Defendants' argument would require this Court to contradict an overwhelming number of court rulings interpreting UOCAVA and its predecessor statutes.

    4.     The Federal Voting Assistance Program's Reasonable Interpretation of UOCAVA Is Entitled to Deference.

Defendants argue that the United States' claim for relief "rests entirely on a 'determination' by a federal agency that is not even embodied in federal regulation" – i.e., the Federal Voting Assistance Program's determination that a minimum of 30 days is needed for round trip delivery of international and military mail to overseas locales. (Def.'s Mem. Supp. Mot. to Dismiss 3.) Contrary to Defendants' view, this reasonable determination by the federal agency charged with enforcement of UOCAVA is entitled to deference by this Court and should be adopted. As the Presidential Designee under UOCAVA, see Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988), the Secretary of Defense has delegated its responsibilities for administering UOCAVA to the Federal Voting Assistance Program (FVAP). See Department of

Defense Directive 1000.4. Pursuant to UOCAVA, FVAP administers several crucial functions of the Act, including ensuring that state and local officials "are aware of the requirements of this Act," 42 U.S.C. § 1973ff(b)(1), prescribing an official post card form for use by the states, id § 1973ff(b)(2), and prescribing a Federal write-in absentee ballot for use in general elections for Federal office, id. § 1973ff-2(a). In fact, Congress recognized the critical role FVAP plays in ensuring that military and overseas voters are permitted to vote by absentee ballot. See, e.g., H.R. Rep. No. 99-765, at 6-9 (acknowledging FVAP's role in facilitating "absentee registration and voting by eligible voters," printing and distributing the Federal Postcard Application, and distributing information on how to vote to military and overseas voters).

Not surprisingly, then, courts have credited FVAP's views and adopted its 30-day minimum benchmark for determining violations of UOCAVA. In fact, every UOCAVA claim brought by the United States for the late mailing of absentee ballots upon which relief has been granted by court order or consent decree has been premised upon FVAP's considered determination, based on federal postal standards,[9] that there was insufficient time for absentee ballots to be cast. See, e.g. Exhibit B, United States v. Pennsylvania, No. 1:cv-04-830 (M.D. Pa. Apr. 16, 2004) (order granting temporary restraining order and preliminary injunction, 3) ("Plaintiff established [based on declaration by FVAP] that overseas ballots require on average 30 days for transit to and from the absentee voter."); Exhibit A, United States v. Georgia, No.

_____

[9] In enacting UOCAVA, Congress similarly referenced federal postal surveys to measure ballot transit times. H.R. Rep. No. 99-765, at 11 (1986) ("Based on surveys of the U.S. Postal Service and of military postal authorities, ballots should be mailed to overseas addresses at least 45 days prior to an election in order to ensure adequate time for a ballot to reach a voter and be returned."). Similarly, the contention in the United States' Complaint that a minimum of 30 days is needed for round trip delivery of international and military mail to overseas locales is based on United States Postal Service, United States Military Postal Service Agency, and Department of State estimates, as well as the view of FVAP as the primary administrator of UOCAVA.

1:04-cv-2040-CAP (N.D. Ga. July 15, 2004). Because FVAP's conclusion regarding the 30-day ballot transit minimum is a reasonable interpretation of UOCAVA's requirement that states permit military and overseas voters to vote by absentee ballot, it should be credited by this Court. See, e.g., Shanty Town Assocs. Ltd. P'ship v. Envtl. Prot. Agency, 843 F.2d 782, 790 (4th Cir. 1988) ("[W]e start with the principle that the construction placed on a statute by the agency charged with administering it is entitled to considerable deference from the courts, and will ordinarily be upheld if it has a 'reasonable basis in law.'") (internal citations omitted).

B.     The Federal Write-In Absentee Ballot is not the Exclusive Mechanism under UOCAVA for Remedying a State's Failure to Send Timely Absentee Ballots.

Defendants also argue that the United States cannot state a claim upon which relief can be granted because UOCAVA makes the Federal write-in absentee ballot the only way to remedy a state's failure to send timely absentee ballots. (Def.'s Mem. Supp. Mot. to Dismiss 4, 6.) Defendants' argument is without merit.

1.     By its Terms, UOCAVA Allows the Attorney General to Seek Broad Relief for Violations of the Act and Does Not Limit Relief for Late Absentee Ballot Mailing to the Use of the Federal Write-In Absentee Ballot.

Section 103(a) of UOCAVA states: "The Presidential designee shall prescribe a Federal write-in absentee ballot . . . for use in general elections for Federal office by absent uniformed services voters and overseas voters who make timely application for, and do not receive, States, absentee ballots." 42 U.S.C. § 1973ff-2(a). Simply because UOCAVA allows a Federal write-in absentee ballot to be used, however, does not mean courts lack the authority to order other measures necessary to ensure that military and overseas voters are given a full and equal opportunity to vote by absentee ballot. Nothing in the text of UOCAVA prescribes the Federal

write-in absentee ballot as the exclusive authorized remedy for the untimely mailing of absentee ballots. Defendants' attempt to rewrite UOCAVA to make it so is unavailing.

