UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division


MCCAIN-PALIN, 2008, INC.

        Plaintiffs,

v.                                    Case No. 3:08cv709

JEAN CUNNINGHAM, *et al.*,

        Defendants.


**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT IN INTERVENTION**

        The defendants, Jean Cunningham, Nancy Rodrigues, and Harold Pyon, being the members of the Virginia Board of Elections, sued in their official capacity, the Virginia State Board of Elections, and the Commonwealth of Virginia (collectively, the "Defendants"), have moved to dismiss the Complaint in Intervention filed by Intervenor United States of America (the "Intervenor"). The Intervenor filed a memorandum in opposition, to which the Defendants now reply.

        **Introduction**

        The Defendants have not violated UOCAVA, as evidenced by the Intervenor's conspicuous inability to point to a single provision of that statute alleged to have been so violated. Moreover, UOCAVA already provides a remedy for the concerns expressed by the Intervenor: UOCAVA voters may vote *by Federal write-in ballot* if they do not receive a State-issued absentee ballot at least 30 days before an election. *See* 42 U.S.C. § 1973ff-2. The Intervenor argues that § 1973ff-2 is inadequate, that there should be additional remedies if States are late sending out absentee ballots. The adoption of

additional remedies, however, is a legislative decision, and should be made not by this Court, but by Congress.  The Complaint in Intervention should be dismissed.

**A.  Mootness**

This case is moot.  The 2008 general election is over, and the results of the general election in Virginia were certified on November 24, 2008 pursuant to Virginia Code § 24.2-679.  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (stating that federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them"); *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (same).  Because the Virginia election results have already been certified, the case should be dismissed as moot.  To be sure, this Court earlier held that the case was capable of repetition yet evading review—but that was before the Virginia election results were certified.  That having occurred, the Court's ruling would not affect the rights of the litigants to this controversy.

**B.  Lack of Standing**

The Intervenor argues that the Complaint should not be dismissed because the interpretation of UOCAVA urged by the Defendants would leave UOCAVA voters "with no right to cast a ballot in special, primary, [or] runoff federal elections for Federal office."  Opposition Memorandum ("Opp. Mem."), p. 6.  The Complaint in Intervention, however, deals only with the November 4, 2008 general election, and alleges no facts in support of any claim that voters in special, primary, or runoff elections have been or will be injured by the Defendants.

2

Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005). "[T]he irreducible constitutional minimum of standing" consists of injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). *See also In Re: Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (discussing standing). The Intervenor has not alleged injury-in-fact (with regard to special, primary, or runoff elections), and necessarily has not alleged that the Defendants did anything to cause such an injury-in-fact. Finally, and consequently, the Court cannot redress an injury which has not occurred. All claims based on special, primary, or runoff elections should be dismissed.

## C. Other Federal Cases Not Controlling

The Intervenor cites a number of cases from other jurisdictions, none of which properly recognize that UOCAVA is silent on time deadlines for States to mail absentee ballots. Some of those cases were resolved by consent decree; those cases are irrelevant because they were not litigated. The cases that were litigated either did not address or did not rebut the arguments raised by the Defendants in this case. To take just one example, *United States v. Pennsylvania*, No. 1:cv-04-830 (M.D. Pa. Apr. 16, 2004) (order granting preliminary injunction) (Opp. Mem. Exhibit B) simply assumed "a violation of the Act" without deigning to explain which provision of UOCAVA was violated by the defendant. *Assuming* a violation, however, is not the same as establishing one (or even alleging one).

UOCAVA's predecessor statutes are indeed important to the resolution of the Defendants' Motion to Dismiss, but not as envisaged by the Intervenor. UOCAVA was adopted in 1986 to *replace* those earlier statutes because they did not have a provision for a federal write-in ballot. H.R. Rep. No. 99-765, p. 5. UOCAVA does provide for a federal write-in ballot, and thus illustrates clearly that (i) Congress recognized that States might be late sending out absentee ballots; and (ii) Congress provided a remedy for that potential problem. The relief requested by the Intervenor is essentially a re-writing of UOCAVA.

Ironically, the Intervenor cites a pre-UOCAVA case, *United States v. Wisconsin*, C.A. No. 84-C-863-C (W.D. Wis. Nov. 30, 1984) (Opp. Mem., Exhibit R) *vacated on other grounds*, 771 F.2d 244 (7th Cir. 1985), but that opinion simply pointed out the problem that UOCAVA addressed a year later. The fact that Congress enacted UOCAVA without setting time deadlines for States (as that case implicitly urged) again illustrates that Congress's "no-deadline" approach in UOCAVA was deliberate.

