UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MCCAIN-PALIN, 2008, INC.

    Plaintiffs,

v.                                                                                       Case No. 3:08cv709

JEAN CUNNINGHAM, *et al.*,

    Defendants.

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

        The defendants, Jean Cunningham, Nancy Rodrigues, and Harold Pyon, being the members of the Virginia Board of Elections, sued in their official capacity, the Virginia State Board of Elections, and the Commonwealth of Virginia (collectively, the "Defendants"), have moved for summary judgment against Intervenor United States of America, for the reasons set forth herein.

**Introduction**

        The Intervenor alleges that the Defendants violated UOCAVA by not mailing absentee ballots to overseas and military UOCAVA voters a certain number of days before the November 2008 general election. The Intervenor is wrong, because UOCAVA does not require States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. Accordingly, the Defendants – or more accurately, Virginia's local electoral officials, who actually have the statutory duty to mail out absentee ballots – have not violated UOCAVA.

        Moreover, UOCAVA already provides a remedy for the precise concerns expressed by the Intervenor: UOCAVA voters may vote *by Federal write-in ballot* if they

do not receive a State-issued absentee ballot at least 30 days before an election. *See* 42 U.S.C. § 1973ff-2. Thus, Congress has already anticipated the problem at issue here and provided a statutory solution to it. The Intervenor has argued that § 1973ff-2 is inadequate, that there should be additional remedies if States are late sending out absentee ballots. The adoption of additional remedies, however, is a legislative decision, and should be made by Congress, not by this Court.

Finally, Senator Schumer recently introduced a bill that would require States to mail absentee ballots to UOCAVA voters by a certain pre-election deadline. That proposed legislation underscores that UOCAVA in its present form does not contain such a mandatory deadline, and it convincingly refutes the Intervenor's position in this lawsuit. The Court should award summary judgment to the Defendants.

## I. Statement of Undisputed Facts Pursuant to Local Rule 56B

1. For the purpose of this Memorandum, it is assumed that there were some UOCAVA voters (*see* Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff et seq.) who did not receive absentee ballots from local electoral officials in the Commonwealth of Virginia 30 days or more before the 2008 general election. Complaint in Intervention, ¶ 11; Exhibit 1, Affidavit of Nancy Rodrigues, Secretary of the Commonwealth of Virginia State Board of Elections ("SBE"), ¶¶ 9-10.

2. There is no federal statute that requires States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. The Complaint in Intervention is based entirely on a "determination" by the Federal Voting Assistance Program of the Department of Defense that such ballots be mailed at least 30 days before

an election, and a "recommendation" that States allow 45 days for round-trip mailing of absentee ballots. Complaint in Intervention, ¶ 10.

3. The Complaint in Intervention does not allege any facts showing that any UOCAVA voters were prevented from exercising their franchise using a Federal write-in ballot as provided in 42 U.S.C. § 1973ff-2.

4. The vast majority of uncounted votes from UOCAVA voters occurred in just two of the 134 jurisdictions in Virginia, namely, the City of Virginia Beach and Prince William County. A contributing factor to problems in those jurisdictions was the relatively late date of the nominating conventions for the two major political parties, and the late selection of minor party candidates, which together compressed the time available to have ballots printed and distributed. Exhibit 1, ¶¶ 3-7, 11.

5. In Virginia, absentee ballots are mailed to UOCAVA voters by Local Electoral officials, pursuant to Chapter 7, Title 24.2 of the Code of Virginia. Exhibit 1, ¶ 8.

6. Defense Department officials readily concede that UOCAVA does not contain a mandatory time deadline for States to mail ballots to UOCAVA voters. Just weeks ago, Gail H. McGinn, Undersecretary of Defense for Personnel and Readiness, testified before the Senate Committee on Rules on Administration on May 13, 2009, concerning the Federal Voting Assistance Program ("FVAP"). *See* Exhibit 2, Mc. McGinn's Testimony, May 13, 2009. She testified that it is a *legislative priority* that States be required to "Provide at least 45 days between the ballot mailing date and the date ballots are due." *Id.*, p. 5. She also testified that one of FVAP's *recommendations* for States is: "Providing 45 days ballot transit time." *Id.*, p 7.

