**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:08CV709 |
| v. | ) | |
| | ) | |
| JEAN CUNNINGHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT AND ITS CROSS-MOTION FOR SUMMARY JUDGMENT WITH**
**ACCOMPANYING MEMORANDUM IN SUPPORT**

Plaintiff United States of America  respectfully moves for summary judgment in

accordance with Federal Rule of Civil Procedure 56 and opposes Defendant's Motion for

Summary Judgment, for the reasons given below.

## I.        BACKGROUND

**A.        Procedural History**

The United States filed its Complaint in Intervention on November 14, 2008 to enforce

the right to vote of absent uniformed services and overseas voters under the Uniformed and

Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. §§ 1973ff to 1973ff-6 (2006)

("UOCAVA" or the "Act").  The United States alleges that the Defendants violated UOCAVA

by denying certain eligible absent uniformed services voters and overseas voters ("UOCAVA

voters") a sufficient opportunity to participate in the November 4, 2008 general election.

Specifically, the United States claims that a number of Virginia's localities did not send timely-

requested absentee ballots to UOCAVA voters in time to receive, mark, and return them by the

Commonwealth's November 4, 2008 ballot return deadline. The United States seeks declaratory and injunctive relief for the violation, including an order to count the votes of UOCAVA voters whose timely-requested ballots were mailed late and received by election officials after the 2008 election day deadline, as well as permanent relief to ensure compliance with UOCAVA in future elections.

On November 14, 2008, the United States moved for a preliminary injunction requiring a 10-day extension of Defendants' ballot return deadline in order to count otherwise valid UOCAVA ballots, executed by election day and received by November 14, 2008. This Court denied that motion on November 17, 2008, but left in place until further notice a temporary restraining order and preliminary injunction previously obtained by private plaintiffs (who were subsequently dismissed). See Ex. B, McCain-Palin 2008, Inc. v. Cunningham, No. 3:08cv709 (E.D. Va. Nov. 4, 2008).

On November 16, 2008, Defendants moved to dismiss the United States' complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendants' motion raised issues and asserted arguments substantially identical to those raised in its summary judgment motion currently pending before the Court. The Court heard oral argument on the Motion to Dismiss on December 8, 2008. At that hearing, the Court declared that "[i]f it is indeed true that some ballots were not mailed until within 14 days of the election, it seems clear that Virginia did indeed violate [] UOCAVA and does need to take steps to insure the ballots are made available either through mailing, faxing, e-mailing, or some other method to UOCAVA voters in a better manner in future elections." Ex. A, Mot. to Dismiss Hr'g Tr. 14, Dec. 8, 2008 (hereinafter "Tr. at __"). Accordingly, based on reasons stated from the bench, the Court denied the Defendants'

Motion to Dismiss.  Ex. X,  McCain-Palin 2008, Inc. v. Cunningham, No. 3:08cv709 (E.D. Va. Dec. 8, 2008) (denying motion to dismiss).

**B.**   **UOCAVA**

UOCAVA requires each State to allow qualified United States citizens "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."  42 U.S.C. § 1973ff-l(a)(1).  UOCAVA covers members of the United States uniformed services or the merchant marine who are absent from the place in which they are otherwise eligible to vote by reason of their active duty or service, as well as their spouses and dependents who are absent from the place they are otherwise eligible to vote due to the active duty or service of the member, and United States citizens residing outside the United States.  See 42 U.S.C. § 1973ff-6.

UOCAVA requires states to provide absentee ballots to qualified UOCAVA voters who submit timely and proper requests in time for those ballots to be transmitted, marked, returned and counted.[1]  See, e.g., Ex. C, United States v. Georgia, No. 1:04-CV-2040 (N.D. Ga. July 15, 2004; entered July 16, 2004) (granting preliminary injunction and finding UOCAVA violation when ballots mailed too late); Ex. D, United States v. Pennsylvania, No. 1:CV-04-830 (M.D. Pa. April 16, 2004) (same); Ex. E, United States v. Delaware, No. 92-523 (D. Del. Sept. 11, 1992) (same); Ex. F, United States v. Tennessee, No. 3-90-0958 (M.D. Tenn. Nov. 5, 1990) (same); Ex. G, United States v. Wyoming, No. C88-0238-8 (D. Wyo. Aug. 16, 1988) (same).

---

[1]  Absentee ballots requested by military and overseas voters are deemed timely and fall under the protection of UOCAVA when they are requested by the voter not less than 30 days prior to the election.  42 U.S.C. § 1973ff-1(a)(2).  These ballots will hereinafter be referred to as "UOCAVA ballots."

