UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MCCAIN-PALIN, 2008, INC.

    Plaintiffs,

v.                                              Case No. 3:08cv709

JEAN CUNNINGHAM, *et al.*,

    Defendants.

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, AND REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

        The defendants, Jean Cunningham, Nancy Rodrigues, and Harold Pyon, being the members of the Virginia Board of Elections, sued in their official capacity, the Virginia State Board of Elections, and the Commonwealth of Virginia (collectively, the "Defendants"), moved for summary judgment against Intervenor United States of America. The Intervenor filed a combined Memorandum in Opposition and Cross-Motion for Summary Judgment. The Defendants oppose the Intervenor's summary judgment motion, and submit this as their combined Memorandum in Opposition and Reply Memorandum in support of their own summary judgment motion.

**<u>Introduction</u>**

        The Intervenor has now abandoned any pretense that UOCAVA contains a provision requiring States to mail absentee ballots a certain number of days prior to an election. In response to the Defendants' challenge to point to a source in UOCAVA establishing such a requirement, the Intervenor responds with telling silence. Instead, the Intervenor's "authority" for its position is not a statute at all: it is a series of contradictory

estimates by various federal employees as to the minimum length of time absentee ballots should be mailed out prior to an election. However, the Intervenor does not explain why these estimates should be accorded the dignity of federal law binding on the Commonwealth of Virginia.

In a conspicuous omission, the Intervenor neglected to address, let alone distinguish, the Defendants' citations to the controlling law on deference to agency opinions. Those authorities deal the *coup de grâce* to the Intervenor's position that the FVAP estimates have the force of federal law. Indeed, those estimates are of no legal significance. *See BedRoc Limited, LLC v. U.S.*, 541 U.S. 176, 183 (2004) (courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there."); *Neal v. U. S.*, 516 U.S. 284, 296 (1996) ("Congress, not this Court, has the responsibility for revising its statutes."); *A. T. Massey Coal Co. v. Holland,* 472 F.3d 148, 166 (4th Cir. 2006) (before according deference to agency interpretation, Congress must have delegated rulemaking authority to agency; "we look for an explicit or implicit grant of interpretive power from Congress to the agency."). The Intervenor's ostrich strategy cannot rectify Congress's decision not to grant rulemaking authority to FVAP.

**I. Facts**

**Defendants' Facts Were Unchallenged and Therefore Established**

The Intervenor did not challenge any of the facts marshaled by the Defendants to support their motion. Pursuant to Local Rule 56(B), the Court may therefore assume that the facts so adduced are admitted. Among those facts, as numbered in the Defendants' Memorandum:

2. There is no federal statute that requires States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. The Complaint in Intervention is based entirely on a "determination" by the Federal Voting Assistance Program of the Department of Defense that such ballots be mailed at least 30 days before an election, and a "recommendation" that States allow 45 days for round-trip mailing of absentee ballots.

3. There is no allegation that any UOCAVA voters were prevented from voting using a Federal write-in ballot as provided in 42 U.S.C. § 1973ff-2.

**Intervenor's Facts**

Not only do the Intervenor's facts not support its argument, the self-contradictory nature of the Intervenor's position is evident from the disparate time estimates required for absentee ballot-mailing as proffered by various federal employees.

1. Teddie Dyson. Mr. Dyson is a U. S. Postal Service employee. *See* Intervenor's Exhibit I. Mr. Dyson averred that "Standard Transit Times" for locations vary as follows:

    7-9 days (Europe)

    7-9 days (Central America/South America/Carribean)

    7-13 days (Iraq)

    7-13 days (Japan, Korea, Pacific Islands, Far East)

    35 days (for "remote, austere" locations, which are not identified).

Mr. Dyson also states that "Transit times will vary." *Id.* The Intervenor makes the claim that these numbers "*average*" to 30 days round trip. *See* Intervenor's Memorandum, p. 5 (emphasis supplied). The Intervenor omitted the arithmetical basis for this assertion,

which in any event raises the question why a State should have to obtain these transit times to begin with, and then perform an averaging process in order to discern its statutory obligations under UOCAVA.

2. William H. Moser. Mr. Moser works for the State Department. *See* Intervenor's Exhibit J. His Department operates only the Diplomatic Pouch Service and Diplomatic Post Office service, and "The Department of State is unable to comment on mail transit times for balloting materials sent by other methods or mail transit times for balloting materials sent to uniformed services voters." For voters under "Chief of Mission authority" (of no relevance to the case at bar), he estimates that "sending and receiving an absentee ballot using the diplomatic pouch *may take on average* 30 days." *Id.* (emphasis supplied). However, sometimes pouch service may take "as much as 60 days," except for DPO mail which takes "an estimated 20 days round-trip." *Id.*

3. Robert H. Carey, Jr. Mr. Carey works for the Defense Department in the Federal Voting Assistance Program. He avers that "it is necessary to allow at least 30 days for the round trip from the dispatch center in the United States to the individual located overseas and back to the dispatch center." He adds that the U. S. Postal Service "also indicates that 30 days is a reasonable benchmark for round-trip transit time for international mail." *Id.* However, he goes on to say that "FVAP has recommended that states allow, as an ideal, 45 days for round trip mailing time when sending absentee ballots to overseas voters."

