**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:08CV709 |
| v. | ) | |
| | ) | |
| JEAN CUNNINGHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**UNITED STATES' REBUTTAL TO DEFENDANTS' OPPOSITION TO UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff United States of America respectfully submits its rebuttal to the Defendants' Opposition to the United States' Cross-Motion for Summary Judgment. Because no genuine material fact issues exist as to the Defendants' violation of federal law, summary judgment should be granted in favor of the United States. Defendants' Motion for Summary Judgment must, therefore, be denied.

**ARGUMENT**

The Defendants misconstrue UOCAVA and ignore unanimous case authority and the undisputed fact record to justify depriving Virginia's military and overseas citizens of basic voting rights protected by federal law and recognized by federal courts throughout the country. Their efforts must fail.

**I.      The Law of the Case Doctrine Applies Here**

The core legal question before the Court now – as it was during the Motion to Dismiss stage – is whether UOCAVA is violated when a state mails absentee ballots too late for them to

be counted. Because this Court already decided that issue, routine law of the case principles should bar Defendants from re-litigating it here. The Defendants contend, however, that the law of the case doctrine does not apply because 1) the Court's prior ruling was "based on an if", 2) the Court did not have the "benefit" of Congressional consideration of potential, future UOCAVA revisions, and 3) the Court failed to cite the UOCAVA provision being violated. Defs.' Opp./Reply at 7-8. These arguments must be rejected.

First, while the Court properly reserved making findings of fact as to when the State mailed the ballots at issue, it nonetheless squarely addressed and rejected the Defendants' argument that UOCAVA cannot be violated when a state mails ballots too late for them to be returned and counted. Accordingly, the Court's legal conclusion that a late mailing of ballots violates UOCAVA should govern its review of that identical legal issue now. This is especially so given the Defendants' view that no facts are relevant to the issue because jurisdictions can never violate UOCAVA based on when they mail ballots to voters qualified to vote in Virginia federal elections.

Second, the Defendants' reliance on Congressional deliberations as to possible changes to UOCAVA is misplaced. See Miller v. Callahan, 964 F. Supp. 939, 948 (D. Md. 1997) ("A pronouncement by Congress is not relevant unless it is passed by both houses of Congress and is signed by the President[;]" and thus a contemplated statutory change "should not be given any weight by this court, particularly in view of the fact that the Senate has taken no action whatsoever with reference to it"); cf. Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 650 (1990) (noting that Congressional inaction lacks "persuasive significance"). In short, that

Congress may be contemplating changes to UOCAVA is irrelevant to whether the Defendants have violated UOCAVA as written. They have.[1]

Third, the United States' Complaint – and every other pleading it has filed with this Court, including its papers opposing Defendants' Motion to Dismiss – clearly contended that the late mailing of absentee ballots violates Section 102(a)(1) of UOCAVA (42 U.S.C. § 1973ff-1(a)(1)). That the Court did not specifically cite that Section when ruling that late mailings violate UOCAVA is of no import and does not preclude this Court from applying routine law of the case principles to bar relitigation of that issue here.

While the Defendants properly note this Court's power to revisit prior opinions, they are strangely silent as to the numerous cases cited by the United States in which courts, including the District Court for the Eastern District of Virginia, barred relitigation of legal issues decided at the motion to dismiss stage. Those precedents should apply fully here.[2]

---

[1] Citing in general to the May 13, 2009 Statement of Gail H. McGinn, Defendants declare that "Defense Department witnesses expressly acknowledged in Senate Committee testimony the absence of such a deadline in UOCAVA in its present form and the need to adopt a deadline." Defs.' Opp./Reply at 8 (citing Ex. 2 to Defs.' Mot. for Summ. J). Ms. McGinn's statement contains no such "acknowledgment." She merely notes, consistent with the FVAP Director Robert Carey, that one of FVAP's top recommended State legislative priorities is to provide at least 45 days between ballot mailings and their due date. See Ex. 2 to Defs.' Mot. for Summ. J at 5; Ex. K to U.S. Mot. For Summ. J., Carey Decl. ¶ 10. This cannot be fairly construed to suggest Ms. McGinn believes UOCAVA in its existing form does not require timely mailing of ballots.

[2] The Defendants apparently seek to avert the law of the case doctrine by asserting that no evidence exists to demonstrate that ballots were mailed within 14 days of the November election. Yet, their own database demonstrates that Virginia elections officials mailed 279 ballots to UOCAVA voters beginning on or after October 21, 2008 – exactly two weeks prior to the November 4, 2008 general election. See Ex. A, Hoffman Decl. ¶ 4. As the Defendants concede, their "UOCAVA records speak for themselves." Defs'. Ans. ¶ 11.

