1          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
2                 Richmond Division

3

4     The United States of America,

5                           plaintiff

6              versus                3:08 CV 709

7     Jean Cunningham, et al.,

8                           defendants

9

10

11                  October 5, 2009

12                  Richmond, Virginia

13

14

15     before:  HONORABLE RICHARD L. WILLIAMS
          Senior United States District Judge
16

17          Motion for Summary Judgment

18

19

20          Gilbert F. Halasz, RMR
            Official Court Reporter
21          U.S. Courthouse
           701 East Broad Street
22          Richmond, VA 23219
            (804) 916-2248
23

24

25

1

2                    APPEARANCES

3

4            Richard Dellheim, Esq.

5              Lema Bashir, Esq.

6          Robin E. Perrin, Esquire

7               for the plaintiff

8

9            Robert E. Dybing Esq.

10              for the defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1         THE CLERK:  Case number 08 CV 709.

2         United States versus Jean Cunningham, et al.

3         Plaintiff is represented by Robin Perrin,

4  Lema Bashir and Richard Dellheim.

5         Defendants are represented by Robert Dybing.

6         Are counsel ready to proceed?

7         MR. DYBING:  We are.

8         MR. DELLHEIM:  Yes.

9         THE COURT:  We are here on cross motions for

10  summary judgment.  Who wants to argue on behalf

11  the United States?

12         MS PERRIN:  Your Honor, I would introduce

13  Richard Dellheim from the Department of Justice.

14  He will be here on behalf of the United States.

15         MR. DELLHEIM:  Good morning.

16         THE COURT:  Do you want to argue or submit it

17  on the record as made?  What is your pleasure?

18         MR. DELLHEIM:  I would like to make a few

19  brief remarks.

20         THE COURT:  All right.  Fine.

21         MR. DELLHEIM:  Good morning, Your Honor,

22  counsel.  And may it please The Court, my name is

23  Richard Dellheim.  Along with co-counsel, Lema

24  Bashir and Robin Perrin we represent the United

25  States in this matter.

1    Your Honor, just nine months ago this court

2   addressed and decided the very issues presented by

3   the defendants' summary judgment motion.  Then, as

4   now, the defendants argued that the right to vote

5   guaranteed by UOCAVA violated by a state's late

6   mailing of absentee ballots.  The Court rejected

7   that argument then and we urge The Court to reject

8   it again today.  There are several compelling

9   reasons why.

10    First, and perhaps most importantly, if the

11   right to vote encompassed by UOCAVA is to mean

12   anything at all it is that states have to mail

13   absentee ballots to voters within sufficient time

14   before the election so the voter can receive the

15   ballots, mark them, and return them in time to be

16   counted.  Timing is, therefore, critical.

17    Secondly, the evidence here --

18   THE COURT:  But in this case if you counted

19   the ballots that we are talking about it would not

20   have impacted the election; is that correct?

21   MR. DELLHEIM:  That's correct, Your Honor.

22   It will not change the results of the election;

23   however, it will do something --

24   THE COURT:  But does the doctrine of mootness

25   factor into this?

1    MR. DELLHEIM:  No, sir, it does not.

2    THE COURT:  Why?

3    MR. DELLHEIM:  Because the right that is

4    encompassed within UOCAVA is the right to vote and

5    not the right to change elections.  The right to

6    vote is at the heart of this case.  And for voters

7    to be deprived of that right --

8    THE COURT:  But it seems to me that if you

9    enter a court order that guarantees in the future

10    that this won't occur prospectively, that that is

11    one issue.  But something that is now moot, even

12    if you counted them, does that just give the voter

13    the satisfaction of knowing his vote was counted?

14    MR. DELLHEIM:  That is the essence of the

15    right to vote is that every American citizen has

16    the opportunity to make his or her voice heard for

17    his or her candidate of choice.

18    THE COURT:  All right.

19    MR. DELLHEIM:  That is the right that we are

20    fighting to vindicate here.

21    THE COURT:  So you are saying that those

22    votes have to be counted now, even though it would

23    not impact the outcome of the election?

24    MR. DELLHEIM:  Yes, sir.  That is, I would

25    add, Your Honor, that is the typical remedy in

1    UOCAVA cases.  I am unaware of any UOCAVA case in
2    which the votes that have been deprived would have
3    changed the result of any election.  But what is
4    the heartland of what we are talking about here is
5    American citizens' right to have his or her voice
6    heard and his or her vote counted.

