IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

                              Plaintiff,

v.                                              Civil Action Number 3:08cv709

JEAN CUNNINGHAM, *et al.*,

                              Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court will grant Plaintiff's motion for summary judgment and deny Defendants' motion.

## I. BACKGROUND

### A. *Relevant Federal and Virginia Law*

The Commonwealth of Virginia is the legal voting residence of many men and women of the United States uniformed services or merchant marine who are absent from the United States by reason of their active duty or service, as well as other United States citizens otherwise residing currently outside of the United States. Understandably, these citizens are typically unable to vote in person in Virginia, so they are left to exercise their right to vote by casting absentee ballots from abroad. To preserve for these citizens the right to vote in federal elections, Congress passed the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), which extends federal voting rights to certain United States citizens formerly resident in a State who presently reside outside the

United States.  *See* 42 U.S.C. § 1973ff-1 to 1973ff-6.  More specifically, UOCAVA provides that certain uniformed services voters and overseas voters (collectively "UOCAVA voters") shall be permitted by each State "to use absentee registration procedures and to vote by absentee ballot in general, special, primary and runoff elections for Federal office."  42 U.S.C. § 1973ff-1.

To count as validly-cast, absentee ballots in Virginia must be "returned to the electoral board or general registrar before the closing of the polls [on election day]."  Va. Code Ann. § 24.2-709. To allow absentee voters to have a meaningful opportunity to cast absentee ballots, therefore, Virginia requires the electoral board to "make printed ballots available for absentee voting at least (i) 45 days prior to any November general election or special election held at the same time and (ii) 30 days prior to any other general, special, or primary election."  Va. Code Ann. § 24.2-612.  These Virginia schedules for the availability of absentee ballots are much in line with those suggested by the federal agencies responsible for carrying out the provisions of UOCAVA.

The Department of Defense's Federal Voting Assistance Program ("FVAP") is charged with administering UOCAVA as delegated by the Secretary of Defense, the Presidential designee under the statute.  FVAP determined that mailing overseas ballots less than thirty days before an election does not afford overseas voters a reasonable opportunity to cast their ballots, and it recommended that States mail overseas absentee ballots at least forty-five days before the election.  These numbers are derived at least in part from federal postal authorities' estimates that international mail usually requires thirty days or more for round-trip processing.  UOCAVA itself, however, does not set a mandatory minimum deadline by which States must mail absentee ballots to UOCAVA voters, though United States Senator Charles E. Schumer of New York has proposed legislation that would

set the deadline at forty-five days if the request is received at least forty-five days before the election.

Where delinquent State electoral boards fail to provide State absentee ballots to UOCAVA voters, UOCAVA explicitly provides for at least two remedies. First, when necessary to carry out the provisions of UOCAVA, the statute empowers the Attorney General to "bring a civil action in an appropriate district court for . . . declaratory or injunctive relief." 42 U.S.C. § 1973ff-4. Second, where UOCAVA voters "make timely application for, and do not receive, States absentee ballots," UOCAVA provides for a "Federal write-in absentee ballot . . . for use in general elections for Federal office." 42 U.S.C. § 1973ff-2. This Federal write-in absentee ballot, however, affords only some relief to UOCAVA voters, as it is available solely for use in general elections, and it is also blank, requiring voters to know beforehand, among other things, what offices and candidates are up for election so that they may write them in.

## B. *Facts and Procedural History*

In preparation for the November 4, 2008 general election, many hundreds of UOCAVA voters requested an absentee ballot from the Commonwealth of Virginia in a timely manner. At least 2,114 of these timely-requested absentee ballots were mailed to UOCAVA voters less than 30 days before the November 4, 2008 election. At least 96 of these timely-requested, completed ballots were received by local electoral officials after the closing of the polls on November 4, 2008, and were, therefore, not counted. These ballots do not indicate the date on which they were received or completed by UOCAVA voters, though they should indicate the date on which they were mailed back to Virginia's local electoral boards or registrars.