In fact, UOCAVA authorizes the Attorney General to seek broad relief for violations of the Act. Section 105 of UOCAVA provides that the "Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out this title." 42 U.S.C. § 1973ff-4. By this grant of enforcement authority, Congress obviously intended that traditional equity powers be exercised in suits brought under the Act, and that courts tailor the remedy to fit the violation. It is not hard to imagine that in order to ensure that all UOCAVA voters are given the fullest opportunity to exercise their right to vote under Section 102(a)(1), a court would need to extend the ballot return deadline to count the absentee ballots that would have arrived by the deadline had election officials mailed such ballots in a timely manner. As noted, numerous courts have ordered just such relief for UOCAVA violations.

Moreover, with the consolidation and repeal of its predecessor statutes and enactment of UOCAVA, Congress retained the Attorney General's broad enforcement authority.[10] Had Congress intended by its inclusion of the Federal write-in absentee ballot option to preclude in future general elections the type of enforcement actions and remedies the Attorney General had regularly pursued (and courts had approved) for untimely mailing of overseas ballots, it could have so limited that authority. It did not.

---

[10] Under 42 U.S.C. § 1973dd-3, OCVRA provided: "Whenever the Attorney General has reason to believe that a State or election district undertakes to deny the right to register or to vote in any election in violation of 1973dd-1 of this title or fails to take any action required by section 1973dd-2 of this title, he may institute for the United States, or in the name of the United States, an action in a district court of the United States . . . for a restraining order, a preliminary or permanent injunction, or such other order as he deems appropriate."

Defendants do not cite, and the United States is not aware of, any case in which a court has held that the Federal write-in absentee ballot is the exclusive remedy available under UOCAVA for a failure to send timely absentee ballots in general elections. To the contrary, in United States v. Tennessee, No. 3-90-0958 (M.D. Tenn. Nov. 5, 1990), the district court granted the United States' motion for a temporary restraining order and preliminary injunction because "[t]here are reasonable grounds to believe that defendants' failure [to send absentee ballots in a timely manner to military and overseas voters] constitutes a violation of the Uniformed and Overseas Citizens Absentee Voting Act," even though the election at issue was the November 6, 1990 general election in which the Federal write-in absentee ballot was available. See Exhibit D, (order, 1). As a remedy for the violation, the court ordered the State of Tennessee to transmit via fax, or some other expeditious means of mailing, an absentee ballot to military and overseas voters who requested a timely absentee ballot and granted a 15-day ballot return extension for the counting of such ballots. Id. at 3; see also Exhibit S, Reitz v. Pennsylvania, No. 04-2360 (M.D. Pa. Oct. 29, 2004) (stipulated order, 2-3) (ordering 8-day ballot return extension due to the late mailing of absentee ballots during the 2004 general federal election).

> 2.      The Emergency Back-up Federal Write-in Absentee Ballot Is Not Equivalent to the Opportunity to Vote by a State Ballot and its Availability to Some Voters Does not Eliminate the State's Obligation to Timely Mail Ballots to UOCAVA Voters.

The structure and purpose of UOCAVA make clear that Congress did not discharge states of their obligation to mail timely absentee ballots during general elections by its inclusion of the Federal write-in absentee ballot opportunity in the statute. The Federal write-in absentee ballot was "intended as an emergency back-up measure rather than as a replacement for the regular

16

ballot." H.R. Rep. No. 99-765 at 14 (emphasis added).[11]  Moreover, the preference for the voter casting the state's absentee ballot over the Federal write-in absentee ballot is reflected in Section 103(b)(3) of the Act, which prohibits the counting of a Federal write-in absentee ballot if the voter's state ballot is received by the state's deadline.  42 U.S.C. § 1973ff-2(b)(3); <u>see also</u> H.R. Rep. No. 99-765, at 15 ("The write-in ballot will be counted only if it is the only ballot received.").  In fact, Congress recognized that voting by Federal write-in absentee ballot, although better than being altogether disenfranchised, did not provide military and overseas voters with the same opportunity to vote as, and was less preferable than, a regular absentee ballot.  <u>See</u> H.R. Rep. No. 99-765, at 16 (noting the difficulties associated with ensuring the secrecy of a Federal write-in absentee ballot).