## D. *Chevron* **Deference is Inapplicable**

The Intervenor makes a half-hearted argument that this Court should accord deference to the "determination" by the Federal Voting Assistance Program (FVAP) that absentee ballots should be mailed at least 30 days before an election. *See* Complaint in Intervention, ¶ 10. The shortcoming of this argument is that it fails to take account of the leading Supreme Court case dealing with according deference to informal agency opinions. In *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the Court considered "an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." The Court held that

4

"opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference." *Id.*

Moreover, the Fourth Circuit recently cautioned that before according deference to an agency interpretation, the agency must first prove that Congress delegated rulemaking authority to the agency to make such an interpretation, and "we look for an explicit or implicit grant of interpretive power from Congress to the agency." Absent such a grant of interpretive power from Congress, "binding interpretive authority rests only with the courts." *A. T. Massey Coal Co. v. Holland,* 472 F.3d 148, 166 (4th Cir. 2006) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

Nothing in UOCAVA indicates that Congress delegated rulemaking authority over that subchapter to the FVAP. In fact, UOCAVA's provision on "Federal responsibilities" – § 1973ff(a)-(c) – nowhere confers rulemaking authority (or even "determination-making" authority) on any federal official or department.

Next, deference would be inappropriate because UOCAVA is not ambiguous. The Fourth Circuit analyzed *Chevron* deference in *Piney Run Preser. v. County Comm'rs of Carroll County*, 268 F.3d 255, 267 (4th Cir. 2001). Under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts apply a two-part test. "First, we examine the language of the statute to see if 'Congress has directly spoken to the precise question at issue.'" *Id*. at 842. If Congressional intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 843. "If the statute is ambiguous, then we apply *Chevron* 's second step, and we defer to the agency's interpretation of its governing

statute and regulations, as long as (1) the agency has promulgated that interpretation pursuant to a notice-and-comment rulemaking or a formal adjudication, *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), and (2) the agency's interpretation is reasonable." *Piney Run,* 268 F.3d at 267 (citing *Chevron*, 467 U.S. at 843).

In the case at bar, Congress expressly omitted a specific deadline for States to mail absentee ballots. Accordingly, there is nothing to interpret. Yet even if UOCAVA were deemed ambiguous, the FVAP did not adopt a regulation pursuant to notice-and-comment rulemaking; it instead issued what the Intervenor refers to as a "determination." Hence, *Chevron* deference would be inappropriate in any event.

Finally, where the language of a statute is ambiguous, a court may "consult its legislative history as a guide to congressional intent." *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005). Here, Congress has made clear that the very purpose of UOCAVA was to provide for a federal write-in ballot to address the precise concern expressed by the Intervenor. *See Bush v. Hillsborough County Canvassing Bd.*, 123 F. Supp. 2d 1305, 1310 (N.D. Fla. 2000) (UOCAVA's "*primary purpose* was to facilitate absentee voting and to provide 'for a write-in absentee ballot that may be used in Federal general elections by overseas voters who, through no fault of their own, fail to receive a regular [State] absentee ballot in sufficient time to vote and return the ballot prior to the voting deadline in their State.'" (quoting H.R. Rep. No. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009 (emphasis added)).

### E.  Conclusion

The Defendants have not violated UOCAVA.  Accordingly, the Court should

dismiss the Complaint in Intervention, with prejudice, and award the Defendants their

attorney's fees and costs, and such other relief as the Court deems appropriate.


                                                         JEAN CUNNINGHAM, *et al.*

                                                         By __/s/_____
                                                                     Counsel

Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
Counsel for  Defendants
ThompsonMcMullan, P.C.
100 Shockoe Slip
Third Floor
Richmond, Virginia 23219
Telephone: (804)649-7545
Fax: (804)780-1813
Email: rdybing@t-mlaw.com
jgibney@t-mlaw.com

### Certificate of Service

I certify that on December 2, 2008, I electronically filed the foregoing with the
Clerk of Court using the CM/ECF system, which will send a notification of such filing
(NEF) to counsel of record.


                                                   By:      /s/_____
                                                   Robert A. Dybing, VSB No. 32712
                                                   John A. Gibney, Jr., VSB No. 15754
                                                   Counsel for Defendants
                                                   ThompsonMcMullan, P.C.
                                                   100 Shockoe Slip, Third Floor
                                                   Richmond, Virginia 23219
                                                   (804)649-7545
                                                   Fax: (804)780-1813
                                                   rdybing@t-mlaw.com
                                                   jgibney@t-mlaw.com