7. Congress also recognizes that UOCAVA does not contain a mandatory time deadline for States to mail absentee ballots to UOCAVA voters. *See* Exhibit 3, S. 1415, a Senate Bill introduced by Sen. Schumer (D. N.Y.), containing a provision (Section 5), which would require States to mail absentee ballots to UOCAVA voters 45 days before an election.

8. Ms. McGinn's testimony and Sen. Schumer's proposed legislation thus refute the Intervenor's position in this lawsuit that UOCAVA already contains a mandatory time deadline for States to mail absentee ballots to UOCAVA voters. The proposed legislation would clearly be unnecessary if UOCAVA already contained such a provision.

## II. Argument

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52(1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After that required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The

opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324. "In determining whether summary judgment is appropriate, we must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections,* 349 F.3d 765, 769 (4th Cir. 2003). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003).

**B. UOCAVA**

Because UOCAVA does not require States to mail absentee ballots to UOCAVA voters a minimum number of days before an election, the Complaint in Intervention does not state a cause of action under federal law. The Intervenor's claim to relief rests entirely on a mere "determination" by a federal agency that is not even embodied in a federal regulation. That determination, moreover, goes beyond UOCAVA's scope, and purports to impose on States far greater burdens that Congress enacted in UOCAVA, which is clearly an impermissible usurpation of Congressional authority. Underscoring the lack of legal substance to the Complaint in Intervention is the UOCAVA provision permitting the use of Federal write-in ballots if States are late mailing out absentee ballots. *See* 42 U.S.C. § 1973ff-2. Indeed, § 1973ff-2 was the very *raison d'etre* for adopting UOCAVA, which revised an earlier absentee-ballot statute. *See Bush v. Hillsborough County Canvassing Board*, 123 F. Supp. 2d 1305, 1310 (N.D. Fla. 2000) (UOCAVA's "*primary purpose* was to facilitate absentee voting and to provide 'for a write-in absentee ballot that may be used in Federal general elections by overseas voters who, through no fault of their own, fail to receive a regular [State] absentee ballot in

5

sufficient time to vote and return the ballot prior to the voting deadline in their State.'" (quoting H.R. REP. NO. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009 (emphasis added)).

The Intervenor's Complaint essentially asks the Court to re-write UOCAVA so that UOCAVA voters who do not receive timely absentee ballots *not only* have the remedy conferred in § 1973ff-2, but also the *additional* remedy of re-writing Virginia Code § 24.2-709 (absentee ballots counted if received before polls close) to permit UOCAVA voters ten extra days to mail in ballots. However, only Congress can enact federal statutes, and there is nothing ambiguous about § 1973ff-2 which would permit this Court to disregard UOCAVA's clear provisions and graft an *ad hoc* and statutorily unauthorized remedy on top of it. Congress has already foreseen the potential hardship to UOCAVA voters and addressed it in § 1973ff-2.

Careful examination of UOCAVA's statutory structure reveals that the relief sought by the Intervenor is unauthorized as well as unnecessary. To begin with, 42 U.S.C. § 1973ff establishes Federal responsibilities, and, significantly, requires a Presidential designee to "carry out section 1973ff-2 of this title with respect to the Federal write-in ballot for overseas voters. . . ." *See* § 1973ff(b)(3). That subsection, notably, does not empower the Presidential designee to impose any additional remedies beyond that set forth in § 1973ff-2 if States are late sending out absentee ballots. In addition, that subsection, even more notably—given the Intervenor's reliance on federal agency "determinations"—does not assign to any federal agency the responsibility to issue binding estimates of mail-delivery times which can be used as a basis to re-write State election laws.

The next subsection of UOCAVA, § 1973ff-1, assigns responsibilities to the States.  Those responsibilities include highly specific duties such as using a particular form of post card (§ 1973ff-1(a)(4)), and using a particular form of oath (§ 1973ff-1(a)(5)).  That section also prescribes a deadline measured in days: a 90 day deadline for transmitting State reports on absentee ballots to federal officials.  Conspicuously absent from the State-assigned responsibilities is any specific deadline for mailing absentee ballots to UOCAVA voters.