The Secretary of Defense, the Presidential designee charged with administering the Act, see Exec. Order No. 12,642, 53 Fed. Reg. 21,975 (June 8, 1988), has delegated his responsibilities to the Department of Defense's Federal Voting Assistance Program ("FVAP"). Department of Defense Directive 1000.4. Pursuant to UOCAVA, FVAP performs several crucial functions, including ensuring that state and local officials "are aware of the requirements of this Act," 42 U.S.C. § 1973ff(b)(1), prescribing an official post card form for use by the states, id. § 1973ff(b)(2), and prescribing a Federal write-in absentee ballot for use in general elections for Federal office, id. § 1973ff-2(a). The Attorney General is authorized to seek declaratory and injunctive relief to enforce the Act. 42 U.S.C. § 1973ff-4.

## II. UNCONTESTED FACTS PURSUANT TO LOCAL RULE 56B

On November 4, 2008, the Commonwealth of Virginia conducted a general federal election in which voters participated in the selection of candidates for, inter alia, President of the United States. Ex. H, Stip. ¶ 1. On or before October 5, 2008, Electoral Boards and General Registrars in Virginia received applications for absentee ballots from qualified UOCAVA voters for the November 4, 2008 general federal election. Id. at ¶ 2. Under Virginia law, absentee ballots must be received on the day of the election to be counted. Va. Code Ann. § 24.2-709. For the Tuesday, November 4, 2008 federal election, the deadline for receipt of absentee ballots was 7:00 p.m. Eastern Standard Time on election day. Id. at ¶ 3. The SBE maintains a database with voter information known as the Virginia Elections and Registration Information System ("VERIS"). Id. at ¶ 4. The SBE requires local General Registrars to enter data directly into the VERIS system. Id. The data include, inter alia, the date on which a UOCAVA voter's absentee ballot application was processed for the November 4, 2008 election; the date an absentee ballot

was sent to such voter; and the date an executed ballot was received by the locality from such voter.  Id.

According to VERIS, there were between 2,114 and 2,382 UOCAVA voters who made timely requests for absentee ballots but whose ballots were mailed less than 30 days before the November 4, 2008 election.  Id. at ¶ 5.  Of these ballots, between 504 and 783 were received by the localities too late to be counted or were not received at all.  Id.  Between 96 and 132 of the timely-requested absentee ballots that were mailed to overseas voters less than 30 days before the election were received by the localities after the November 4, 2008 deadline.  Id.

The agencies responsible for delivering UOCAVA voters' absentee ballots are the Military Postal Service Agency ("MPSA"), the U.S. Department of State ("State Department"), and the United States Postal Service ("USPS").  The MPSA and State Department concur that the average time for roundtrip overseas mail delivery is 30 days.  Ex. I, Dyson Decl. ¶ 6 (setting forth MPSA average standard transit times for international mail, which average to 30 days roundtrip); Ex. J, Moser Decl. ¶ 5 (declaring that receiving and sending absentee ballots via diplomatic pouch may take on average 30 days).  The United States Postal Service has not established service standards for international mail, but it has informed FVAP in the past that 30 days is a reasonable benchmark for round trip transit time for international mail.  Ex. K, Carey Decl. ¶ 7.

### III.  SUMMARY JUDGMENT STANDARDS

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party carries

the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The relevant substantive law determines the facts material to the litigation's outcome. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). Material facts must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

When addressing cross-motions for summary judgment, courts must consider each motion's merits separately to determine whether either party deserves judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). Accordingly, when considering each motion, courts must take care to resolve all factual disputes and any competing inferences in the light most favorable to the party opposing that motion. Id.

## IV. ARGUMENT

Relying on no new facts or law, the Defendants reprise arguments already rejected by this Court in denying the Defendants' Motion to Dismiss. Accordingly, this Court should apply law of the case principles and reject them again. The Defendants' summary judgment motion should be denied. The United States' Cross-motion for Summary Judgment, however, should be granted. This Court has already determined that UOCAVA is violated when a state mails absentee ballots too late for them to be received and returned in time to be counted. Here, undisputed facts establish that Virginia failed to mail thousands of ballots in time for UOCAVA voters to receive, mark, and return them in time for counting. That failure violates UOCAVA. Finally, and alternatively, to the extent the Court opts to revisit its earlier conclusions, the law and facts firmly establish that 1) UOCAVA requires states to mail absentee ballots in time for

them to be returned by the ballot-receipt deadline; 2) mailing absentee ballots less than 30 days before they are due to be counted deprives voters of sufficient time to receive and return their ballots; 3) Virginia violated UOCAVA by mailing UOCAVA ballots too late to provide a reasonable chance for many of them to be counted; 4) the potential availability of a Federal Write-in Absentee Ballot ("FWAB") cannot remedy the UOCAVA violation here; 5) all proper parties are before the Court; and 6) the United States has standing.

## A.     This Court Should Not Redetermine Legal Issues It Has Already Decided

The Defendants seek to resurrect the same defenses to the claim in this case that have already rejected.  The Court's prior legal conclusions should not be revisited.