Thus, not only does UOCAVA lack a specific deadline for States to mail absentee ballots to UOCAVA voters, the Intervenor's three witnesses proffer different estimates of the appropriate time period necessary. In addition, and tellingly, even those witnesses are

internally inconsistent. Mr. Carey, for example, refers to a 30 day period as (i) "necessary" and (ii) "a reasonable benchmark", yet refers to a 45 day period as "ideal." The Intervenor does not explain how States are supposed to infer binding obligations from these remarks.

## II. Argument

### A. UOCAVA Contains No Time Deadlines for States to Mail Ballots

The Intervenor's Summary Judgment Motion should be denied, and the Defendants' Summary Judgment Motion should be granted, because of the ineluctable fact that UOCAVA does not contain a provision that requires States to mail absentee ballots to UOCAVA voters a minimum number of days before an election. It would seem elementary that a litigant alleging a statutory violation has a primary obligation to identify the provision of the statute alleged to be violated. A litigant unable to do this – the Intervenor for example – should have its complaint dismissed. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("factual allegations 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'").

The Intervenor argues that UOCAVA imposes a 30 day deadline on States to mail absentee ballots to UOCAVA voters. Intervenor Memorandum, pp. 5 (repeated references to "30 days"), 7 ("less than 30 days" violates UOCAVA), 12 (30 days is "reasonable benchmark" and "bare minimum time"), 13 ("The undisputed evidence here demonstrates that 30 days is the appropriate benchmark."). But on whose or what authority is an FVAP "benchmark" converted into a federal statute binding on the States?

The Defendants' Memorandum in Support of their summary judgment motion explained that UOCAVA is not ambiguous on this point: it has no time deadline for States to mail absentee ballots. Accordingly, there is no need for statutory interpretation. FVAP's "estimate" of 30 days as a time period applicable to the States is simply gratuitous. It might as well be 32 days or 47 days or some other non-statutory number of days. FVAP's estimate is not a regulation, it is not entitled to deference and it is manifestly inconsistent with UOCAVA, which could have, but did not, impose such a deadline. Finally, the Intervenor's reliance on a 30 day deadline *cannot* be correct, inasmuch as UOCAVA assigns to States the responsibility to process UOCAVA absentee ballot applications if received "not less than 30 days before the election." *See* 42 U.S.C. § 1973ff-1(a)(2). Applications received exactly 30 days before an election would – under the Intervenor's theory – mean that a State would have to receive, process, and mail UOCAVA ballots all on the same day, or otherwise violate UOCAVA. That is an absurd result. Indeed, as this Court observed during the hearing on the motion to dismiss, "A 30-day deadline cannot be rigorously enforced or justified under UOCAVA since the statute itself requires states to honor ballot applications received by the later of, one, the state's deadline for receiving them; or two, 30 days before the election. Given this, Congress obviously envisioned some situations in which a state's absentee ballot would be mailed within 30 days of the election." *See* Intervenor Memorandum, Exhibit A at 15. Accordingly, the Intervenor's legal position in this case – that UOCAVA imposes a 30 day deadline for States to mail absentee ballots – has already been considered and rejected by this Court.

### B. Federal Write-in Ballot Addresses Intervenor's Concerns

The Intervenor questions the utility of the Federal write-in absentee ballot ("FWAB") as a remedy for UOCAVA voters who do not receive absentee ballots from States in a timely manner. The Intervenor argues that the FWAB is not a perfect and complete remedy for late-arriving absentee ballots, and that many UOCAVA voters do not know about the FWAB. *See* Intervenor Memorandum, p. 19. Congress, however, established that remedy for the express purpose of ameliorating the effects of late-mailed absentee ballots. If that remedy is to be expanded or changed, it is up to Congress to do so, not the Intervenor, not the FVAP, and not the judiciary. Indeed, Congress is now doing so in S. 1415, as mentioned in the Defendants' Opening Memorandum.

### C. Law of the Case Doctrine is Inapplicable

The law of the case doctrine is inapplicable here for three reasons. First, the Court's ruling was based on an "if." The Court stated: "If it is indeed true that some ballots were not mailed until within 14 days of the election, it seems clear that Virginia did indeed violate UOCAVA." The Intervenor did not adduce any evidence showing that ballots were mailed within 14 days of an election. Exhibit W, the affidavit from Capt. Conti, states that he received his absentee ballot in late October, but does not state on which date the Virginia locality mailed that ballot to him. More to the point is that UOCAVA nowhere establishes a 14 day deadline, or any deadline whatsoever. Next, the Intervenor's argument that the law of the case doctrine applies because this Court found the Intervenor's allegations to be "facially plausible," *see* Intervenor's Memorandum, pp. 9-10, misconstrues the nature of a definitive legal ruling to which the doctrine applies. A "plausible" claim is not an established claim.