Finally, the Defendants are left to argue that applying law of the case principles here would be unjust, apparently because they disagree with the Court's earlier ruling. Defs.' Opp./Reply at 8. The United States respectfully submits that the true injustice here is the disenfranchisement of Virginia's overseas voters, some of whom, like declarant Captain Carl R. Conti, II, serve their country under battle conditions and risk their lives to ensure freedom abroad, yet have been deprived of their right to vote at home. The Defendants' defense of that disenfranchisement is meritless and continues the injustice to Virginians overseas who were unable to vote in the 2008 general election.[3]

This Court should apply law of the case principles and reject the Defendants' attempts to relitigate legal issues this Court has already decided.[4]

## II. UOCAVA Requires States to Give UOCAVA Voters a Reasonable Chance to Cast a Ballot That Counts

Defendants proclaim that the United States has "abandoned any pretense" that UOCAVA contains any provision requiring states to transmit absentee ballots to UOCAVA voters by a

---

[3] The Defendants criticize Captain Conti for not stating the date on which his absentee ballot was sent to him. Captain Conti, of course, does not have ready access to that information. The Defendants, however, do. Their VERIS database confirms that Captain Conti's absentee ballot was mailed to him on October 8, 2008, 27 days before the election. Ex. A, Hoffman Decl. ¶ 5 and Attachment A thereto. This evidence strongly supports the 30-day standard adopted by the courts and advanced here.

[4] Among the issues already decided and resurrected here is the Defendants' unsupported view that the Federal Write-in Absentee Ballot ("FWAB") is the sole remedy for the late mailing of absentee ballots. Defs.' Opp./Reply at 7. Aside from the Defendants' apparent concession that late-mailings in fact violate UOCAVA, the Defendants decline to address the United States' arguments as to why the potential availability of a FWAB is not an appropriate or complete remedy for a UOCAVA violation. Accordingly, the Court's prior ruling implicitly rejecting the Defendants' FWAB argument should continue to govern here.

certain time. Defs'. Opp./Reply at 1. Defendants continue to misread UOCAVA and the essence of the United States' case.

Despite Defendants' rhetoric, the United States of course has never contended UOCAVA's text sets forth specific deadlines by which states must mail absentee ballots. Instead, the United States contends – and decades of unanimous case authority affirms – that UOCAVA requires states to mail absentee ballots to UOCAVA voters within a reasonable time frame to ensure that absent overseas voters have a chance to cast a vote that counts. The logic of this simple but fundamental principle has long been recognized. For example, the federal district court in United States v. Wisconsin explained it this way: "Congress has mandated that State election officials provide these citizens with the opportunity to vote. Inherent in this obligation is the mailing of the ballot by election officials in sufficient time prior to the election to vote if the vote is to be meaningful." No. 84-C-863-C (W.D. Wis. Nov. 30, 1984), vacated on other grounds, 771 F.2d 244 (7th Cir. 1985) (Ex. T to U.S. Cross-Mot. for Summ. J.).[5] What constitutes a reasonable time frame to effectuate the statute's guarantee is a fact question, which as Congress implicitly recognized, depends on numerous contingencies.

Here, undisputed factual evidence derived from federal postal authorities demonstrates that 30 days is the minimum time necessary to ensure that overseas voters have a reasonable chance to receive, mark, and return ballots transmitted by mail in time for them to be counted. And while the Defendants quibble with the de minimus differences in one-way mailing times

---

[5] The Seventh Circuit Court of Appeals explained the holding: "The district court reasoned that although neither statute specifically stated how long before an election absentee ballots must be mailed to voters, a state could defeat the express purposes of the statutes by mailing the ballots without sufficient time for their valid return." 771 F.2d 244, 245 (7th Cir. 1985).

adduced by the federal authorities charged with handling mail, they cannot dispute the bottom line dispositive fact: that 30 days is the minimal, reasonable time necessary for states to allow the sending and valid return of overseas absentee ballots. That standard is based on conclusions drawn by the Federal Voting Assistance Program, the Presidential designee under UOCAVA charged with administering the statute, and it is entitled to deference. It is derived, moreover, from empirical data from federal authorities authorized to carry and/or distribute mail to overseas citizens. Those data are before this Court as uncontested facts in evidence. The Defendants' silence on this dispositive point should govern the compliance standard adopted by this Court.[6]

Moreover, the Defendants misapprehend UOCAVA's structure. They argue that the 30-day deadline advanced here "cannot be correct" because election officials may need to process an absentee ballot application the same day as it is received. This, they argue, is "absurd." Defs' Opp./Reply at 6. It is not. The Defendants decline to explain why it is an absurd impossibility for election officials on occasion to process ballot applications on an expedited basis – especially when doing so conforms with federal law and secures an overseas citizen's right to vote.