7         THE COURT:  All right.

8         MR. DELLHEIM:  Your Honor, the evidence here
9    is undisputed that Virginia deprived as many as
10   2,000, or over 2,000 of its citizens that right to
11   vote by sending ballots out too late for them to
12   be counted.

13        That late mailing violated UOCAVA.  And that
14   conclusion is supported by unanimous case
15   authority spanning many decades from many
16   jurisdictions throughout the country.  Also,
17   supported by this Court's December 8, 2008 order
18   in which it found based upon the full record
19   before it that if Virginia in fact did mail
20   ballots late, then it did clearly "violate
21   UOCAVA."

22        That well-reasoned conclusion of this court
23   should continue to govern disposition of the
24   issues before it now.

25        But that is not all, Your Honor.

 1    Straight-forward application of precedence, the

 2    undisputed facts, lead to the same conclusion.  As

 3    a legal matter, Your Honor, and as a matter of

 4    common sense the defendants' arguments here must

 5    fail.  Their basic argument is simple.  It is that

 6    because UOCAVA does not contain a deadline by

 7    which states must mail their ballots the

 8    defendants conclude that UOCAVA -- or the mailing

 9    of late ballots cannot violate UOCAVA.  This

10    sweeping defense would, of course, gut UOCAVA.  In

11    so doing it opened door to wholesale voting

12    deprivations throughout the Eastern District of

13    Virginia and elsewhere.

14         Indeed, were the defendants' arguments to

15    succeed here election officials in the Eastern

16    District and elsewhere could reasonably and

17    rightly conclude that they could not merely mail

18    ballots late, but not mail ballots at all.  They

19    could consider themselves free of any obligation

20    to mail ballots to military and overseas voters.

21    That simply cannot happen.

22         As courts have recognized --

23         THE COURT:  Well, mailing of late isn't

24    functionally the same thing as not mailing them

25    all, is it?

1          MR. DELLHEIM:  As I understand the

2     defendants' argument, Your Honor, their argument

3     is UOCAVA can never be violated by late mailing or

4     non existent mailing given the facts that there is

5     no deadlines.

6          THE COURT:  But the functional equivalency is

7     the same if you mail them late.  You know they

8     won't have any effect.

9          MR. DELLHEIM:  That is absolutely correct.

10          THE COURT:  All right.

11          MR. DELLHEIM:  As courts have recognized,

12     inherent in UOCAVA's core obligation is to mail

13     ballots out in time to be counted; otherwise, the

14     right to vote, as The Court just noted, would be

15     illusory.

16          The compliance standard that Congress adopted

17     when it passed UOCAVA is simply one of

18     reasonableness.  States must give overseas voters

19     a reasonable opportunity to receive their ballots,

20     mark them, and return them in time for counting.

21          What constitutes reasonableness is, of

22     course, a fact matter.  Here, in this case, the

23     evidence is undisputed, the factual evidence is

24     undisputed that it takes on average 30 days for

25     mail to go overseas and be returned.

1          This evidence is not merely opinion evidence,

2     it is based upon facts provided by federal mailing

3     of federal authorities that are responsible for

4     carrying and delivering mail.  Thus Virginia's

5     failure here to insure overseas voters have at

6     least 30 days to receive their ballots and return

7     them violates UOCAVA.  It did not give them a

8     reasonable opportunity to vote.

9          Your Honor, a few words about the defendants'

10     other arguments in this case.  First, the

11     defendants avow there is no harm flowing from the

12     late mailing, or even the non-existent mailing, of

13     absentee ballots because Congress provided a

14     back-up emergency provision in UOCAVA.  I am

15     talking about the Federal Write In Absentee

16     ballot, or FWAB, F-W-A-B.

17          That argument has to fail for a couple

18     reasons.  Number one, it is utterly inconsistent

19     with UOCAVA's structure and purpose.  Moreover, it

20     improperly restricts this court's jurisdiction to

21     craft a complete remedy to a federal law

22     violation.  And perhaps most importantly it would

23     unduly and improperly burden UOCAVA voters.  Here

24     is why.