On November 4, 2008, the Commonwealth of Virginia conducted a general federal election in which voters participated in the selection of candidates for, *inter alia*, President of the United States. One day prior to the election, on November 3, 2008, McCain-Palin 2008, Inc. ("McCain-Palin"), the official campaign committee for Senator John McCain, then the Republican nominee for President of the United States, filed the initial Complaint pursuant to 42 U.S.C. § 1983 and UOCAVA, 42 U.S.C. § 1973ff *et seq*, naming as defendants Jean Cunningham, Harold Pyon, and Nancy Rodrigues ("original defendants") in their official capacities as officers of the Virginia State Board of Elections. In its Complaint, McCain-Palin alleged that the Commonwealth of Virginia violated UOCAVA by failing to send timely-requested absentee ballots to UOCAVA voters at least forty-five days before the November 4, 2008 election.

On November 6, 2008, the original defendants moved to dismiss the Complaint. On November 14, 2008, the United States ("Plaintiff") moved to intervene and filed a Complaint in Intervention, adding as defendants the Commonwealth of Virginia and the Virginia State Board of Elections (collectively with original defendants, "Defendants"). In its Complaint in Intervention, Plaintiff sought declaratory and injunctive relief, specifically (1) an order to count the votes of UOCAVA voters whose timely-requested ballots were mailed late and received by election officials by 7:00 p.m. on November 14, 2008, (2) an order requiring Defendants to generate a report of the number of UOCAVA ballots received and counted, and (3) permanent relief to ensure compliance with UOCAVA in future elections such that UOCAVA voters have "a fair and reasonable opportunity to participate in future elections for federal office." On November 16, 2008, Defendants moved to dismiss Plaintiff's Complaint in Intervention.

On November 17, 2008, the Court granted both Plaintiff's motion to intervene and the original defendants' November 6, 2008 motion to dismiss as to plaintiff McCain-Palin, additionally dismissing permanently the § 1983 claim. On December 8, 2008, the Court heard oral argument on Defendants' November 16, 2008 motion to dismiss Plaintiff's Complaint in Intervention, and on December 9, 2008, the Court denied the motion. On July 17, 2009, Defendants filed their Motion for Summary Judgment, and on August 28, 2009 Plaintiff filed its Cross-Motion for Summary Judgment. The Court heard oral argument on the parties' cross-motions for summary judgment on October 5, 2009, and the parties participated in further discussions via telephone conference with the Court on October 9, 2009.

## C. *The Parties' Arguments for Summary Judgment*

### (1)    **Defendants' Motion for Summary Judgment Arguments**

In their motion for summary judgment, Defendants advance two primary arguments. First, Defendants argue that UOCAVA does not require States to mail absentee ballots a mandatory number of days before an election. In addition to the text of the statute which does not establish a mandatory pre-election deadline, Defendants offer as evidence of UOCAVA's lack of such a deadline the fact that legislation has been introduced in Congress that would indeed create a mandatory pre-election deadline for mailing absentee ballots to UOCAVA voters. Second, Defendants contend that UOCAVA provides the exclusive remedy for the situation at issue by allowing UOCAVA voters to vote by Federal write-in ballot. In other words, Defendants believe that UOCAVA voters whose legal voting residence States do not mail them absentee ballots in time enough for them to validly-cast their ballots may vote by Federal write-in ballot or not at all.

Defendants make two ancillary arguments in addition to their two primary arguments. First, though never raised by Plaintiff in its motion for summary judgment, Defendants argue that FVAP's thirty-day determination and forty-five-day recommendation do not qualify for *Chevron* deference. Second, they contend that local electoral officials are necessary parties pursuant to Federal Rule of Civil Procedure 19(a) because they perform the function of counting the absentee ballots.