The Federal write-in absentee ballot is not equivalent to the opportunity to vote by a regular state absentee ballot for a number of additional reasons.  First, the effectiveness of the Federal write-in absentee ballot option is entirely dependent on the voter being aware of the option and the unique requirements for casting this special ballot – a potential obstacle not presented when a voter receives his requested ballot from the local election official, together with instructions for casting a valid ballot.  Second, unlike a regular absentee ballot, a Federal write-in absentee ballot is not delivered directly to military and overseas voters.  Instead, military and overseas voters must take steps to obtain it by downloading it from the Internet or finding one on a military base, embassy, or other location.  <u>Id.</u> at 5.  Third, obtaining a Federal

---

[11]  It was also intended for those circumstances in which a state sent its absentee ballots in a timely manner, but a military or overseas voter could not receive his or her ballot because he or she was unreachable by mail.  H.R. Rep. No. 99-765 at 12 ("Even if all States could always provide 45 day transit time for all ballots, however, that still might not be sufficient for some voters. . . .  Military members at hundreds of radar tracking sites scattered around the globe or serving in remote areas receive mail only sporadically.").

write-in absentee ballot may prove difficult for some voters, such as military voters stationed in combat zones or voters in areas without ready access to the Internet or to the locations where the ballots are located. Fourth, whereas a regular absentee ballot contains the names and party affiliations of each of the candidates, as well as the offices they are running for, the Federal write-in absentee ballot is a blank ballot that requires military and overseas voters "to writ[e] in the name of the candidate or . . . the name of a political party," 42 U.S.C. § 1973ff-2(c)(1), which for some voters may require additional research. See Exhibit T, Federal Write-In Absentee Ballot. Fifth, unlike the state's absentee ballots that include specific instructions on how to execute the ballot, on whether a witness' signature or notarization is required, and by when the ballot must be returned, the Federal write-in absentee ballot does not provide such information, forcing military and overseas voters to research those state requirements in order to ensure that their Federal write-in absentee ballot complies with state law. Id.

Denying military and overseas voters the right to receive timely absentee ballots from the responsible state election officials, and relegating them only to the more burdensome voting mechanism of voting by Federal write-in absentee ballots is not supported by UOCAVA's purpose, text, or judicial precedent.

## V.    Conclusion

Defendants have violated UOCAVA by failing to mail absentee ballots to military and overseas voters in time for such ballots to be received, executed, and returned by the deadline. Based on the well-pled facts and the reasonable inferences drawn therefrom, the United States' Complaint in Intervention states a claim for relief under UOCAVA, and this Court should deny Defendants' Motion.[12]

---

[12] In their Memorandum, Defendants assert that if their motion to dismiss for failure to state a claim is denied, the United States should be required to join as necessary parties under Fed. R. Civ. P. 19(a) all of the Commonwealth's local electoral boards and registrars. (Def.'s Mem. Supp. Mot. to Dismiss 7.)  Although this joinder argument is not within the scope of the instant motion, the United States notes that Defendants are mistaken.  The UOCAVA requirements at issue are directed to the states, 42 U.S.C. § 1973ff-1(a), and the responsibility to ensure compliance by local boards rests with the Defendants.  As this Court implicitly recognized in its November 4, 2008 Order, local electoral boards and registrars are agents, if not employees or officers, of the Defendants. The Court's Order is consistent with the Fourth Circuit's decision in McConnell v. Adams, 829 F.2d 1319, 1327 (4th Cir. 1987), holding that when Virginia's electoral board members and registrars act in their official capacity, they are acting as employees and officers of the Commonwealth of Virginia, rather than the localities where they work.  Id. at 1327.  This ruling recognizes the level of control and authority that Defendants exercise over local electoral boards and registrars.  See, e.g., Va. Code Ann. §§ 24.2-103(A) & (B).

Respectfully submitted,


GRACE CHUNG BECKER
Acting Assistant Attorney General

DANA J. BOENTE
Acting United States Attorney


_____/s/_____
ROBIN PERRIN
Assistant United States Attorney

CHRISTOPHER COATES
Chief, Voting Section

REBECCA J. WERTZ
Principal Deputy Chief
ALBERTO RUISANCHEZ
LEMA BASHIR
Trial Attorneys
United States Department of Justice
Civil Rights Division, Voting Section

950 Pennsylvania Ave., NW
Room NWB-7254
Washington, D.C.  20530
Phone: (202) 305-1291
Fax:    (202) 307-3961
rebecca.j.wertz@usdoj.gov
alberto.ruisanchez@usdoj.gov
lema.bashir@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December, 2008, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to the following counsel of record:

> Robert A. Dybing
> rdybing@t-mlaw.com
> *Attorney for the Defendant*s

> By: /s/
> _____
>
> Robin E. Perrin
> Virginia State Bar No. 65825
> Assistant United States Attorney
> United States Attorney's Office
> 600 East Main Street, Suite 1800
> Richmond, Virginia 23219
> Telephone: (804) 819-5400
> Facsimile: (804) 819-7417
> Email: Robin.Perrin2@usdoj.gov