The next subsection is § 1973ff-2, which addresses and remedies the very concerns of the Intervenor.  That subsection authorizes Federal write-in ballots for "overseas voters who make timely application for, and do not receive, States' absentee ballots."  However, the subsection does not provide the additional remedy of re-writing State election laws to accommodate those same voters, as the Complaint in Intervention seeks.  Importantly, § 1973ff-2(f)(1) does refer to a time deadline for States mailing out absentee ballots: it says that States which do require that State ballots be mailed out at least 90 days before the general election need not permit a federal write-in ballot.  Thus, Congress of course knows how to enact a time deadline for States if it wishes, and Congress evidently did not wish to impose a mandatory deadline on States as the Intervenor alleges here.

The next subsection of UOCAVA, § 1973ff-3, deals with ballot application forms and does not apply to this dispute.  Neither do §§ 1973ff-5 or -6.

Significant, however, is § 1973ff-4, the enforcement section of UOCAVA, which authorizes the Attorney General to bring a civil action to "carry out this subchapter."  As just pointed out, the subchapter's (i.e., UOCAVA's) provisions are clear: (i) UOCAVA

does not mandate a time deadline for States to send out absentee ballots; and (ii) UOCAVA already provides a remedy in § 1973ff-2 if States are late sending out absentee ballots. The Intervenor's requested relief thus will not "carry out this subchapter;" but will carry out an unofficial and unauthorized expansion of UOCAVA beyond Congress's clearly expressed intent.

Finally, any possible doubt that UOCAVA does not now contain a mandatory time deadline applicable to States is entirely dispelled by the widely-publicized views of legal commentators and even more emphatically, by recent legislative efforts to amend UOCAVA to insert such a mandatory deadline. *See, e.g.,* Alvarez, Hall, and Roberts, *Military Voting and the Law: Procedural and Technological Solutions to the Ballot Transit Problem*, 34 Fordham Urb. L.J. 935, 979 (2007) ("This disparity [in individual States' ballot deadlines] could be eliminated if Congress mandated the time-frames for absentee voting in federal elections instead of leaving it up to the individual states. . . ."). *See also* Exhibit 2, testimony of Gail H. McGinn, Undersecretary of Defense for Personnel and Readiness, before the Senate Committee on Rules on Administration on May 13, 2009, dealing with the Federal Voting Assistance Program ("FVAP"). Ms. McGinn testified that it is a legislative priority that States *be required* to "Provide at least 45 days between the ballot mailing date and the date ballots are due." *Id.*, p. 5. She also testified that one of FVAP's *recommendations* for States is: "Providing 45 days ballot transit time." *Id.*, p 7.

Clearly, if UOCAVA already contained a mandatory time requirement applicable to States, Ms. McGinn would not have referred to a "legislative priority" that such a deadline be adopted. Just as clearly, she would not have referred to a "recommendation"

8

for a 45 day requirement for ballot transit time if a mandatory 45 day deadline already existed in UOCAVA.

Next, and conclusively, Exhibit 3 to this memorandum is S. 1415, a Senate Bill containing a provision (Section 5) which would require States to mail absentee ballots to UOCAVA voters 45 days before an election. It hardly bears argument that Senator Schumer would not trouble to amend UOCAVA in such fashion if UOCAVA already contained a 45 day deadline. Accordingly, the views of legal commentators as well as recent legislative efforts disprove the Intervenor's position in this lawsuit that such a deadline already exists and that the Commonwealth of Virginia violated it.

### C. Statutory Interpretation of UOCAVA

Nor may the Intervenor rely on principles of statutory interpretation to expand UOCAVA beyond its existing text. The preeminent canon of statutory interpretation requires us to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992)). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *see also Matala v. Consolidated Coal Co.*, 647 F.2d 427, 429 (4th Cir. 1981) (stating the basic principles of statutory interpretation) and *Buckeye Production Credit Association v. Farm Credit Administration*, 787 F. Supp. 578, 588 n. 18 (E.D. Va. 1992) (noting, in interpreting the Farm Credit Act, that "the best and most reliable indication of legislative intent is the statutory language itself").