### 1.     Law of the Case Doctrine

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983); United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999).  The doctrine furthers important interests of finality and judicial economy, and prevents endless cycles of litigation.  See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quotation omitted).  It applies to questions actually decided and those decided by "necessary implication."  United States v. Lentz, 524 F.3d 501, 528 (4th Cir.), cert. denied, 129 S.Ct. 303 (2008).

While interlocutory orders may be reconsidered, district courts nonetheless routinely apply law of the case principles to preclude relitigation of issues decided at earlier stages of a case.  See, e.g., Federal Air Marshals (FAM) FAM 1 v. United States, 84 Fed.Cl. 585, 589 (Fed. Cl. 2008) (rejecting claim at summary judgment stage because the court "already considered and

rejected this exact argument when deciding defendant's motion to dismiss"); <u>Briggs</u> v. <u>Waters</u>, 455 F. Supp. 2d 508, 516-17 (E.D. Va. 2006) (applying law of the case to bar relitigation of issues decided at motion to dismiss stage); <u>Piedmont Envtl. Council</u> v. <u>Strock</u>, 394 F. Supp. 2d 803, 811 (N.D.W. Va. 2005) ("Plaintiffs cannot now argue [at summary judgment stage] that they are permitted to make the exact same arguments that were previously rejected by the Court."); <u>Binkley</u> v. <u>Loughran</u>, 714 F. Supp. 776, 778 (M.D.N.C. 1989) (applying law of the case principles at summary judgment stage); <u>see also</u> <u>Virgin Atl. Airways, Ltd.</u> v. <u>National Mediat. Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) (holding that district court was "justified" in denying a resubmitted motion to dismiss based on the law of the case doctrine).[2]

## 2. <u>This Court's Prior Legal Conclusions Should be Binding Here</u>

This Court has already decided the core legal question before it: whether UOCAVA is violated when a State fails to provide UOCAVA voters sufficient time to receive, mark, and

---

[2] For more recent examples, <u>see</u> <u>Baetge-Hall</u> v. <u>Am. Overseas Marine Corp.</u>, 624 F. Supp. 2d 148 (D. Mass. 2009) (applying law of the case to bar at summary judgment stage issue decided at motion to dismiss stage); <u>Iowa Health Sys., Inc.</u> v. <u>Graham</u>, 2009 WL 2222780, at *5 (C.D. Ill. July 23, 2009) (same); <u>Pajak</u> v. <u>Potter</u>, 2009 WL 1883982, at *3 (D.N.J. June 30, 2009) (same); <u>Marrero Hernandez</u> v. <u>Esso Standard Oil Co. (Puerto Rico)</u>, 2009 WL 1586928, at *1 (D.P.R. June 2, 2009) ("The court stands by its previous rulings [including those made at motion to dismiss stage], which continue to be the law of the case"); <u>Laudano</u> v. <u>214 South St. Corp.</u>, 608 F. Supp. 2d 185, 192 (D. Mass. 2009) ("the Defendants' [] argument is barred from consideration now since the Defendants already raised this argument during their motion to dismiss and were unsuccessful"); <u>Totalogistix, Inc.</u> v. <u>Marjack Co.</u>, 2009 WL 901768, at *6 (D.N.J. Mar. 31, 2009) (same); <u>Larosa</u> v. <u>Pecora</u>, 2009 WL 891924, at *6 (N.D.W. Va. Mar. 30, 2009) (same); <u>Haburn</u> v. <u>Kilby</u>, 2008 WL 743978, at *1 (W.D.Va. Mar. 19, 2008) (declining to reconsider earlier ruling based on law of the case principles); <u>Spagnola</u> v. <u>Morristown</u>, No. 05-577, 2006 WL 3533726, at *5 (D.N.J. Dec. 7, 2006) (holding that legal determinations made pursuant to Rule 12(b)(6) proceedings binding as to second motion to dismiss).

return absentee ballots in time to be counted. It found that it is. That holding, based on a factual and legal record virtually unchanged here, should be binding.

### a.  The Court's Prior Holdings

In support of their Motion to Dismiss, the Defendants argued that 1) UOCAVA does not require States to mail absentee ballots to UOCAVA voters within any time frame before an election; 2) the FWAB is the sole relief available to those harmed by a UOCAVA violation; 3) local election boards are necessary parties; and 4) the United States' argument raised a standing issue. See Defs.' Mem. in Support of Mot. to Dismiss at 3-7, 13-14; Defs.' Reply Mem. in Support of Mot. to Dismiss at 2-3. These arguments hinged upon no facts; they were purely legal.

Following oral argument, this Court rejected each of Defendants' arguments, explicitly or by necessary implication, based on a complete record before it. That record indicated that large numbers of ballots were sent to UOCAVA voters less than 30 days – and many as little as 14 days – before the election. U.S. Resp. to Defs.' Mot. to Dismiss at 3-4; Ex. A, Tr. at 12-13.