Second, the Court did not then have the benefit of S. 1415, which has a provision (Section 5) requiring States to mail absentee ballots to UOCAVA voters by a certain deadline before an election. The legislative history of that bill shows that Congress knows full well that UOCAVA in its present form lacks a specific deadline applicable to States. The Intervenor considers S 1415 irrelevant because it is proposed legislation, not law. Its significance, however, lies in the fact that it would not be necessary to enact such a law if UOCAVA already contained such a deadline. Defense Department witnesses expressly acknowledged in Senate Committee testimony the absence of such a deadline in UOCAVA in its present form and the need to adopt a deadline. See Defendants' Opening Memorandum, Exhibit 2 (testimony of Ms. McGinn, Undersecretary of Defense for Personnel and Readiness). On Thursday, July 23, 2009, the Senate voted to include S. 1415 into S. 1390, the Defense Authorization Bill, as amended SA 1764. The Senate then passed S. 1390. The bill is now headed to conference committee.

Third, the Court's ruling from the bench did not cite to any provision of UOCAVA as having been violated. The law of the case doctrine "is a rule of discretion, not a jurisdictional requirement." *Columbus-America Disc. Group v. Atlantic Mut. Ins.*, 203 F.3d 291, 304 (4th Cir. 2000). The doctrine "does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *American Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 515 (4th Cir. 2003). The Court should not rely on the doctrine now because it would lead to an injustice: the finding of a statutory violation without any provision of UOCAVA having been violated.

Finally, to the extent that the Court reached any definitive rulings at the December 8, 2008 hearing, the one ruling that deserves to be accorded law of the case status is the Court's judgment that "[a] 30-day deadline cannot be rigorously enforced or justified under UOCAVA." See Intervenor Memorandum, Exhibit A, p. 15. That ruling should be outcome-determinative, and merits the award of summary judgment to the Defendants, given the Intervenor's position that a 30 day deadline is what federal law requires.

### D. Other Decisions are Unreasoned and Therefore Unpersuasive

The Intervenor cites a number of cases from other jurisdictions, none of which recognize that UOCAVA is silent on time deadlines for States to mail absentee ballots. Most of those cases were resolved by consent decree. They are just make-weight and irrelevant because they were not litigated. *See* Intervenor Memorandum, Exhibits L, M, N, O, P, Q, R, S, U, and Y. The few cases that were litigated either did not address or did not rebut the arguments raised by the Defendants in this case. To take just one example, *United States v. Pennsylvania*, No. 1:cv-04-830 (M.D. Pa. Apr. 16, 2004) (order granting preliminary injunction) (Intervenor Memorandum Exhibit D) simply assumed "a violation of the Act" without deigning to explain which provision of UOCAVA was violated. *Assuming* a violation, however, is not the same as establishing one.

### E. Lack of Standing for Special, Primary, or Runoff Elections

The Intervenor now agrees that its reference to "special, primary, [or] runoff federal elections for Federal office," is a statutory construction argument, and not a request for relief based on those types of elections. Intervenor Memorandum, p. 20. Accordingly, the Defendants need not move for summary judgment with respect to those types of elections because the Intervenor is not now litigating them.

9

**III. Conclusion**

Federal law requires a Congressional enactment. The Commonwealth of Virginia did not violate any Congressional enactment, a point of incontrovertible truth based on the Intervenor's conspicuous inability to point to any such statutory violation. Federal officials' estimates of round-trip ballot transit time are just that: estimates, which are not binding on States and are manifestly not federal law. The Court should grant summary judgment to the Defendants, and dismiss the Complaint in Intervention, with prejudice.

JEAN CUNNINGHAM, *et al.*

By __/s/_____

Counsel

Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
ThompsonMcMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Fax: (804)780-1813
Email: rdybing@t-mlaw.com

*Counsel for Jean Cunningham, Nancy Rodrigues, and Harold Pyon, being the members of the Virginia State Board of Elections sued in their official capacity; Virginia State Board of Elections; and the Commonwealth of Virginia, Defendants*

**Certificate of Service**

I certify that on September 1, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Christopher Coates, Chief
Rebecca J . Wertz, Deputy Chief
Richard Dellheim
Lema Bashir
Trial Attorneys
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue NW
Room NWB-7254
Washington, D.C.  20530
*Counsel for Intervenor United States of America*

By: /s/
Robert A. Dybing, VSB No. 32712
John A. Gibney, Jr., VSB No. 15754
Counsel for Defendants
ThompsonMcMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
(804)649-7545
Fax: (804)780-1813
rdybing@t-mlaw.com
jgibney@t-mlaw.com