The Defendants also note the Court's reference at the December 8, 2008 hearing to its difficulties reconciling a 30-day mailing benchmark with UOCAVA's application deadline applicable to federal write-in ballots. Defs.' Opp./Reply at 6 (referencing Tr. at 14). A 30-day

---

[6] The Military Postal Service Agency provided a number of average one-way mailing times for the various locations where overseas armed servicemembers may receive their mail. The United States presented an average mailing time from those numbers by performing simple arithmetic – adding up the average one-way estimates for each location, and dividing them by the number of locations, then doubling the result and adding one day to allow for distribution, receipt, voting, and return by mail. This resulted in a 30-day average. See Ex. K to U.S. Mot. for Summ. J., Carey Decl. ¶ 6.

compliance standard under Section 102(a)(1), however, coheres easily with Section 103(b)(2), the provision referenced by the Court. The two sections are distinct. Section 102(a)(1) confers UOCAVA's right to vote and the concomitant obligation by States to mail ballots with sufficient time for transmittal to the voter and the return by the deadline. Section 103(b)(2), on the other hand, defines the application deadline governing FWABs obtained and submitted by voters. It provides that if the FWAB voter's application for a State ballot was received by the later of the 30th day before the election or the state's application deadline for such ballots, it is timely for purposes of counting the FWAB. Thus, applying a 30-day benchmark for mailing ballots to UOCAVA voters who have timely applied under Section 102(a)(2) does not conflict with Section 103(b)(2). Moreover, a 30-day standard under Section 103(b)(2) is appropriate even when state application deadlines fall within 30 days of the election. That is because Section 103(b)(2) requires states to offer a reasonable opportunity to vote; Section 103(b)(2) is not violated if, because of state application deadlines, states cannot reasonably meet the 30-day standard for voters whose timely ballot applications are received within 30 days of the election.[7]

Finally, Defendants dismiss the plethora of cases undermining their position as "make-weight", "unreasoned", and "irrelevant." Defs.' Opp./Reply at 9. Yet, they simply ignore United States v. Wisconsin, a case in which the court rejected the very legal argument Defendants raise here. No. 84-C-863-C (W.D. Wis. Nov. 30, 1984) (holding that states must mail absentee ballots to overseas and military voters "in sufficient time prior to the election" if the right to vote guaranteed by federal law "is to be meaningful"), vacated on other grounds, 771

---

[7] This issue was neither raised by the Defendants nor engaged by the parties at the motion to dismiss stage of the case. Accordingly, the Court's comments are not subject to law of the case precepts.

F.2d 244 (7th Cir. 1985) (Ex. T to U.S. Cross-Mot. for Summ. J.). Nor of course do they explain why the unanimous authority adopting the 30-day standard in litigated cases is incorrect.[8] Federal court authority that is directly on point cannot be irrelevant or so easily discarded. Tellingly, the Defendants cannot cite even a single case to support their position here.

Accordingly, this Court's prior determination that a state's late mailing of absentee ballots violates UOCAVA should govern its review of the cross motions for summary judgment before it because 1) law of the case principles apply here, and 2) the Court's conclusion is correct and fully supported by UOCAVA's text and purpose, the undisputed facts, and unanimous case authority.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be denied and the United States' Cross-Motion for Summary Judgment should be granted.

---

[8] See, e.g., Ex. C to U.S. Cross-Mot. for Summ. J., United States v. Georgia, No. 1:04-CV-2040 (N.D. Ga. July 15, 2004; entered July 16, 2004); Ex. E to U.S. Cross-Mot. for Summ. J., United States v. Delaware, No. 92-523, at 2 (D. Del. Sept. 11, 1992); Ex. F to U.S. Cross-Mot. for Summ. J., United States v. Tennessee, No. 3-90-0958, at 1 (M.D. Tenn. Nov. 5, 1990); Ex. G to U.S. Cross-Mot. for Summ. J., United States v. Wyoming, No. C88-0238-8, at 1-2 (D. Wyo. Aug. 16, 1988).

Respectfully submitted,


LORETTA KING
ACTING ASSISTANT ATTORNEY GENERAL

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

/s/
Robin E. Perrin
Virginia State Bar No. 65825
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 819-7417
Email: Robin.Perrin2@usdoj.gov

CHRISTOPHER COATES
REBECCA J. WERTZ
RICHARD DELLHEIM (admitted *pro hac vice*)
LEMA BASHIR
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Ave., NW
Room NWB-7254
Washington, D.C. 20530
Phone: (202) 305-1291
Fax:    (202) 307-3961
christopher.coates@usdoj.gov
rebecca.j.wertz@usdoj.gov
richard.dellheim@usdoj.gov
lema.bashir@usdoj.gov

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 18th day of September 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

        Robert A. Dybing
        rdybing@t-mlaw.com
        *Attorney for the Defendant*


      By:
        /s/
        Robin E. Perrin
        Virginia State Bar No. 65825
        Assistant United States Attorney
        United States Attorney's Office
        600 East Main Street, Suite 1800
        Richmond, Virginia 23219
        Telephone: (804) 819-5400
        Facsimile: (804) 819-7417
        Email: Robin.Perrin2@usdoj.gov