25          UOCAVA voters would have to know of the

1     existence of FWAB.  They would have to have access

2     to it.  They would have to have the technology to

3     download it and print it.  And they would have to

4     do their own research as to the candidates,

5     offices, and ballot propositions.  They would have

6     to do further research as the state law requires

7     about when a ballot can be returned and the

8     deadline by which they must be returned.  Those

9     burdens are substantial.  The right to vote

10    guaranteed by section 102 of UOCAVA is simply not

11    the same opportunity presented by the emergency

12    back-up provision that Congress crafted in terms

13    of the FWAB.

14        The defendants trying to shift the burdens on

15    to military and overseas voters simply has to be

16    rejected.

17        Second, the defendants contend that the

18    30-day compliance standard advocated here and

19    adopted by The Court's is "absurd."  They say that

20    because, as I understand it, it would require some

21    election officials to mail some absentee ballots

22    on the same day that a ballot request is received.

23    Number one, the defendants decline to put any

24    evidence, any fact in this record to support that

25    argument.  Number two, the United States would

1    contend, with respect, that it is simply not

2    absurd to expect local election officials in

3    certain instances to act with appropriate dispatch

4    and haste in terms of mailing absentee ballots.

5         Moreover, Your Honor, it is -- the 30-day

6    compliance standard here advocated by the United

7    States is not incompatible with any other

8    provision of UOCAVA.  Section 103 of UOCAVA which

9    deals with FWAB acknowledges there are certain

10   jurisdictions where the ballot application

11   deadlines fall within 30 days of the election.  In

12   those circumstances the 30-day standard simply

13   can't apply.  It doesn't apply.  UOCAVA cannot be

14   violated when those states because of state law

15   cannot reasonably get ballots to voters because

16   ballot application deadlines fall within 30 days

17   of the election.

18        Finally, Your Honor, we have to recall that

19   at stake in this case is the right to vote.  It is

20   perhaps the most fundamental right of all rights

21   of American citizenship.

22        That right has been summarily denied to up to

23   and over 2,000 of Virginians overseas and military

24   voters who themselves did nothing wrong.  They

25   simply want their vote to count.  This Court with,

1    all due respect, Your Honor, must protect those

2    voters, especially those wearing a uniform, many

3    of whom stand in harm's way and risk their lives

4    to insure freedom abroad but through no fault of

5    their own have been denied the right to vote here

6    at home.

7        THE COURT:  All right.

8        I think I understand your position.

9        MR. DELLHEIM:  Thank you, Your Honor.

10       Accordingly, the United States respectfully

11   requests this Court safeguard their right to vote,

12   and based on its prior rulings, unanimous case

13   authority, and the undisputed facts, grant summary

14   judgment on behalf of United States.

15      THE COURT:  All right.

16      MR. DELLHEIM:  Thank you, Your Honor.

17      MR. DYBING:  Good morning, may it please The

18   Court, Robert Dybing on behalf of the State Board

19   of Elections of the Commonwealth of Virginia.

20      It is indeed ironic to hear the United States

21   talk about the federal write-in ballot as a

22   clumsy, impossible, or improbable of being obeyed

23   by military and overseas voters.  And yet that is

24   the remedy that Congress crafted to address the

25   very concern that exists in this law suit.

1       The question is clear.  What happens if

2   states for whatever reason, or in Virginia the

3   general registrars who do the mailing, what

4   happens if they are late sending out absentee

5   ballots?  That is a real problem.  Congress

6   recognizes it.  In UOCAVA, the statute dealing

7   with overseas and military voters, Congress said,

8   look, if states are late getting that ballot out

9   you have the right to vote using a federal

10  write-in ballot.

11      Now, Congress, of course, as The Court is

12  aware, enacted that federal write-in ballot

13  provision to address that concern.  Now, the

14  Department of Justice's position is Congress made

15  a mistake, that that remedy is not easily

16  exercised.  That the voters overseas don't know

17  which candidates to vote for and might not have

18  access to the information necessary to cast the

19  federal write-in ballot.  Well, to that I think

20  one must only observe that it is for Congress to

21  decide what remedy to apply, and if Congress

22  imposes a failed remedy, or a weak remedy, it is

23  not the Department of Justice or the judiciary to

24  craft a substitute remedy that would address

25  whatever failings Congress left in its statute.