### (2)     Plaintiff's Cross-Motion for Summary Judgment Arguments

The United States first argues that the doctrine of "the law of the case" calls for the rejection of all of Defendants' arguments citing the Court's statement from the bench and ensuing December 8, 2008 Order denying Defendants' motion to dismiss. Second, Plaintiff argues that "undisputed evidence" and "unanimous case authority" establish that Virginia's late mailing of absentee ballots violated UOCAVA by failing to give UOCAVA voters sufficient time prior to the election to have a meaningful opportunity to vote. Third, Plaintiff argues that the right to cast a Federal write-in ballot does not defeat its claim or remedy the harm caused by a state's failure to send a timely absentee ballot because (1) it is available only for *general* elections for Federal office, while UOCAVA grants rights in absentees for "general, special, primary and runoff elections," and (2) the Federal write-in ballot is not equal to a state ballot because (a) not all absentees are aware it exists, (b) UOCAVA voters must actively obtain it, (c) it is blank and requires voters to have complete and advance knowledge of their jurisdiction's ballots, and (d) it does not provide instructions on return deadlines or other applicable state law requirements for its submission. Finally, Plaintiff abandons its original request for a ten-day extension of Virginia's election day deadline for absentee ballots in favor of a more sweeping request to count as validly-cast *all* absentee ballots that were rejected for having been received too late.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## III. DISCUSSION

The right to vote is "a fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). Indeed, "[n]o right is more precious," and "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "For our citizens overseas, voting by absentee ballot may be the only practical means to exercise [the right to vote]. For the members of our military, the absentee ballot is a cherished mechanism to voice their political opinion." *Bush v. Hillsborough County Canvassing Bd.*, 123 F. Supp. 2d 1305, 1307 (N.D. Fla. 2000). Given that how and where our servicemembers conduct their lives is dictated by the government, their right to vote is "their last vestige of expression and should be provided no matter what their location." *Id.* By failing to mail absentee ballots to certain UOCAVA voters thirty days or more prior to the November 4, 2008 general election, the Commonwealth of Virginia prevented

these voters from having an opportunity to vote in a federal election in violation of UOCAVA. Though these votes will not affect the outcome of the election, the Court will order the Commonwealth of Virginia to count as validly-cast all timely-requested absentee ballots received within thirty days of the close of the polls on November 4, 2008 so as to uphold and give meaning to the dearest of individual rights.[1]

**A.**   ***Virginia violated UOCAVA by failing to mail absentee ballots to UOCAVA voters at least thirty days before the November 4, 2008 general election.***

    **(1)**   **The "law of the case" doctrine does not apply.**

Plaintiff seeks a declaratory judgment that the failure of election officials to send absentee ballots to UOCAVA voters in sufficient time for them to be received, marked, and returned by November 4, 2008 violates UOCAVA. Citing the Court's statement from the bench and associated Order of December 8, 2008 denying Defendants' motion to dismiss, Plaintiff first argues that the "law of the case" doctrine operates to reject all of Defendants' arguments. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 619 (1983). The doctrine applies to "questions actually decided as well as to those decided by necessary implication." *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008), *cert. denied*, 129 S.Ct. 303 (2008).

---

[1]To the extent that Plaintiff requested time following the entry of judgment to confer with Defendants and report back on relief issues related to the November 4, 2008 election, the Court finds it in the interest of justice and judicial economy to reject that request and prescribe relief in this Opinion and associated Order. The parties have participated in two unsuccessful settlement conferences with the Honorable United States Magistrate Judge Dennis W. Dohnal and have shown no indication that further discussion will lead to an efficient, mutually agreeable resolution of relief issues related to last year's election. The Court wishes to restore UOCAVA voters' confidence in their ability to cast a meaningful vote and redress Plaintiff's injuries as justly and efficiently as possible. Further delay with little hope of successful discussion between the parties will aid no one.

In this case, Plaintiff points to the Court's following statement made at the December 8, 2008 Motion to Dismiss hearing as the controlling "law of the case": "If it is indeed true that some ballots were not mailed until within 14 days of the election, it *seems* clear that Virginia did indeed violate [sic] UOCAVA . . . ." Mot. to Dismiss Hr'g Tr. at 14 (emphasis added). The Court had clearly prefaced this suggestion with the statement that it "want[ed] to provide [the parties] with some *guidance*" because "this situation cries out for a solution created by the parties rather than crafted by The Court." Mot. to Dismiss Hr'g Tr. at 13 (emphasis added). Therefore, as the Court simply offered the parties guidance as to a possible outcome of the case under assumed facts, the Court never "actually decided" at the Motion to Dismiss hearing that Defendants had violated UOCAVA. Further, the Court's statement does not control the case "by necessary implication." As such, the law of the case doctrine is inapplicable to the parties' cross-motions for summary judgment.