Accordingly, where the terms of a statute are unambiguous, the judicial inquiry is complete, except "in rare and exceptional circumstances." *See Rubin v. United States*, 449 U.S. 424, 430 (1981) (quoting *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 187 n. 33, (1978). As the Supreme Court has put it, "Congress, not this Court, has the responsibility for revising its statutes." *Neal v. United States*, 516 U.S. 284, 296 (1996). The Fourth Circuit agrees: in *Teledyne Economic Development v. N.L.R.B.*, 108 F.3d 56, 60 (4th Cir. 1997), the court held that "[t]his court, however, is charged with interpreting statutes, not rewriting them. If we were to adopt Teledyne's position, we would be adding to the exemption in section 2(2) entities which Congress did not place there." In similar respect here, the Intervenor is asking this Court to add a remedy to the remedies in UOCAVA "which Congress did not place there."

Moreover, Congress amended the predecessor statute to UOCAVA by adding new § 1973ff-2 precisely to remedy the problem created when States do not mail absentee ballots to overseas and military in time for them to vote. *See Bush v. Hillsborough County Canvassing Board*, 123 F. Supp. 2d at 1310; H.R. REP. NO. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009. In addition, "when Congress amends a statute, federal courts must "presume it intends its amendments to have real and substantial effect." *Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) (PLRA case). Accordingly, Congress must be presumed to have intended that § 1973ff-2 would have the "real and substantial effect" of ameliorating problems caused by late delivery of absentee ballots.

Nor is it relevant that the Intervenor's position in this case might be a superior *functional* approach than that taken by Congress in enacting UOCAVA in its present

form. Congress writes the laws, not the Intervenor. "[S]o well-suited is Congress to determine the policies pertaining to a remedial scheme that neither the absence nor the incompleteness of such a scheme represents an invitation for a court to step in to correct what it may perceive as an injustice toward an individual litigant." *Holly v. Scott,* 434 F.3d 287, 290 (4th Cir. 2006) (declining invitation to create civil remedy against private actor in *Bivens* action).

These canons of statutory interpretation thus firmly support the Defendants' position, and undermine the entire length and breadth of the Intervenor's request that this Court re-write the remedy section of UOCAVA.

### D. *Chevron* Deference is Inapplicable

The Intervenor raised a half-hearted argument that this Court should accord deference to the "determination" by the Federal Voting Assistance Program (FVAP) that absentee ballots should be mailed at least 30 days before an election. *See* Complaint in Intervention, ¶ 10. This argument fails to take account of the leading Supreme Court case dealing with according deference to informal agency opinions. In *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the Court considered the effect of "an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." Rejecting the Intervenor's position here, the Court held that "opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference." *Id.*

Moreover, the Fourth Circuit recently cautioned that before according deference to an agency interpretation, the agency must first prove that Congress delegated

rulemaking authority to the agency to make such an interpretation, and "we look for an explicit or implicit grant of interpretive power from Congress to the agency." *A. T. Massey Coal Co. v. Holland,* 472 F.3d 148, 166 (4th Cir. 2006). Absent such a grant of interpretive power from Congress, "binding interpretive authority rests only with the courts." *Id*. (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). In this case, there is no provision in UOCAVA that indicates that Congress delegated rulemaking authority over that subchapter to the FVAP. In fact, UOCAVA's provision on "Federal responsibilities" – § 1973ff(a)-(c) – nowhere confers rulemaking authority (or even "determination-making" authority) on any federal official or department. Tellingly, the "Presidential designee" under UOCAVA has authority to implement the federal write-in absentee ballot program, but is not given authority to either issue regulations or to add to the remedies elsewhere provided in UOCAVA.

Indeed, deference would be inappropriate in any event because UOCAVA is not ambiguous. The Fourth Circuit analyzed *Chevron* deference in *Piney Run Preser. v. County Comm'rs of Carroll County*, 268 F.3d 255, 267 (4th Cir. 2001). Under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837 (1984), courts apply a two-part test. "First, we examine the language of the statute to see if 'Congress has directly spoken to the precise question at issue.'" *Id*. at 842. If Congressional intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 843. "If the statute is ambiguous, then we apply *Chevron* 's second step, and we defer to the agency's interpretation of its governing statute and regulations, as long as (1) the agency has promulgated that interpretation pursuant to a notice-and-comment rulemaking or a formal adjudication,

12

*Christensen v. Harris County*, 529 U.S. 576, 587 (2000), and (2) the agency's interpretation is reasonable." *Piney Run,* 268 F.3d at 267 (citing *Chevron*, 467 U.S. at 843).