While properly reserving judgment as to material facts – such as when ballots were in fact sent and how many otherwise valid ballots arrived after election day as a result – the Court nonetheless squarely confronted the central legal question before it: whether a state's failure to provide UOCAVA voters sufficient time to receive, mark, and return absentee ballots in time for counting violates UOCAVA. The Court found that it does: "If it is indeed true that some ballots were not mailed until within 14 days of the election, it seems clear that Virginia did indeed violate [] UOCAVA[.]" Ex. A, Tr. at 14. Moreover, the Court expressly concluded that the United States' UOCAVA claim, founded on the State's failure to ensure timely mailing of

absentee ballots, to be "facially plausible". Id. at 13.  Accordingly, the Court decisively rejected the contention repeated here that, because UOCAVA sets no firm mailing deadline, states are free to mail absentee ballots at any time.

By necessary implication, the Court further rejected the Defendants' contention that the mere opportunity to cast a FWAB remedies a state's UOCAVA violation.  See United States v. Jordan, 429 F.3d 1032, 1034-1037 (11th Cir. 2005) ("An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument").  Indeed, the Court noted that a UOCAVA violation requires a remedy to ensure that "ballots are made available either through mailing, faxing, e-mailing, or some other method to UOCAVA voters in a better manner in future elections." Id. at 14.  Such remedies would not only be unnecessary under the Defendants' view, they would be impermissible.  This Court, however, properly concluded that a state's failure to mail timely absentee ballots violates UOCAVA, notwithstanding a voter's  opportunity to vote a write-in ballot, and that state law must yield as appropriate to remedy that violation fully.

The Court also rejected by implication the Defendants' claim that local authorities were necessary parties.  Indeed, had the Court concluded that other entities were needed to afford complete relief, it would have granted the Motion to Dismiss or ordered the Complaint  amended to join the necessary parties.  It did neither.

Finally, the Court expressly rejected the Defendants' standing argument, properly noting that it misapprehended an argument advanced by the United States.  It stated: "The defendants also make an argument that . . . the United States lacks standing to bring claims based on special, primary, or run-off elections. . . . [T]he United States is advancing an argument about canons of

-10-

statutory construction, not actual injury, in its discussions of special, primary, and run-off elections. Therefore, the defendants' standing argument must fail." Ex. A, Tr. at 11-12.

### b.    The Court's Prior Holdings Should be Followed Here

The Defendants' arguments differ in no material way from those already considered and rejected by this Court. The Court's prior conclusions should govern its reconsideration of those arguments here. See Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (quoting Official Comm. of Unsec'd Creds. of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., 322 F.3d 147, 167 (2d Cir. 2003)).

Moreover, no circumstances justify departing from this Court's earlier order. See Id. at 566 (noting that courts reconsider interlocutory orders on "a narrow set of grounds"). First, the record here is virtually unchanged since the December 8, 2008 hearing. Indeed, since that time, the Defendants have taken no discovery and assert no new material facts. Second, controlling law remains unchanged.[3] See Lentz, 524 F.3d at 528 (stating that change in law justifies departure from law-of-the-case doctrine). Finally, the Court's prior order was neither erroneous nor manifestly unjust. Indeed, it coheres fully with unanimous judicial authority establishing UOCAVA's mandate that states must mail UOCAVA ballots in time for them to be received, marked, and returned in time to be counted. See Cases cited in Section I(B), above.

_____

[3] The Defendants note a possible change in UOCAVA being contemplated by Congress which would require states to send absentee ballots to UOCAVA voters no less than 45 days before they are due to be counted. See S. 1390, 111th Cong. § 586 (2009). Proposed legislation, of course, is not law. Congress' contemplation of a statutory change, therefore, is not relevant and does not justify relitigating settled issues.

In short, the Defendants seek summary judgment by recycling arguments carefully considered and rejected by this Court after a full and fair hearing. This Court need not reanalyze a materially unchanged record that yielded a full and fair liability determination the first time. See Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise: the <u>same</u> issue presented a second time in the <u>same</u> case in the <u>same</u> <u>court</u> should lead to the <u>same</u> <u>result</u>.") (internal quotations omitted). Accordingly, the Defendants' Summary Judgment Motion should be denied.