 1          I think it is indeed doubly ironic that had

 2     the overseas voters who were not allowed to vote,

 3     who didn't vote in the November 2008 general

 4     election, if those voters had voted using the

 5     federal write-in ballot, we would not be here

 6     today.  Because there would have been no

 7     violation.  Each of those voters would have voted.

 8     But because those voters did not, for whatever

 9     reason, exercise the remedy that Congress gave

10     them the intervenor stands before this court

11     saying that Virginia violated UOCAVA.  And I

12     submit that that presents an irreconcilable

13     conflict.  Congress can not have, A, provided a

14     remedy to address a real election procedure,

15     namely the federal write-in ballot, and at the

16     same time penalize states and claim that states

17     have violated UOCAVA by doing the very thing that

18     Congress created the remedy for.

19          I submit that it is internally inconsistent

20     for the Department of Justice to take a position

21     that UOCAVA should be respected and yet ignore the

22     write-in ballot provision and focus only on other

23     provisions.

24          It is clear that the 30-day period is a

25     number.  It was created apparently by a federal

1    employee.  It certainly was not created by

2    Congress.  Certainly does not command the respect

3    of this court in terms of either chevron deference

4    or any kind of deference whatsoever.  It is merely

5    a number.

6        And when we repeatedly challenge the

7    Department of Justice to back up the 30-day figure

8    they couldn't.  All they could do is say it is an

9    estimate of a reasonable time.  Well, Congress

10    knows well how to estimate reasonable time.  In

11    fact, as The Court is aware, there are plenty of

12    time periods in UOCAVA.  60 days to do this.  90

13    days to do that.  If Congress intended that there

14    be a 30-day period as a paradigm of

15    reasonableness, Congress would have said so.

16        Ironically, again, at long last in the reply

17    memorandum the Department of Justice for the first

18    time points to a specific provision of UOCAVA that

19    they claim Virginia violated.  And they claim

20    that that is section 102 A 1 of UOCAVA, which is

21    codified at 1973 FF1A1.

22        If it please The Court, it is a short

23    provision, and I would simply like to read it.  It

24    says, "Each state shall permit absent uniformed

25    services voters and overseas voters to use

1       absentee registration procedures and to vote by

2       absentee ballot in general, special, primary, and

3       run-off elections for federal office."  That is

4       what that provision requires.

5           Virginia does so provide that ability in

6       section 24-2612 of Virginia code the State of

7       Virginia enacted a theme to provide a means for

8       absentee voting.  So Virginia did what UOCAVA

9       commanded.

10          Now, if the United States is saying but what

11      Congress really meant to put in is a

12      reasonableness standard, and in particular a

13      30-day standard in this provision, and that is

14      what they are asking this court to enforce.  I

15      submit, Your Honor, that it would be improper.

16          THE COURT:  You, in effect, are saying that

17      Virginia law for all practical purposes could

18      disenfranchise all servicemen if they are in a

19      remote territory if you just follow state

20      procedures.  Is that your position?

21          MR. DYBING:  No, not in the least.

22          THE COURT:  Absentee ballots, if I am in

23      Denver vacationing or something, that is one

24      thing; but if I am serving my country in

25      Afghanistan it seems to me that your procedures

1     basically disenfranchise the 2,000 Virginians who

2     are serving overseas.

3     MR. DYBING: Your Honor, if there is an

4     overseas voter who for whatever reason does not

5     receive a Virginia absentee ballot in time,

6     whatever that time might be, that voter has the

7     right to vote using a federal write-in ballot.

8     And I must reiterate that for the intervenor to

9     suggest that that remedy is insufficient, that

10    there needs to be a more elaborate, or more formal

11    remedy that the states have to abide by, is simply

12    to ignore what Congress said and craft and

13    entirely new legislative scheme on top of UOCAVA,

14    one that Congress had the opportunity to enact if

15    it wished, but it didn't.

16    And the list of state responsibility under

17    UOCAVA in FF1 is very precise in terms of what

18    states need to do. And, in fact, in that section

19    paragraph 2 there is a reference to what happens

20    if applications are received within 30 days before

21    an election. Thus Congress knows how to say 30

22    days before an election when it wishes to. And if

23    Congress wanted to provide the states had to mail

24    absentee ballots out at least 30 days before an

25    election they clearly would have said so. And

1     that is not a part of the statute.