**(2)     The Commonwealth of Virginia should mail absentee ballots to UOCAVA voters at least thirty days before an election to allow for a meaningful opportunity to vote.**

While the Court agrees with Defendants' positions that (1) UOCAVA does not contain a specific mandatory time deadline by which States must mail absentee ballots to UOCAVA voters and (2) Senator Schumer's proposed legislation would in fact institute such a mandatory deadline, the fact that a specific mandatory deadline does not exist does not mean that UOCAVA contains no deadline at all. Indeed, if no deadline whatsoever for sending absentee ballots to UOCAVA voters exists, then, effectively, States would never be required to send absentee ballots at all. As such, the Court must infer a deadline defined by reason.

While Plaintiff cites relevant case law that suggests Defendants' late-mailing of absentee ballots violated UOCAVA,[2] Plaintiff is most correct in arguing that the evidence before the Court establishes the violation. It is undisputed that at least 2,114 UOCAVA voters timely-requested absentee ballots and were mailed their ballot less than 30 days before the November 4, 2008 election. It is also undisputed that at least 96 of these timely-requested ballots were completed and returned to the appropriate local electoral official, but arrived after the close of the polls on November 4, 2008, and were not counted. Additionally, in its Complaint in Intervention, Plaintiff alleged that "at least 125 military servicemembers and overseas citizens who requested a timely absentee ballot did not have their absentee ballot envelope labels printed until <u>two</u> weeks (or less) before the November 4, 2008 election. Pl.'s Compl. in Intervention ¶ 11 (emphasis in original). Defendants failed to admit or deny this allegation, answering instead that "[t]he UOCAVA records speak for themselves." Defs.' Answer to P.'s Compl. in Intervention ¶ 11. According to the law of pleading, what is not denied is conceded. *Casey v. Galli*, 94 U.S. 673, 679 (1876). Therefore, for purposes of the parties' cross-motions for summary judgment, Defendants are deemed to have admitted that the Commonwealth of Virginia did not mail at least 125 UOCAVA voters their

---

[2]Plaintiff cites a number of cases from different jurisdictions in which federal district courts found at the preliminary injunction stage that the United States was "likely to prevail" on its claim that the State at issue violated UOCAVA, or there were "reasonable grounds to believe" UOCAVA was violated, by mailing absentee ballots too late: *United States v. Georgia*, No. 1:04-CV-2040 (N.D. Ga. July 15, 2004; entered July 16, 2004); *United States v. Pennsylvania*, No. 1:CV-04-830 (M.D. Pa. April 16, 2004); *United States v. Delaware*, No. 92-523 (D. Del. Sept. 11, 1992); *United States v. Tennessee*, No. 3-90-0958 (M.D. Tenn. Nov. 5, 1990); and *United States v. Wyoming*, No. C88-0238-8 (D. Wyo. Aug. 16, 1988). Given that these courts did not actually make a final determination that the States had in fact violated UOCAVA, they are not entirely persuasive in favor of Plaintiff's argument.

absentee ballots until two weeks or less before the November 4, 2008 election. Additionally, Defendants never disputed the fact that these 125 voters were mailed their ballots that late.

While determining how long international mail takes for round-trip delivery is not a precise science, there is no dispute that transit times from the United States to servicemembers deployed abroad can be quite long. Commander Teddie Dyson, the Military Postal Service Agency's Chief of Plans & Policy, declared under penalty of perjury that transit times from a post office in the United States to an Army or Air Force Post Office ("APO") or Fleet Post Office ("FPO") in the Iraq theater range from seven to thirteen days, "not includ[ing] the time it takes to reach a Servicemember in the field . . . ." Pl.'s Mot. for Summ. J. Ex. I, Dyson Decl. ¶ 6. Seven days is also the bare minimum amount of time it takes mail to reach APOs and FPOs in Europe, Japan, Korea, the Pacific Islands, the Far East, Central America, South America, and the Carribbean. On the opposite extreme, in "some remote, austere locations," it may take as long as thirty-five days just for mail to travel from the United States to that location in the first place before the sevicemember can even open and read that mail, much less send response mail back to the United States. Pl.'s Mot. for Summ. J. Ex. I, Dyson Decl. ¶ 6. Other evidence put before the Court by Plaintiff indicates that "at least 30 days is a reasonable benchmark for round-trip transit time for international mail." Pl.'s Mot. for Summ. J. Ex. K, Carey Decl. ¶ 7. Indeed, the relevant federal postal services all suggest that an average of thirty days is required for receiving and sending round-trip international mail. Pl.'s Mot. for Summ. J. Ex. J, Moser Decl. ¶ 5. Furthermore, other courts have accepted thirty days as the average round-trip transit time for the receiving and casting of overseas absentee ballots. *United States v. Pennsylvania*, No. 1:CV-04-830 (M.D. Pa. Apr. 16, 2004); *United States v. Georgia*, No. 1:04-CV-2040-CAP (N.D. Ga. July 15, 2004).