In the case at bar, Congress expressly omitted a specific deadline for States to mail absentee ballots. Accordingly, there is nothing to interpret. Yet even if UOCAVA were deemed ambiguous, the FVAP did not adopt a regulation pursuant to notice-and-comment rulemaking; it instead issued what the Intervenor refers to as a "determination." Hence, *Chevron* deference would be inappropriate in any event. Finally, where the language of a statute is ambiguous, a court may "consult its legislative history as a guide to congressional intent." *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005). Here, Congress has made clear that the very purpose of UOCAVA was to provide for a federal write-in ballot to address the precise concern expressed by the Intervenor. *See Bush v. Hillsborough County Canvassing Bd.*, 123 F. Supp. 2d 1305 at 1310 (citing H.R. Rep. No. 99-765. at 5, 1986 U.S.C.C.A.N. at 2009). There is thus no basis to accord deference to any FVAP determinations or estimates as the Intervenor has suggested.

### E. <u>Local Electoral Officials are Necessary Parties</u>

The Complaint in Intervention asks the Court to "ensure that appropriate election officials" count absentee ballots as requested. *See* Complaint in Intervention, p. 4. The Defendants, however, do not count ballots. In Virginia, local electoral boards perform that function. *See e.g.*, Virginia Code § 24.2-109. Local electoral boards would also be responsible for making the reports referred to in paragraph 3 of the Intervenor's request for relief. Accordingly, all Virginia local electoral officials (electoral boards and registrars) are necessary parties to this action, pursuant to Fed. R. Civ. P. 19(a).

### F. Lack of Standing for Special, Primary, or Runoff Elections

The Intervenor argues that the Complaint should not be dismissed because the interpretation of UOCAVA urged by the Defendants would leave UOCAVA voters "with no right to cast a ballot in special, primary, [or] runoff federal elections for Federal office." Opposition Memorandum ("Opp. Mem."), p. 6. The Complaint in Intervention, however, deals only with the November 4, 2008 general election, and alleges no facts in support of any claim that voters in special, primary, or runoff elections have been or will be injured by the Defendants.

Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005). "[T]he irreducible constitutional minimum of standing" consists of injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). *See also In Re: Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (discussing standing). The Intervenor has not alleged injury-in-fact with regard to special, primary, or runoff elections, and necessarily has not alleged that the Defendants did anything to cause such an injury-in-fact. Finally, and consequently, the Court cannot redress an injury which has not occurred. All claims based on special, primary, or runoff elections should be dismissed for that additional reason.

### III. Conclusion

For the foregoing reasons, the Court should grant summary judgment to the defendants, and dismiss the Complaint in Intervention, with prejudice.

JEAN CUNNINGHAM, *et al.*

By   /s/
      Counsel

Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
ThompsonMcMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Fax: (804)780-1813
Email: rdybing@t-mlaw.com


*Counsel for Jean Cunningham, Nancy Rodrigues, and Harold Pyon, being the members of the Virginia State Board of Elections sued in their official capacity; Virginia State Board of Elections; and the Commonwealth of Virginia, Defendants*

### Certificate of Service

I certify that on July 17, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Christopher Coates, Chief
Rebecca J. Wertz, Deputy Chief
Richard Dellheim
Lema Bashir
Trial Attorneys
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue NW
Room NWB-7254
Washington, D.C. 20530
*Counsel for Intervenor United States of America*

By:   /s/
    Robert A. Dybing, VSB No. 32712
    John A. Gibney, Jr., VSB No. 15754
    Counsel for Defendants
    ThompsonMcMullan, P.C.
    100 Shockoe Slip, Third Floor
    Richmond, Virginia 23219
    (804)649-7545
    Fax: (804)780-1813
    rdybing@t-mlaw.com
    jgibney@t-mlaw.com