**B.** **Summary Judgment Should be Granted in the United States' Favor Because Undisputed Evidence Establishes that Virginia's Late Mailing of Absentee Ballots Violated UOCAVA**

      **1.** **A Minimum of 30 Days is Required for the Round Trip Delivery of International Mail**

Undisputed empirical evidence promulgated by federal postal authorities establishes that 30 days is a reasonable benchmark for round trip transit time of international and military mail to international locales. Ex. K, Carey Decl. ¶¶ 6-9, 13; Ex. I, Dyson Decl. ¶ 6; Ex. J, Moser Decl. ¶ 5. Based on that evidence, the Federal Voting Assistance Program, the agency responsible for administering UOCAVA, has determined that mailing overseas ballots with fewer than 30 days for round trip transit does not afford overseas voters a reasonable opportunity to cast their ballots.[4]

Courts have unanimously relied on this conclusion in addressing alleged UOCAVA violations. In fact, every UOCAVA case brought by the United States for the late mailing of

---

[4] Because federal and military postal authorities' data demonstrate that 30 days is the bare minimum time for the round-trip delivery of overseas mail, FVAP recommends that states allow at least 45 days for round trip mailing time when sending absentee ballots to overseas voters. Ex. K, Carey Decl. ¶¶ 6-10.

absentee ballots resulted in a consent decree or other court order entering relief based on round-trip mail standards derived from federal postal authorities and the expertise of FVAP, the presidential designee for UOCAVA. See, e.g., Ex. D, United States v. Pennsylvania, No. 1:cv-04-830 (M.D. Pa. Apr. 16, 2004) ("Plaintiff established that overseas ballots require on average 30 days for transit to and from the absentee voter."); Ex. C, United States v. Georgia, No. 1:04-CV-2040-CAP (N.D. Ga. July 15, 2004) (same).[5]

As this Court implicitly acknowledged, the right to vote prescribed by UOCAVA can only be meaningful if ballots are sent sufficiently in advance of the election so that voters can receive, mark, and return them by the receipt deadline. The undisputed evidence here demonstrates that 30 days is the appropriate benchmark.

>    **2.    Virginia's Failure to Mail UOCAVA Ballots at Least 30 Days Before the November General Election Violated UOCAVA**

At the December 8, 2008 hearing, this Court concluded that a state's failure to mail absentee ballots sufficiently prior to the return deadline violated UOCAVA. Ex. A, Tr. at 14.

---

[5] Numerous courts have entered consent orders or decrees affording UOCAVA relief for a state's failure to mail absentee ballots within 30 days of the receipt deadline. See, e.g., Ex. U, United States v. New York, 1:09-cv-335 (N.D.N.Y. Mar. 26, 2009) (ordering 6-day extension to ballot receipt deadline and corresponding adjustments to other state law deadline); Ex. L, United States v. Michigan, No. L 88-208 CA5 (W.D. Mich. July 29, 1988) (ordering 10-day extension due to late absentee ballot mailing); Ex. M, United States v. Idaho, No. 88-1187 (D. Idaho May 21, 1988; entered May 23, 1988) (extending ballot receipt deadline); Ex. N, United States v. Oklahoma, No. CIV-88-1444 P (W.D. Okla. Aug. 22, 1988) (same); Ex. O, United States v. Mississippi, No. J89-0529(L) (S.D. Miss. Sept. 18, 1989) (same); Ex. P, United States v. New Jersey, No. 90-2357 (JCL) (D.N.J. June 5, 1990) (same); Ex. Q, United States v. Colorado, No. 90-C-1419 (D. Colo. Aug. 10, 1990) (same); Ex. R, United States v. New Jersey, No. 92-4203 (D.N.J. June 2, 1992) (ordering 14-day extension due to late absentee ballot mailing); Ex. S, United States v. Michigan, No. 1:92-CV-529 (W.D. Mich. Aug. 3, 1992) (ordering 20-day extension due to late absentee ballot mailing).

Undisputed facts derived from federal postal authorities establish, moreover, that ballots sent by international mail generally need at least 30 days to travel round-trip from the United States to overseas locations and back again.  The Commonwealth's failure, therefore, to mail absentee ballots to UOCAVA voters at least 30 days before its receipt deadline deprived those voters of the right to cast ballots reasonably likely to be counted.

Defendants mailed absentee ballots to between 2,114 and 2,382 UOCAVA voters less than 30 days before the November 4, 2008 election.  Ex. H, Stip. at ¶ 5.  Of these ballots, between 504 and 783 were received by the localities too late to be counted or were not received at all.  Id.  Between 96 and 132 of the timely-requested absentee ballots that were mailed to overseas voters less than 30 days before the election were received by the localities after the November 4, 2008 deadline.  Id.  Thus, the State's late mailing disenfranchised up to 783 of its overseas citizens.

This Court's prior holding, unanimous case authority, and the undisputed facts establish that Virginia violated UOCAVA by its late mailing of absentee ballots to UOCAVA voters prior to the November 4, 2008 general election.  Accordingly, summary judgment should be granted in favor of the United States.