2          I understand the policy considerations

3     underlying the intervenors' position.  They would

4     like to amend UOCAVA to provide a strict deadline

5     for states and to have some kind of remedial

6     program if states don't abide by the 30-day

7     requirement.

8          Well, that is for Congress to decide if they

9     wish at some point to amend UOCAVA.  The Court is

10    aware from the record that there is indeed a bill

11    before Congress pending that would establish a

12    45-day deadline for states to mail out absentee

13    ballots.  I understand the principle of

14    interpretation that says an unenacted statute

15    doesn't count for anything.  We understand that.

16    I merely point out that it would be indeed curious

17    Congress would feel obliged to impose a deadline

18    in UOCAVA when the intervenor claims that one

19    already exists.  I think The Court understands

20    what Congress is doing now in trying to deal with

21    exactly what is missing in UOCAVA right now.  It

22    is a mandatory deadline applicable to the states.

23         Accordingly, UOCAVA is not ambiguous.  If it

24    were ambiguous the FDAP would not have delegated

25    its rule-making authority at all to come up with a

1    30-day deadline.

2         THE COURT:  All right.

3         MR. DYBING:  There is no 30-day deadline in

4    UOCAVA, and Virginia cannot have violated UOCAVA.

5    Accordingly, we ask The Court to enter summary

6    judgment for the Commonwealth.

7         THE COURT:  Thank you.

8         MR. DYBING:  Thank you, Judge.

9         THE COURT:  Any rebuttal argument,

10   Mr. Dellheim?

11        MR. DELLHEIM:  Yes, sir.  Thank you, Your

12   Honor.  And very briefly.

13        Your Honor, Mr. Dybing read the provision

14   that in fact Virginia violated.  Section 102 of

15   UOCAVA requires states provide overseas citizens

16   with the right to vote.  That is what has been

17   denied Virginia's overseas voters in this case.

18        Secondly, Mr. Dybing says that the FWAB, the

19   emergency back-up write-in ballot, is essentially

20   the same opportunity to vote as provided by a

21   state ballot.  It is simply patently untrue.  It

22   is inaccurate.  Congress made no mistake.  What

23   Congress did is bend over backwards to try to

24   insure overseas citizens have a reasonable

25   opportunity to cast a ballot.

1    The FWAB is simply not the same opportunity

2    to vote as the regular state ballot, but it does

3    count for something.  It was not a mistake.  But

4    the opportunities are different, and it is not

5    appropriate under these circumstances to blame the

6    victim, blame overseas voters for not having

7    adequate access to the technology to download

8    those ballots and submit them.

9        Third, the 30-day standard here is a matter

10    of fact before this court.  We provided affidavits

11    or declarations provided by the Military Postal

12    Service, the U.S. Postal, or excuse me, the State

13    Department and others that outline the minimum

14    time frames for delivering mail overseas and

15    getting them back again.  The 30-day standard that

16    has been derived is based on those facts.  Those

17    facts are undisputed in this record.

18        THE COURT:  All right.

19        MR. DELLHEIM:  Finally, with respect to the

20    bill that Mr. Dybing mentioned, the only thing we

21    can infer from the pending bill in Congress, and

22    we do not, of course, know whether it will pass,

23    but the only thing we can infer from that proposed

24    legislation is that the deadline observed here in

25    this case by this state were hopelessly

1    inadequate.

2        Thank you, Your Honor.

3        THE COURT:  All right.

4        I will take the matter under advisement and

5    will issue an opinion in due course.

6        Mr. Dellheim, I believe when this case was

7    argued before me before there was either a lawyer

8    from the Department of Justice named Gonzales, or

9    somebody, that argued it.

10       MR. DELLHEIM:  Yes, sir.  Alberto

11   Ruiz-Sanchez.

12       THE COURT:  Sanchez.  Right.

13       He did a very effective job.  Why did you

14    take him off the case?  He went on to richer

15    rewards or what?

16       MR. DELLHEIM:  Sadly, for the voting section

17    of the Department of Justice Mr. Ruiz-Sanchez has

18    gone on to another job within the Department,

19    which was a loss to our section, and perhaps to

20    this court.

21       THE COURT:  All right.

22       Recess 2:00 o'clock.

23

24                HEARING ADJOURNED

25

1    THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

2

3           GILBERT FRANK HALASZ, RMR

4            OFFICIAL COURT REPORTER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25