Defendants attack these estimates as "internally inconsistent." Defs.' Memo. in Opp'n to Pl.'s Mot. for Summ. J. at 4-5. Nevertheless, Defendants do not dispute the veracity of the sworn declarations, and there is no evidence before the Court suggesting the declarations are untrue or inaccurate. Therefore, at an absolute minimum, round trip delivery of mail to a servicemember in the field overseas takes more than fourteen days (at least seven days to arrive in the APO/FPO, plus an unknown number of days to reach the servicemember in the field, plus at least seven more days to return to the United States). In other words, it is impossible for these UOCAVA voters to receive an absentee ballot in time enough to complete it and return it before the close of the polls on election day if the ballot was sent from the United States only fourteen days before the election. As such, for the at least 125 UOCAVA voters to whom the Commonwealth of Virginia did not mail their absentee ballots until fourteen days or less before the November 4, 2008 election, it was physically impossible to cast a valid Virginia absentee ballot. Additionally, for the 2,114 UOCAVA voters who timely-requested absentee ballots from Virginia and did not have them mailed to them thirty days or more before the election, their ability to cast a valid Virginia absentee ballot was also seriously jeopardized, and, likely in a number of cases, made impossible.

At the very least, the actions of the Commonwealth of Virginia threatened to deprive these UOCAVA voters of an opportunity to vote in a federal election. UOCAVA requires that states "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). If States fail to mail absentee ballots to military and overseas voters in time to be received, marked, and returned by the election deadline, they have not permitted such voters "to vote by absentee ballot." UOCAVA, therefore, exists to protect overseas citizens' right

to vote.  The right to vote means a right to cast a ballot that will be counted.  *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  If even a single voter was deprived of that right solely as a result of Defendants' tardy-mailing of absentee ballots, then Defendants unquestionably violated UOCAVA.

Therefore, while the Court does not find a specific mandatory deadline for mailing absentee ballots in UOCAVA, the Court finds that Defendants violated UOCAVA by failing to give UOCAVA voters a reasonable opportunity to execute and return as validly-cast their timely-requested absentee ballots.  Of course, Defendants cannot be asked to research where each UOCAVA voter is located so that they may calculate how long in advance of the election to mail the ballot in time for it to reach the voter to allow for a meaningful opportunity to vote.  It is also unrealistic to require States to send out absentee ballots seventy or more days before an election as would be required for round-trip transit for UOCAVA voters residing in the most "remote" and "austere" locations.  So an implied deadline of reasonableness must control, and here that deadline is thirty days.  With very few exceptions, a UOCAVA voter can reasonably expect to receive, execute, and return an absentee ballot in time for it to be counted as validly-cast if it is originally mailed to him thirty days before an election.  This deadline is not arbitrary as Defendants suggest, but is instead a calculated and reasonable deadline based on undisputed evidence before the Court. Therefore, by failing to mail absentee ballots to UOCAVA voters thirty days or more before the November 4, 2008 election, Defendants violated UOCAVA.