**C.     Proper Construction of the Act, Unanimous Case Authority, and the
         Undisputed Facts Establish the Defendants' Liability**

Should the Court opt to reexamine the issues raised and decided earlier in this case, summary judgment in the United States' favor is still warranted.  UOCAVA requires states to provide qualified voters a chance to cast an absentee ballot in federal elections.  Thus, as this Court found earlier, late mailings violate the Act by stripping UOCAVA voters of the chance to cast a ballot that counts.  Here, undisputed evidence demonstrates that absentee ballot mailings

-14-

that occur within 30 days of an election fail to ensure many UOCAVA voters of a fair opportunity to vote. Accordingly, Virginia's late mailing of ballots here violated UOCAVA, and the potential availability of a FWAB does not remedy that violation. Finally, all necessary parties are before the Court, and the Defendants' standing objection is meritless.[6]

1.    **UOCAVA Requires Timely Mailing of Absentee Ballots to Military and Overseas Voters**

Section 102(a)(1) of UOCAVA requires that states "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). The right to vote means a right to cast a vote that will be counted. See, e.g., Allen v. State Bd. of Elections, 393 U.S. 544, 565-566 (1969); Reynolds v. Sims, 377 U.S. 533, 555 (1964). If states fail to mail absentee ballots to military and overseas voters in time to be received, marked, and returned by the counting deadline, they have not permitted such voters "to vote by absentee ballot." That failure violates Section 102(a)(1). Interpreting Section 102(a)(1) in any other way would eviscerate UOCAVA's core protections and deprive Virginia voters of rights guaranteed by federal law.

Unanimous authority supports this view. In United States v. Pennsylvania, the court granted the United States' motion for a preliminary injunction on similar grounds, stating that:

> There can be no doubt that Plaintiff is entitled to injunctive relief. Plaintiff is likely to prevail on the merits of its claim that the

_____

[6] This portion of the memorandum necessarily reiterates arguments previously made in the United States' response to the Defendants' Motion to Dismiss. To further the interests of judicial economy, the United States has abbreviated these arguments here. The Court is respectfully referred, however, to United States' Memorandum in Opposition to Defendants' Motion to Dismiss for a full treatment of the issues previously raised and raised again here.

> Commonwealth is in violation of UOCAVA. Plaintiff has
> established that county election officials have failed in their duty to
> timely forward absentee ballots to citizens abroad including the
> men and women serving our nation's military. Plaintiff
> established that overseas ballots require on average 30 days for
> transit to and from the absentee voter. Yet . . . many counties have
> not satisfied their important legal obligations to forward absentee
> ballots so that they are timely received. Time lines are especially
> critical in the case of military voters. Based on this, Plaintiff has
> shown reasonable grounds to believe that this failure constitutes a
> violation of the Act.

Ex. D, No. 1:CV-04-830 at 3 (M.D. Pa. April 16, 2004). Similarly, in United States v.

Wisconsin, a case decided under UOCAVA's predecessor statutes, the court rejected the very

argument Defendants make here – that federal law did not require election officials to mail

absentee ballots to overseas voters by a specified date – explaining:

> Congress had mandated that State election officials provide these citizens with the
> opportunity to vote. Inherent in this obligation is the mailing of the ballot by
> election officials in sufficient time prior to the election if the vote is to be
> meaningful. For instance, if a voter in Norway has made an application for a
> ballot before October 1, 1984, but it is not sent until October 23, 1984, common
> sense and knowledge of our postal system would appear to dictate that the round
> trip cannot be completed in sufficient time for the vote to be returned by
> November 6, 1984; and so with a ballot sent to Greece on October 22, 1984, or to
> Madrid, Spain on October 19, 1984.

Ex. T, No. 84-C-863-C at 5-6 (W.D. Wis. Nov. 30, 1984), *vacated on other grounds*, 771 F.2d

244 (7th Cir. 1985).[7]

---

[7] See also Ex. C, United States v. Georgia, No. 1:04-CV-2040 (N.D. Ga. July 15, 2004;
entered July 16, 2004) (granting preliminary injunction based on state's failure to send absentee
ballots at least 30 days before state receipt deadline); Ex. E, United States v. Delaware, No. 92-
523, at 2 (D. Del. Sept. 11, 1992) (granting United States' motion for TRO on the grounds that
"Defendants' failure to provide eligible uniformed services and overseas voters a reasonable
opportunity to execute and return such absentee ballots would constitute a violation of
[UOCAVA]"); Ex. F, United States v. Tennessee, No. 3-90-0958, at 1 (M.D. Tenn. Nov. 5,
1990) (granting United States' motion for a TRO and preliminary injunction because "[t]here are
reasonable grounds to believe that defendants' failure [to send absentee ballots in a timely

The failure to mail absentee ballots at least 30 days before the receipt deadline deprives voters of sufficient opportunity to vote and, thus, violates UOCAVA.  Accordingly, the mailing of absentee ballots to as many as 783 Virginia voters less than 30 days before the November 4, 2008 election, constituted a violation of the Act.