**(3)  The Federal write-in ballot is not the exclusive remedy under UOCAVA.**

Defendants argue that Congress anticipated the controversy presented in the case at bar and provided the exclusive remedy in the form of the Federal write-in ballot.  The Court acknowledges, as Defendants do, that no UOCAVA voters were prevented from voting using a Federal write-in

ballot in the November 4, 2008 general election.  Nevertheless, the Court rejects Defendants'
argument that it is the exclusive remedy and accepts Plaintiff's argument that the mere right to cast
a Federal write-in ballot neither defeats a UOCAVA claim nor remedies harm caused by a State's
failure to send timely absentee ballots.  UOCAVA provides for a Federal write-in ballot "for use in
*general* elections for Federal office by absent uniformed services voters and overseas voters who
make timely application for, and do not receive, States, absentee ballots."  42 U.S.C. § 1973ff-2
(emphasis added).  Therefore, UOCAVA voters denied timely absentee ballots in special, primary,
and runoff federal elections would be left with no remedy at all.  Such a result runs contrary to
UOCAVA's requiring States to permit UOCAVA voters "to vote by absentee ballot in *general,*
*special, primary, and runoff* elections for Federal office."  42 U.S.C. § 1973ff-1(a)(1).  This result
would violate "a fundamental rule of statutory construction that a statute should not be construed
in a manner which renders certain provisions meaningless or insignificant."  *Lee v. Alleghany Reg'l*
*Hosp. Corp.*, 778 F. Supp. 900, 904 (W.D. Va. 1991) (citing cases).

Further, the Federal write-in ballot is not equivalent to a State absentee ballot.  Congress
explained that the Federal write-in ballot "is intended as an emergency back-up measure *rather than*
*as a replacement* for the regular ballot."  H.R. Rep. 99-765, at 14 (1986) (emphasis added).
Congress also recognized that the Federal write-in ballot does not provide UOCAVA voters the
same opportunity to vote as full, printed absentee ballots.  *Id.* at 16.  Indeed, the differences are
substantial, not the least of which is the fact that regular absentee ballots list all offices, names, party
affiliations, and ballot propositions, while the Federal write-in ballot is blank and requires voters to
be able to make choices based on complete and advance knowledge of their jurisdiction's ballot.
Voters using the Federal write-in ballot must also have had an opportunity to research "any other

State requirements for absentee ballots, such as notarization" that their legal voting residence requires for submitting valid absentee ballots. *Id.* at 14 (1986) (citing 42 U.S.C. § 1973ff-2(b), "a Federal write-in absentee ballot shall be submitted and processed in the manner provided by law for absentee ballots in the State involved.") Therefore, the Court finds that the Federal write-in ballot is only an imperfect emergency measure available to UOCAVA voters as a rudimentary remedy when States fail to send absentee ballots timely. It exists as a last-ditch effort to salvage one's franchise, but its existence by no means authorizes States to mail absentee ballots belatedly. Accordingly, the Court rejects Defendants' argument that the Federal write-in ballot is the exclusive remedy available when States fail to send absentee ballots timely.

### (4) *Chevron* deference is not at issue.

Defendants argue that FVAP's "determination" and "recommendation" do not qualify for administrative deference as a government agency's interpretation of its own statutory mandate, as set out in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Indeed, Plaintiff does not argue for such deference in its Motion for Summary Judgment, and the Court affords no *Chevron* or other deference to either the determination or the recommendation in making its finding that Defendants violated UOCAVA. Accordingly, the Court need not address the issue as to whether deference is appropriate in this matter and dismisses with this portion of Defendants' Motion for Summary Judgment.

### (5) Local electoral officials are not necessary parties.

Finally, the Court rejects Defendants' argument that local electoral officials are necessary parties pursuant to Federal Rule of Civil Procedure 19(a), finding instead that all necessary parties are before the Court. The Commonwealth of Virginia, a party to this action, is directed by UOCAVA

to ensure its compliance by the local election boards. Therefore, the local electoral officials are not so vitally interested in this action that a valid judgment cannot be rendered, completely and finally determining the controversy without their presence as parties. Further, "[t]he absence of a necessary party does not generally seem sufficient ground for . . . the entry of summary judgment in favor of the defendant." *Maryland v. Acme Poultry Corp.*, No. Civ. A-651, 9 F.R.D. 687, 688 (D. Del. 1949). As such, Defendants' necessary party argument will not save them from summary judgment.