2. **The Mere Right to Cast a Write-In Absentee Ballot Neither Defeats a UOCAVA Claim Nor Remedies the Harm Caused by a State's Failure to Send Timely Absentee Ballots**

Defendants argue that the lone remedy for a state's late mailing of absentee ballots to UOCAVA voters lies in the statutory opportunity to cast a FWAB.  This argument must be rejected because 1) it is inconsistent with the structure and purpose of the Act, and unduly constricts this Court's jurisdiction to remedy federal law violations, and 2) the opportunity to cast a FWAB is simply not the same as that provided by a regular absentee ballot.

a. **Courts Retain Broad Authority to Remedy UOCAVA Violations**

Congress authorized the Attorney General to seek broad relief for UOCAVA violations. 42 U.S.C. § 1973ff-4.  Thus, courts retain traditional equity powers to tailor appropriate remedies to cure fully any UOCAVA violation.  Were the FWAB the sole remedy for a state's failure to provide timely absentee ballots, Congress's grant of enforcement authority would be

---

manner to military and overseas voters] constitutes a violation of [UOCAVA]"); Ex. G, <u>United States</u> v. <u>Wyoming</u>, No. C88-0238-8, at 1-2 (D. Wyo. Aug. 16, 1988) (granting TRO and preliminary injunction).

In addition, numerous courts have entered consent orders or decrees affording relief under UOCAVA for states' failure to ensure the timely mailing of absentee ballots based on agreed facts that insufficient time was afforded for ballots to reach the voters and be returned by the state's deadline.  <u>See, e.g.</u>, Cases cited in n. 5, above.

unduly restricted, and this court's remedial power hollowed.[8]  Similarly, because the FWAB is authorized for "general elections for Federal office" only, 42 U.S.C. § 1973ff-2(a), UOCAVA voters denied timely absentee ballots in other federal elections would  have no remedy at all. This absurd result would violate "a fundamental rule of statutory construction that a statute should not be construed in a manner which renders certain provisions meaningless or insignificant."  Lee v. Alleghany Reg'l Hosp. Corp., 778 F. Supp. 900, 904 (W.D. Va. 1991) (citing cases).

Courts have imposed broad relief as necessary to remedy state failures to provide timely absentee ballots, despite the availability of the FWAB and despite contrary state law.  (See, e.g., Ex. F, United States v. Tennessee, No. 3-90-0958, at 3 (M.D. Tenn. Nov. 5, 1990) (overriding state law by ordering state to transmit via fax, or some other means, absentee ballots to qualified UOCAVA voters and extending by 15 days the deadline for counting those ballots – despite availability of FWAB); Ex. Y, Reitz v. Pennsylvania, No. 04-2360 (M.D. Pa. Oct. 29, 2004) (stipulated order, 2-3) (ordering 8-day ballot return extension due to the late mailing of absentee ballots during the 2004 general federal election).

> **b.    The Emergency Back-up Federal Write-in Absentee Ballot Is Not Equal to a State Ballot**

UOCAVA requires states to accept a FWAB for use in general elections for Federal office by UOCAVA voters who timely apply for but do not receive state absentee ballots.  42.

---

[8]  There is no suggestion Congress intended such a result.  In fact, when it consolidated and repealed UOCAVA's predecessor laws, Congress retained the Attorney General's broad enforcement authority.  Had Congress intended by its inclusion of the Federal write-in absentee ballot option to preclude in future general elections the type of enforcement actions and remedies the Attorney General had regularly pursued (and courts had approved) for untimely mailing of overseas ballots, it could have so limited that authority.  It did not.

U.S.C. § 1973ff-2(a). Congress made clear that the FWAB is an "emergency back-up measure rather than [] a replacement for the regular ballot", H.R. Rep. 99-765 at 14 (emphasis added), and that it does not provide UOCAVA voters the same opportunity to vote as a full, printed absentee ballot, id. at 16.

The differences are stark. First, the FWAB's effectiveness depends entirely on voter awareness of its availability. Second, unlike a regular absentee ballot, UOCAVA voters must actively obtain a FWAB, a particularly steep barrier for military voters in combat zones or other voters without regular access to the Internet or locations stocking such ballots. Third, while regular absentee ballots list all offices, names, party affiliations, and ballot propositions, the FWAB is blank. To have a full opportunity to exercise their franchise, voters must be able to make choices based on complete and advance knowledge of their jurisdiction's ballot. 42 U.S.C. § 1973ff-2(c)(1). See Ex. V, Federal Write-In Absentee Ballot ; Ex. K, Carey Decl. ¶ 12. That is not always possible. See Ex. W, Conti Decl. ¶ 8. Finally, unlike a state's absentee ballots, which explain how to execute the ballot, whether a witness' signature or notarization is required, and return deadlines, the FWAB is simply blank, forcing military and overseas voters to research applicable state law requirements. Ex. K, Carey Decl. ¶ 12.

Denying military and overseas voters the right to receive timely absentee ballots from the responsible state election officials, and relegating them only to the more burdensome voting mechanism of voting by the FWAB abrogates UOCAVA's purpose, text, and judicial precedent. Accordingly, the Defendants' argument should be rejected.