### (6) Virginia violated UOCAVA.

By failing to mail timely-requested absentee ballots to UOCAVA voters in sufficient time prior to the November 4, 2008 election to allow for a meaningful vote, the Commonwealth of Virginia offended these voters' prized right to vote in a federal election in violation of UOCAVA. To that end, finding that there are no genuine issues of material fact and viewing the facts in the light most favorable to Defendants, the Court finds that Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment to the extent that it requests a declaration that the Commonwealth of Virginia violated UOCAVA, and it will deny Defendants' motion to the extent that it requests a declaration otherwise.

**B.** ***The timely-requested, but belatedly-received absentee ballots that were executed by UOCAVA voters, but not received by the local electoral boards before the close of the polls on election day, should be certified and counted as validly-cast votes in the November 4, 2008 general election if they were received within thirty days of the election.***

Plaintiff seeks an order requiring Defendants to count as validly-cast ballots all absentee ballots from UOCAVA voters that were rejected solely because election officials received them too late to be counted. Defendants contend that this issue is moot because these absentee votes will not be outcome-determinative in the November 4, 2008 election, and they assert further that, even if not moot, the Court lacks the authority to order the votes to be counted as validly-cast. For the reasons

16

set forth below, the Court finds that the issue is not moot and that the Court does have the authority to order the ballots to be counted as validly-cast. To that end, the Court will order the Commonwealth of Virginia to count as validly-cast all timely-requested, but belatedly-mailed absentee ballots that were received within thirty days of the close of polls on November 4, 2008, so long as such ballots are otherwise valid under Virginia law.

### (1) The issue of whether to count the timely-requested, but belatedly received absentee ballots is not moot.

It is undisputed that counting the timely-requested, but belatedly-received absentee ballots as validly-cast will have no effect on the outcome of the November 4, 2008 federal election. The parties do dispute, however, whether counting those votes is moot. "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction. . . . [A controversy] is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Townes v. Jarvis*, 577 F.3d 543, 546 (4th Cir. 2009) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)). The Fourth Circuit recognizes the doctrine of mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). " *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)). Such a continuing interest must exist so that courts "avoid [rendering] advisory opinions on abstract propositions of law." *Hall v. Beals*. 396 U.S. 45, 48 (1969). Therefore, "for a controversy to be moot, it must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability." *Townes*, 577 F.3d at 546-47.

In this case, for purposes of mootness, the Commonwealth of Virginia does not challenge that Plaintiff has shown an injury in fact or the requisite causation, arguing only that there is no effective

way to redress the complained-of injury. "[F]or an injury to meet the redressability standard, 'it must be *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision.'" *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216-17 (4th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis original). The injury at issue here is that of disenfranchisement – that the Commonwealth of Virginia deprived certain UOCAVA voters of their right to vote by mailing timely-requested absentee ballots too late for them to be cast and received by local electoral boards and registrars in time to meet Virginia's statutory deadline. Such an injury is clearly redressable by counting as validly-cast those timely-requested absentee ballots that were rejected solely because they were received after the close of the polls on election day through no fault of the voter. Therefore, the only remaining question as to whether the injury is redressable is whether the Court has the authority to order the Commonwealth of Virginia to extend its statutory deadline for receiving absentee ballots such that those ballots may be counted as validly-cast. For the reasons set forth below, the Court does have such authority.

**(2)** **The Court has the authority to order the counting of the timely-requested, but belatedly-received absentee ballots that were executed and received by the local electoral boards and registrars after the close of the polls on November 4, 2008.**

Defendants argue that the Court does not have the authority to order the Commonwealth of Virginia to count the timely-requested, but belatedly-mailed absentee ballots as valid, asserting that doing so wrongfully re-writes Virginia law. The Court rejects Defendants' argument, finding, as many courts have done before,[3] that it does have the authority to order the Commonwealth of

---

[3]Numerous courts have entered consent orders or decrees extending a State's deadline for receipt of validly-cast absentee ballots. *See, e.g., United States v. New York*, 1:09-cv-335 (N.D.N.Y. Mar. 26, 2009) (ordering 6-day extension to ballot receipt deadline and corresponding adjustments to other state law deadline); *United States v. Michigan*, No. L 88-208 CA5 (W.D. Mich. July 29, 1988) (10-day extension of ballot receipt deadline); *United States v. Idaho*, No. 88-1187 (D. Idaho