### 3. All Necessary Parties are Before the Court

The Defendants' argument that the United States has failed to join necessary parties is incorrect. UOCAVA requirements are directed at the states; they must ensure UOCAVA compliance by the local election boards under their aegis. 42 U.S.C. § 1973ff-1(a); see McConnell v. Adams, 829 F.2d 1319, 1327 (4th Cir. 1987) (holding that Virginia's electoral board members and registrars act as employees and officers of the Commonwealth of Virginia, rather than the localities where they work); see, e.g., Va. Code Ann. §§ 24.2-103(A) & (B) (delineating state authority over local electoral boards and registrars). Indeed, recognizing the Commonwealth's authority over local elections officials, this Court's November 4, 2008 order directed the Defendants to require local election officials to preserve ballots at issue in this case. Ex. B, McCain-Palin 2008, Inc. v. Cunningham, No. 3:08cv709, at 2-3 (E.D. Va. Nov. 4, 2008). They enforced that order, and can similarly enforce other orders affecting local election officials, including, as needed, those providing for a complete remedy here. Accordingly, local election officials are not necessary parties here.

### 4. Standing

Finally, the Defendants' standing argument – reproduced verbatim from their papers seeking dismissal – again misapprehends the United States' statutory construction argument, as this Court aptly noted. Ex. A., Tr. at 11-12. It should once more be rejected.

### D. Remedy

The right to vote is "a fundamental political right." Sims, 377 U.S. at 562 (citation omitted). Indeed, voting is

> a sacred element of the democratic process. For our citizens overseas, voting by absentee ballot may be the only practical means to exercise that right. For the

members of our military, the absentee ballot is a cherished mechanism to voice
their political opinion. . . . [It] should be provided no matter what their location.

Bush v. Hillsborough County Canvassing Bd., 123 F. Supp.2d 1305, 1307 (N.D. Fla. 2000); see

Ex. W, Conti Decl. at ¶ 6 (losing the right to vote is "an extreme disservice to members of the

military who swear an[] oath and put their lives in harm's way to support and defend the

Constitution of the United States").

The United States respectfully seeks a declaratory judgment that the failure of election

officials to send absentee ballots to UOCAVA voters in sufficient time for them to be received,

marked, and returned by November 4, 2008, violates UOCAVA.  To remedy fully the

Commonwealth's UOCAVA violations, the United States seeks an order requiring the

Defendants to count as validly cast ballots all absentee ballots from UOCAVA voters that were

rejected solely because election officials received them too late to be counted.  This narrowly

tailored remedy will not change any election outcomes.  It will, however, achieve something

profoundly significant: the restoration and effectuation of the rights of those Virginians who,

through no fault of their own, were denied their votes by the Commonwealth's failure to mail

their ballots on time.  See Ex. W, Conti Decl. ¶ 6-7; Ex. K, Carey Decl. ¶ 14.  Moreover, this

remedy is easily implemented given the Court's November 4, 2008 order requiring the State to

retain information related to voters affected by the State's late mailing of absentee ballots.

Finally, the parties, with the approval of the Honorable Dennis W. Dohnal, agreed to

defer discovery as to evidence related solely to the issue of relief to ensure UOCAVA

compliance in future federal elections until this Court has made a liability finding.  Accordingly,

if the Court grants summary judgment for the United States, the United States respectfully

requests a brief period following the entry of judgment to confer with the Defendants and report

to the Court on all relief issues, including the appropriate scope of relief for UOCAVA violations in the November 2008 general election, as well as future relief.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be denied and the United States' Cross-motion for Summary Judgment should be granted.

Respectfully submitted,

LORETTA KING
ACTING ASSISTANT ATTORNEY GENERAL

DANA J. BOENTE
UNITED STATES ATTORNEY

/s/_____
Robin E. Perrin
Virginia State Bar No. 65825
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 819-7417
Email: Robin.Perrin2@usdoj.gov

CHRISTOPHER COATES
REBECCA J. WERTZ
RICHARD DELLHEIM (admitted *pro hac vice*)
LEMA BASHIR
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Ave., NW
Room NWB-7254
Washington, D.C. 20530
Phone: (202) 305-1291
Fax:     (202) 307-3961
christopher.coates@usdoj.gov
rebecca.j.wertz@usdoj.gov
richard.dellheim@usdoj.gov
lema.bashir@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of August 2009, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to the following counsel of record:

        Robert A. Dybing
        rdybing@t-mlaw.com
        *Attorney for the Defendant*

By:

        /s/ _____
        Robin E. Perrin
        Virginia State Bar No. 65825
        Assistant United States Attorney
        United States Attorney's Office
        600 East Main Street, Suite 1800
        Richmond, Virginia 23219
        Telephone:  (804) 819-5400
        Facsimile:  (804) 819-7417
        Email: Robin.Perrin2@usdoj.gov