Virginia to count as validly-cast the timely-requested, but belatedly-received absentee ballots that would have been, but for their tardy receipt, valid under Virginia law. To count as validly-cast, absentee ballots in Virginia must be "returned to the electoral board or general registrar before the closing of the polls [on election day]." Va. Code Ann. § 24.2-709. Therefore, requiring Virginia to count as validly-cast those absentee ballots it received within thirty days of the close of the polls on November 4, 2008 effectively requires Virginia to extend its statutory deadline. Plaintiff argues, and the Court agrees, that the Court is authorized to take such action by the Supremacy Clause of the United States Constitution.

The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. States have an "obligation under the Supremacy Clause, to protect federally guaranteed civil rights as zealously as would a federal court." *Rachel v. Georgia*, 342 F.2d 336, 342 (5th Cir. 1965). In this case, therefore, the Commonwealth of Virginia has an obligation under the Supremacy Clause to protect the federally-guaranteed civil right of UOCAVA voters to vote by absentee ballot in federal elections. To the extent that protecting that right conflicts with Virginia law, Virginia law must give way. *Swift & Co. v. Wickham*, 382 U.S. 111, 120 (1965) ("[I]f a state measure conflicts with a federal requirement, the state provision must give way.") Additionally, Federal courts are authorized to order States to comply with federal law,

_____

May 21, 1988; entered May 23, 1988) (10-day extension of ballot receipt deadline); *United States v. Oklahoma*, No. CIV-88-1444 P (W.D. Okla. Aug. 22, 1988) (10-day extension of ballot receipt deadline); *United States v. New Jersey*, No. 90-2357 (JCL) (D.N.J. June 5, 1990) (10-day extension of ballot receipt deadline); *United States v. Colorado*, No. 90-C-1419 (D. Colo. Aug. 10, 1990) (10-day extension of ballot receipt deadline); *United States v. New Jersey*, No. 92-4203 (D.N.J. June 2, 1992) (14-day extension of ballot receipt deadline); *United States v. Michigan*, No. 1:92-CV-529 (W.D. Mich. Aug. 3, 1992) (20-day extension of ballot receipt deadline); *United States v. Georgia*, No. 1:04-CV-2040-CAP (N.D. Ga. July 16, 2004) (3 business day-extension).

and States have a duty to obey such orders. *See Cooper v. Aaron*, 358 U.S. 1, 18-19 (1958). Therefore, the Court has the authority to order the Commonwealth of Virginia to comply with UOCAVA, and the Commonwealth of Virginia has a duty to obey that order.

**(3)    The Court defers to the parties the determination of how to count and certify as valid the timely-requested, but belatedly-received absentee ballots.**

The Court and the parties recognize that counting and certifying the absentee ballots at issue in this case will take some time and come at some expense. Therefore, the Court leaves to the parties the decision as to how the Commonwealth of Virginia will go about counting and certifying the ballots, whether it be exactly as prescribed in the Virginia Code or as alternatively-crafted by the parties with an eye for efficiency and economy. The parties will be given twenty days from the entry of this Opinion and associated Order to agree on an appropriate procedure and memorialize their agreement in writing. The Commonwealth of Virginia will then be given an additional ten days to count and certify the ballots in accordance with the agreed-upon procedure.

Additionally, pursuant to Plaintiff's request, and trusting that the Commonwealth of Virginia will not have continuing problems complying with UOCAVA, the Court also defers to the parties the determination as to the appropriate way in which to ensure UOCAVA compliance in future federal elections.

**IV. CONCLUSION**

For the foregoing reasons, having reviewed each motion separately on its own merits, the Court finds that there are no genuine issues of material fact and that Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment (docket no. 47), and deny Defendants' Motion for Summary Judgment (docket no. 43).

An appropriate Order shall issue.


<u>October 15, 2009</u>       <u>     /s/     </u>
DATE           RICHARD L. WILLIAMS
             SENIOR UNITED STATES DISTRICT JUDGE